UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| JOB CREATORS NETWORK, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OFFICE OF THE COMMISSIONER OF | ) |
| BASEBALL D/B/A MAJOR LEAGUE | ) |
| BASEBALL,  ROBERT D. MANFRED JR., | ) |
| MAJOR LEAGUE BASEBALL | ) |
| PLAYERS ASSOCIATION, TONY CLARK, | ) |
| AND JOHN DOES 1-50, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

JURY TRIAL DEMANDED

-------------------------------------------------------------x

Plaintiff, through its undersigned counsel, for its complaint, hereby avers:

**Nature of Action**

1.      In July 2019, Major League Baseball publicly announced that the 2021 All-Star Game would be played in July 2021 at SunTrust Park (now named Truist Park), the home field of the Atlanta Braves in Cobb County, Georgia. The All-Star Game is a national attraction that generates extraordinary revenue for the host city.  Businesses from mom-and-pop restaurants and bars to national hotel chains prepare years and months in advance for the event.  Tables are reserved, hotel rooms are booked, events are planned, people are hired.  Cobb County budgeted expenses of $2 million for improvements and municipal hiring to meet the expected influx of tourists and fans for the big event.  Businesses in the Atlanta metro region stood to earn $100 million.  Multiple municipalities were counting on millions more in tax revenues.

2.      Thousands of hard-working ordinary men and women in the Atlanta area, many reeling from the psychological trauma and economic havoc of the COVID-19 pandemic, relied

on MLB's unqualified promise to hold the 2021 All-Star Game in Truist Park.  They were looking forward to the beginning of a return to normalcy, with the country opening up and the All-Star Game coming to town.  For 21 months, from July 2019 through March 2021, these men and women planned and budgeted and invested and hoped for a wonderful and profitable event.

3.　　　　Defendants took this all away in the blink of an eye.  On March 26, 2021, Georgia Governor Brian Kemp signed the Election Integrity Act.  The law intended to strengthen the integrity of mail-in ballots and added other measures to Georgia's voting laws.  The Act had nothing to do with baseball.  It had nothing to do with the All-Star Game.  It had nothing to do with the honest, hard-working men and women of Georgia who relied on MLB's promise to hold the All-Star Game at Truist Park.

4.　　　　Defendants, however, purport to have perceived the new law as an affront to voters and decided to protest this new law, but not through a legal challenge or through petitioning the legislature or governor.  Instead, they decided to punish the people and small businesses of Atlanta purposefully and maliciously.

5.　　　　In remarkably candid and unequivocal declarations, MLB stated that the new law discriminated against voters, and as a result the All-Star Game must be taken away from Atlanta.

6.　　　　Even the President of the United States publicly stated that he "support[ed] Major League Baseball moving this year's All-Star Game out of Atlanta in response to recently signed legislation that tightens voting laws in Georgia. . . . This is Jim Crow on steroids, what they're doing in Georgia."

7.　　　　On April 2, 2021, the MLB announced that it was moving the All-Star Game out of Atlanta.  On April 6, 2021, MLB awarded the Game to Denver, Colorado.

8.      Defendants' purposeful and outrageous conduct violated the federal rights protected by 42 USC §§ 1983, 1985(3), which provides an action against persons who deprive others "of any rights, privileges, or immunities secured by the Constitution and laws" or depriving "any person or class of persons of the equal protection of the laws."  Their dishonest conduct also maliciously interfered with Plaintiff's business relations and breached promises relied upon by Plaintiff.  As a result, Plaintiff and its members have been damaged by not less than $100 million.  Further, there is no question that Defendants, through unprecedented cruelty and hostility, intended to hurt and damage Plaintiff.  This Court should award at least $1 billion in punitive damages.

## THE PARTIES

9.      Plaintiff Job Creators Network ("JCN") is a not-for-profit corporation, registered under section 501(c)(4) of the Internal Revenue Code and organized under the laws of the District of Columbia.  It has a principal place of business at 15455 North Dallas Parkway, Suite 600, Addison, Texas 75001.

10.     JCN is a nonpartisan organization whose mission is to educate employers and employees of Main Street America, in order to protect the 85 million people who depend on the success of small businesses.  JCN provides its members with the tools to become the voice of free enterprise in the media, in Congress, in state capitals, in their communities, and their workplaces -- allowing them to hold policymakers and politicians accountable to job creators and their employees.  When JCN members suffer injury due to bad public policy, JCN amplifies their stories in the media to educate policymakers and the public about the significant consequences of bad public policy in an attempt to rectify it.

11.      JCN supports over 30 million small businesses nationwide, with over 10,000 businesses in Georgia.  JCN's members include 3,600 small businesses and their supporters in the Atlanta metropolitan region, which is comprised of Fulton, DeKalb, Gwinnett, Cobb, Clayton, Coweta, Douglas, Fayette, and Henry Counties.

12.      Some of these businesses are going to suffer substantial losses if the All-Star Game is not immediately reinstated in Truist Park.  According to the U.S. Census Bureau, Atlanta has a 51% black population, while Denver's black population is only 9%.  U.S. Census Bureau data also indicates that there are roughly 7.5 times more black-owned small businesses in Georgia than Colorado.

13.      The cancellation of the All-Star Game has also caused direct damage to JCN. Since April 2, 2021, JCN has had to divert resources to address the grave harm to its Atlanta-area members and incurred expenses, which include leasing signs in New York's Times Square and advertising in *The New York Times*.  It has also been required to divert personnel from its fundraising efforts resulting in lower receipts.  Together, these costs amount to over $1.6 million.

14.      Defendant Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB") is an unincorporated association whose members are the thirty Major League Baseball Clubs.  MLB, on behalf of its members, and acting through its Office of the Commissioner, has responsibility and is vicariously liable for administrative and operational matters related to Major League Baseball.  MLB's principal place of business is 245 Park Avenue, New York, New York 10167.  MLB is organized under the laws of New York.  MLB's members receive substantial public funding for their stadiums.  MLB also enjoys certain federal immunities from antitrust law.

15.     The All-Star Game is an event organized by the MLB which is played by selected players from the league's thirty teams.  The MLB's Constitution provides special rules of the All-Star Game.  Specifically, the Constitution requires the creation of the Major League Central Fund, which is an account jointly owned by the Major League teams and administered by the Commissioner.  All net revenues from the All-Star Game are to be deposited into this account.  With the exception of 1945, the MLB has promoted and staged an All-Star Game every year since 1933.

16.     Defendant Robert D. Manfred Jr. is the Commissioner of Baseball.  As Commissioner, he has executive authority to act on behalf of the MLB.  Upon information and belief, Mr. Manfred is domiciled in Rye, New York and regularly conducts business at MLB's Manhattan offices.  MLB and Mr. Manfred are collectively referred to as the "MLB Defendants"

17.     Defendant Major League Baseball Players Association ("MLBPA") is the union organized under New York law that represents players on the 40-man rosters of the 30 Major League baseball teams and is vicariously liable for the acts of its Executive Director.  MLBPA's principal place of business is at 12 East 49th Street, New York, New York 10017.

18.     Defendant Tony Clark is the Executive Director of MLBPA.  He has the authority to act on behalf of MLBPA.  Upon information and belief, he is domiciled in New Jersey.  Mr. Clark regularly conducts business in New York at MLBPA's Manhattan offices.  (MLBPA and Mr. Clark are collectively referred to as the "MLBPA Defendants").

19.     Defendants John Does 1-50 are businesses, corporations and individuals that conspired with Defendants to violate 42 USC §1985 and participated in committing the other tortious claims set forth below.  However, at present the identities of these persons are unknown.

## JURISDICTION AND VENUE

20.      This Court has original jurisdiction pursuant to 28 USC §§ 1331 and 1343(a).

21.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367.

22.      This Court has diversity jurisdiction pursuant to 28 USC § 1332(a) as the claims are between citizens of different states and the amount in controversy exceeds $75,000.

23.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b) (2) and (b) (3).

## FACTS

24.      On or about July 9, 2019, MLB announced that the 2021 All-Star Game would be held at SunTrust Park, the home of the Atlanta Braves, in Cobb County, Georgia.  In 2020, the Braves change the name from SunTrust to Truist Park.

25.      The Braves had been lobbying MLB to host the event at Truist Park since the Cobb County ballpark opened in 2017.  The Game would extend an extraordinary recent run of sporting mega-events to metro Atlanta, drawn there by two new stadiums that opened in 2017 at a combined cost of more than $2 billion.  Truist Park was financed by hundreds of millions of dollars in public funding.

26.      Like other marquee sports events, the All-Star Game has grown over the years into a multi-day attraction that extends well beyond the Game itself.  Two days before the main event, the All-Star Futures game is played, featuring top minor-league prospects. One day before the Game, the popular Home Run Derby is held, featuring many of the baseball's top sluggers. Those events were scheduled to be held at Truist Park.

27.      In mid-March 2021, Cobb County Chief Financial Officer William Volckmann released a memo in which he estimated that the All-Star Game at Truist Park in July would cost

taxpayers about $2 million in expenses, but the county would see a "robust return" on the investment.  Indeed, over the past ten years, hosting cities have enjoyed economic activity ranging from $37 million to $190 million.  Volckmann noted that: "Many of our surrounding hotels/motels are already completely sold out and the travel and tourism industry, restaurants and event venues will certainly benefit from the All-Star Game."

### The Election Integrity Act

28.     During the 2020 general election, complaints of widespread voting fraud and irregularities were made in several states, including Georgia, and dozens of lawsuits were filed challenging the results in state and federal courts.  While many lawsuits were dismissed on procedural or jurisdictional grounds, proceedings are ongoing in several states, as are forensic audits in Arizona, Georgia, and New Hampshire, as well as legislative investigations.

29.     In early 2021, Georgia State Senators Burns, Miller, Dugan, Ginn and Anderson introduced Georgia Senate Bill 202 ("SB 202"), where election reforms were proposed.

30.     Ultimately, election reforms were voted on and passed through SB 202, the Election Integrity Act.  The law aims to prevent future abuses, promote transparency and confidence in election laws, ensure consistent interpretation and implementation of voting laws, prohibit a range of practices that facilitate voting fraud like ballot harvesting, and enact other facially neutral election law reforms.  They include:

- Election officials shall provide daily notice of the number of ballots received by type and the number of provisional ballots.
- Secretary of State shall obtain regular information regarding voters who may have moved to another state, died, or otherwise become ineligible to vote in Georgia and use such information to conduct list maintenance of eligible voters.
- Emergency rules adopted by the State Election Board must be submitted 20 days prior to the rule taking effect and may be suspended by a majority vote of the state House or Senate committees on Judiciary.

- State Election Board shall appoint an independent performance review board with authority to investigate and evaluate local election officials' technical competency and compliance with state law and regulation.
- Attorney General shall have the authority to create a telephone hotline for voters to file complaints and allegations of voter intimidation and illegal election activities.
- Require notice for adoption of emergency rules and consent agreements by State Elections Board.
- Eliminate private funding of county election offices. Legislature will study proposed method for state to accept private funding for elections.
- Replace signature matching on absentee ballot requests and absentee ballots with driver's license number and other types of identification.
- Absentee ballot outer envelopes shall have a privacy flap to keep personal information from view.
- Establishes uniform rules for drop boxes, including monitoring inside an early voting location.  Under a health emergency order to facilitate social distancing, drop boxes may be utilized more widely outside with security cameras.
- Set start and end dates for absentee ballot applications to better coincide with early voting period.
- Third parties may only send absentee ballot applications to individuals who have not already requested, received, or voted an absentee ballot.
- Eliminate mobile voting locations, except for emergencies declared by Governor at a particular precinct.
- Prohibit offering anything of value within 150 feet of a polling place, except water bottles offered by elections officials.
- Prohibit out-of-precinct voting.
- Require testing of voting machines and greater public notice and viewing for testing prior to elections.
- Implement security paper for ballots that includes features to authenticate the ballot.
- Create bipartisan ballot duplication panels for any ballots that need to be adjudicated.

31.     On March 26, 2021, Georgia Governor Brian Kemp signed the Election Integrity Act into law.

32.     On that same day, March 26, 2021, Defendant Tony Clark, MLB Players Association executive director, publicly stated: the "players are very much aware" of the Georgia law.  "As it relates to the All-Star Game, we have not had a conversation with the league on that issue.  If there is an opportunity to, we would look forward to having that conversation."

33.    On March 31, 2021, Mr. Biden publicly stated: "he would support Major League Baseball moving this year's All-Star Game out of Atlanta in response to recently signed legislation that tightens voting laws in Georgia."  Mr. Biden told Sage Steele of ESPN; "This is Jim Crow on steroids, what they're doing in Georgia."

34.    Between March 26th and April 1st, 2021, Defendants Manfred and Clark discussed the Georgia Election Integrity Act and the plan to punish Atlanta-based residents and businesses—including Plaintiff and its members—by moving the All-Star Game out of Atlanta.

35.    On Friday, April 2, 2021, after agreement was reached among Defendants, Commissioner Manfred announced the MLB's decision to move the All-Star Game from Atlanta.

36.    News reports covered the decision:

> Major League Baseball said Friday, April 2, 2021, it will move this season's All-Star game, a high-profile event that had been scheduled for Truist Park in July, out of Georgia in response to the state's new voting law.  MLB Commissioner Rob Manfred made the decision eight days after Gov.  Brian Kemp signed the sweeping elections overhaul into law amid fierce opposition from Democrats and voting rights activists.  "I have decided that the best way to demonstrate our values as a sport is by relocating this year's All-Star game," Manfred said. "Major League Baseball fundamentally supports voting rights for all Americans and opposes restrictions to the ballot box."[1]

37.    On April 6, 2021, the MLB announced that the All-Star Game was to be played at Coors Field in Denver, Colorado.  The Game is scheduled for July 13, 2021.

38.    Georgia state officials urged the MLB to reconsider its draconian decision.

---

[1] *MLB Moves All-Star Game Out Of Georgia Over Voting Law,* Atlanta-Journal Constitution*,* By Tim Tucker, Greg Bluestein, Stephen Deere (4/02/2021*).* https://www.ajc.com/sports/atlanta-braves/mlb-will-move-all-star-game-out-of-atlanta/TCUEJPUPZZD2RCO3DY5OZH62OU/

39.     Cobb County Board of Commissioners Chairwoman Lisa Cupid appealed to Defendant Clark to help keep the All-Star Game in Atlanta because Cobb businesses were in desperate need of the dollars it would bring.  Clark ignored her pleas.

40.     Georgia Governor Kemp called losing the event "the direct result of repeated lies from Joe Biden and Stacey Abrams about a bill that expands access to the ballot box and ensures the integrity of our elections."[2]  The lies included claims of voter suppression and not allowing voters water while they wait on line to vote:

> The Washington Post fact-checked various complaints about the Georgia bill, ultimately finding that the experts it spoke to said "the net effect was to expand the opportunities to vote for most Georgians, not limit them."
>
> Specifically, the Post found that while Biden and others claimed the new law "ends voting hours early so working people can't cast their vote after their shift is over." As the Post noted, the new law does no such thing.
>
> Critics of the bill also falsely claimed the new Georgia bill would prohibit food or drink from being passed out to people waiting in line to vote. As The Daily Wire previously reported, the bill does not prevent people waiting in line to vote from receiving food or water, but politicians and their staff cannot provide it in an effort to secure votes. Poll workers can pass out water or food as they see fit.[3]

41.     The damages resulting from the cancellation of the All-Star Game in Atlanta are staggering.  More than 8,000 hotel reservations were canceled; revenues from ticket sales and stadium food by the more than 41,000 expected to attend the events at Truist Park were lost. Past MLB All-Star events have generated staggering sums for the host communities.  New York City enjoyed $190 million in economic activity as a result of hosting the 2013 All-Star Game.

---

[2] *Id.*

[3] *Stacey Abrams Pushed Misinformation About Georgia Voting Bill. Now She's Upset By The Consequences.* By Ashe Schow, April 3, 2021.  DailyWire.com.
https://www.dailywire.com/news/stacey-abrams-pushed-misinformation-about-georgia-voting-bill-now-shes-upset-by-the-consequences

42.     The CEO of Cobb County, Georgia's tourism arm estimated that MLB's decision to move the All-Star Game to Colorado will cost the local economy $100 million.

43.     Additionally, follow-on events scheduled in Atlanta, such as conventions, have been canceled.  Notably, A-List actor Will Smith has canceled his filming of the movie Emancipation in Georgia.

### MLB Defendants' Status as State Actors

44.     Most if not all MLB clubs are state actors acting under color of law as recipients of substantial state and local financing and as tenants of stadiums owned by state and local authorities.  This public involvement ties the MLB clubs to constitutional requirements like the Equal Protection Clause, *Ludtke v. Kuhn*, 461 F. Supp. 86, 92-96 (S.D.N.Y. 1978) (New York Yankees), as it does for other sufficiently involved public tenants.  *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 717 (1961).  Indeed, Truist Park, home of the Atlanta Braves, was constructed with substantial funding from Cobb County.  "The Rockies lease Coors Field and its surrounding walkways and sidewalks from the Denver Metropolitan Major League Baseball Stadium District (Stadium District), a public entity." *Lewis v. Colo. Rockies Baseball Club*, 941 P.2d 266, 269 (Colo. 1997).  "The Stadium District is 'a body corporate and politic and a political subdivision of the state.'" *Id.*

45.     MLB is a state actor acting under color of law as an unincorporated association of state actors acting under color of law and as the recipient of a unique statutory and judicial exemption from the anti-trust laws, itself a substantial federal economic benefit.

## FIRST CLAIM FOR RELIEF
### Violation of the KKK Act -- 42 USC § 1985(3)
### Against All Defendants

46.     Plaintiff repeats the prior paragraphs.

47.     The Ku Klux Klan Act, 42 U.S.C. § 1985(3), enacted in 1871, was intended to

protect against conspiracies resulting in damages to another in his person or property, and in

relevant part states:

> If two or more persons in any State or Territory conspire . . . for the purpose of
> depriving, either directly or indirectly, any person or class of persons of the equal
> protection of the laws, or of equal privileges and immunities under the laws
> *(deprivation clause)*; or for the purpose of preventing or hindering the constituted
> authorities of any State or Territory from giving or securing to all persons within
> such State or Territory the equal protection of the laws (*hindrance clause*); . . . in
> any case of conspiracy set forth in this section, if one or more persons engaged
> therein do, or cause to be done, any act in furtherance of the object of such
> conspiracy, whereby another is injured in his person or property, or deprived of
> having and exercising any right or privilege of a citizen of the United States, the
> party so injured or deprived may have an action for the recovery of damages
> occasioned by such injury or deprivation, against any one or more of the
> conspirators.

42 U.S.C. § 1985(3) (parentheticals not in original).  The Defendants' actions set forth

here violate both equal protection and equal privileges and immunities under the

"deprivation clause" and hinder Georgia's duly elected government from ensuring equal

protection of the laws under the "hindrance clause" of § 1985(3) by violating the Equal

Protection Clause of the Fourteenth Amendment and the Privileges and Immunities

Clause of Article IV of the Constitution.

48.     Between March 26 and April 2, 2021, Defendants plotted, coordinated, and

executed a common plan and conspiracy to cancel the All-Star Game in Atlanta with the intent to

injure and deprive residents and businesses of Atlanta, Georgia of their Constitutional rights

protected under not only "equal protection of the laws" but also "equal privileges and immunities under the laws."

49.     Defendants' conspiratorial conduct has had a punitive impact on employment arising from the All-Star Game that would have been in Atlanta, Georgia but was deliberately moved to Denver, Colorado, based on conduct aimed to intimidate and punish local business, in violation of Plaintiff JCN and its members' Equal Protection under the laws. According to the U.S. Census Bureau, Atlanta has a 51% black population, while Denver's black population is only 9%. U.S. Census Bureau data also indicates that there are roughly 7.5 times more black-owned small businesses in Georgia than Colorado.

50.     This punishment was maliciously carried out against Plaintiff and its members because of the exercise of their state elected representatives to enact election laws.

51.     In furtherance of this conspiracy, Defendants engaged in a concerted campaign to misinform their supporters and the public, encouraging, and promoting intimidation and deprivation of Constitutional rights of Atlanta's residents—including Plaintiff and its members—in furtherance of Defendants' common plan to promote lies about the Election Integrity Act in an attempt to justify the collective punishment, damage, and intimidation of Plaintiff by removing the All-Star Game from Atlanta.

52.     Defendants intended to coerce Georgia's duly elected Governor and Legislature to repeal the Election Integrity Act and thereby to allow the improper election practices that the Election Integrity Act prohibits, and the ballot integrity measures that the Act requires.

53.     As a result, Defendants acted beyond any plausible legitimate civic or moral concern affecting the integrity of the sport of baseball. These Defendants conspired to cancel the

All-Star Game in Atlanta, Georgia on April 2, 2021, despite its long-planned event, with a direct, punitive, and malicious intent to hurt, intimidate and sanction Plaintiff.

54.      Plaintiff and its members were injured as a direct and proximate result of the aforesaid conduct in an amount to be determined at trial, but not less than $100 million.

55.      Defendants' conduct was willful and contumacious and designed to inflict substantial harm upon Plaintiff.  Accordingly, the Court should award not less than $1 billion in punitive damages.

## SECOND CLAIM FOR RELIEF
### Violation of 42 USC § 1983
### Against MLB Defendants

56.      Plaintiff repeats the prior paragraphs.

57.      42 U.S. Code § 1983, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

58.      In addition to violating the Equal Protection and Privileges and Immunities Clauses described above, the MLB Defendants also violated the Dormant Commerce Clause. Although the Commerce Clause empowers Congress to regulate interstate and foreign commerce it also applies where defendants seek to impose a restriction on permissible state regulation.

59.     MLB Defendants intended to punish Georgians because their state enacted a reasonable ballot-integrity statute and to coerce Georgia and its duly elected government to surrender Georgia's sovereignty in our federal system.

60.     Plaintiff and its members were injured as a direct and proximate result of the aforesaid conduct in an amount to be determined at trial, but not less than $100 million.

61.     MLB Defendants' conduct was willful and contumacious and designed to inflict substantial harm, including reputational harm, upon Plaintiff.  Accordingly, the Court should award not less than $1 billion in punitive damages.

### THIRD CLAIM FOR RELIEF
**Tortious Interference with Contract**
**Against All Defendants**

62.     Plaintiff repeats the prior paragraphs.

63.     On or about July 9, 2019, MLB announced that the 2021 All-Star Game would be played at SunTrust Park in Atlanta.

64.     Plaintiff's members had valid contracts as third-party beneficiaries to MLB's agreement to hold the All-Star Game in Atlanta on July 13, 2021.  These businesses include hotel or sleeping accommodations that were reserved, event spaces and event planners under contract, restaurants that have been reserved, and a host of small business services and performance contracts.

65.     The All-Star Game has grown over the years into a multi-day attraction that extends well beyond the Game itself.  Two days before the main event, the All-Star Futures game is played, featuring top minor-league prospects.  One day before the main event, the popular Home Run Derby is held, featuring many of the sport's top sluggers.  Those events were scheduled to be held at Truist Park.

15

66.      Defendants were aware of such contracts, based on prior All-Star Games and general public knowledge.

67.      Defendants maliciously and illegally cut off Plaintiff's access to the planned and agreed upon All-Star Game, including the ability to honor service agreements and/or anticipated business relationships.

68.      Plaintiff has been injured in an amount to be determined at trial.

69.      Defendants' actions were carried out with the purposeful intent to damage and harm Plaintiff.  Punitive damages should be awarded in amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
**Tortious Interference with Business Relationships**
**Against All Defendants**

70.      Plaintiff repeats the prior allegations.

71.      On or about July 9, 2019, MLB announced that the 2021 All-Star Game would be played at SunTrust Park in Atlanta.

72.      Plaintiff's members include small businesses that had hotel or sleeping accommodations, event spaces and events, restaurants reservations and/or other small business services that were dependent on the All-Star Game.

73.      Defendants were aware of such contracts and business relationships, which is public knowledge.

74.      Defendants maliciously and illegally cut off Plaintiff's access to the planned and agreed upon All-Star Game, including the ability to honor service agreements and/or anticipated business relationships.

75.      Plaintiff has been injured in an amount to be determined at trial.

76.      Defendants' actions were carried out with the purposeful intent to damage and harm Plaintiff.  Punitive damages should be awarded in amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
**Promissory Estoppel**
**Against the MLB Defendants**

77.      Plaintiff repeats the prior paragraphs.

78.      On or about July 9, 2019, MLB announced that the 2021 All-Star Game would go to SunTrust Park in Atlanta, Georgia.  The promise that the Game would go to Atlanta was not conditional.

79.      For the next 21 months, up and to April 2, 2021, businesses entered contracts, set aside other potential business, budgeted, planned, hired, and expected to engage in business relating to the All-Star Game in July 2021.

80.      The MLB Defendants should have reasonably expected Plaintiff to rely on its promise to hold the All-Star Game at Truist Park.  The MLB Defendants knew, from prior years of promoting and holding the All-Star Game in various cities, that local businesses plan and promise, budget and spend, in reliance on business and revenues derived from the All-Star Game.

81.      On April 2, 2021, the MLB breached its promise to Plaintiff and move the All-Star Game out of Atlanta.  On April 6, 2021 it awarded the Game to Denver, Colorado.

82.      Plaintiff and its members were injured as a proximate cause of MLB Defendants' breach.

83.      Plaintiff and its members have been damaged in an amount to be determined at trial, but not less than $100 million.

## SIXTH CLAIM FOR RELIEF
### Civil Conspiracy
### Against All Defendants

84.     Plaintiff repeats all the prior paragraphs.

85.     Defendants plotted, coordinated, and executed a common plan to injure and deprive residents and businesses of the Atlanta metropolitan region of their Constitutional rights and interfered in their contractual and business relations by maliciously and deliberately moving the All-Star Game three months before it was scheduled to be played, after having publicly and unconditionally promised for 21 months to hold the Game there.  Defendants specifically and intentionally harmed and targeted Plaintiff and its members in order to shun and injure anyone for their association as Georgians, and to intimidate Georgians, including Plaintiff, so that they do not associate in the future with any who supported the state legislature and/or governor.

86.     Plaintiff and its members have been damaged in an amount to be determined at trial but not less than $100 million.

87.     Defendants' conduct was willful and contumacious and designed to inflict substantial harm upon Plaintiff.  Accordingly, the Court should award not less than $1 billion in punitive damages.

## SEVENTH CLAIM FOR RELIEF
### Injunctive Relief
### Against All Defendants

88.     Plaintiff repeats the prior paragraphs.

89.     Defendants have violated the Equal Protection Clause, the Privileges and Immunities Clause and the Dormant Commerce Clause, as well as the other torts set forth above, by moving the 2021 All-Star Game out of Atlanta.

90.     Plaintiff will suffer irreparable injury if the Game is not immediately moved back to Atlanta.  Plaintiff also demands specific performance on MLB's promise to hold the Game at Truist Park.

91.     Defendants should be enjoined to immediately restore the 2021 Game to Truist Park in Atlanta, together with all pre-game events.

## JURY DEMAND

92.     Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

- On the First Claim For Relief, damages against all Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100 million to be placed in a fund administered by Plaintiff under the Court's supervision and distributed to victims of Defendants' tortious conduct; and punitive damages against all Defendants jointly and severally in an amount to be determined at trial but not less than $1 billion;

- On the Second Claim For Relief, damages against the MLB Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100 million to be placed in a fund administered by Plaintiff under the Court's supervision and distributed to victims of Defendants' tortious conduct; and punitive damages against all Defendants jointly and severally in an amount to be determined at trial but not less than $1 billion;

- On the Third Claim For Relief, damages against all Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100 million to be placed in a fund administered by Plaintiff under the Court's supervision and distributed to

victims of Defendants' tortious conduct; and punitive damages against all Defendants jointly and severally in an amount to be determined at trial but not less than $1 billion;

- On the Fourth Claim For Relief, damages against all Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100 million to be placed in a fund administered by Plaintiff under the Court's supervision and distributed to victims of Defendants' tortious conduct; and punitive damages against all Defendants jointly and severally in an amount to be determined at trial but not less than $1 billion;

- On the Fifth Claim for Relief, damages against the MLB Defendants in an amount to be determined at trial, but not less than $100 million to be placed in a fund administered by Plaintiff under the Court's supervision and distributed to victims of Defendants' tortious conduct;

- On the Sixth Claim For Relief, damages against all Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100 million to be placed in a fund administered by Plaintiff under the Court's supervision and distributed to victims of Defendants' tortious conduct; and punitive damages against all Defendants jointly and severally in an amount to be determined at trial but not less than $1 billion;

- On the Seventh Claim For Relief enjoining Defendants to immediately transfer the 2021 All-Star Game back to Truist Park with all pre-game events;

- ■ For costs and attorneys' fees relating not only to this action but also to claims against the fund administered by Plaintiff under the Court's supervision brought by victims of Defendants' tortious conduct; and

- ■ For whatever further relief the Court deems necessary and proper.

Dated:  New York, New York
         May 31, 2021

/s/ Howard Kleinhendler
Howard Kleinhendler
HOWARD KLEINHENDLER ESQUIRE
369 Lexington Avenue, 12th Floor
New York, New York 10017
Tel. (917) 793-1188
howard@kleinhendler.com

Counsel for Plaintiff