**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOB CREATORS NETWORK,<br><br>        Plaintiff,<br><br>                v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL D/B/A MAJOR LEAGUE BASEBALL, *et al.*,<br><br>        Defendants. | Civil Action No. 1:21-cv-4818 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

Howard Kleinhendler
Howard Kleinhendler Esquire
369 Lexington Avenue, 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com

*Counsel for Plaintiff*

# **TABLE OF CONTENTS**

Table of Authorities ......................................................................................................... ii

Introduction ...................................................................................................................... 1

Factual Background ......................................................................................................... 1

Standard of Review ......................................................................................................... 1

Argument ......................................................................................................................... 2

I.    Jurisdiction and venue are proper here. ................................................................... 3

    A.    This Court has statutory subject-matter jurisdiction. ................................. 3
    B.    Venue is proper here. .................................................................................. 3
    C.    Plaintiff has standing to press its claims. ................................................... 3

        1.    Plaintiff suffers civil-rights injuries. ............................................. 4
        2.    Atlanta-area businesses have economic standing. ........................ 5

II.    Plaintiff is likely to prevail on the merits ................................................................ 6

    A.    Plaintiff is likely to prevail on its civil rights claims. ............................... 6

        1.    Defendant MLB acts under color of legal authority. ..................... 6
        2.    Plaintiff is likely to prevail on its claims under the KKK
            Act ................................................................................................ 8

            a)    Defendants' actions fall within the Deprivation
                Clause. ........................................................................... 11
            b)    Defendants' actions fall within the Hindrance
                Clause. ........................................................................... 13
            c)    Defendants acted to further the conspiracy ................... 14
            d)    Plaintiff and its members were injured in their
                 persons and property and deprived of rights and
                 privileges as citizens. ................................................... 14

        3.    Plaintiff is likely to prevail on its claims under § 1983. ............ 15

    B.    Plaintiff is likely to prevail on tortious interference with a contract,
        business relationship, and promissory estoppel. ....................................... 16
    C.    Plaintiff is likely to prevail on quantum meruit, unjust enrichment,
        and promissory estoppel. ........................................................................... 19

III.    The remaining *Citigroup-Winter* factors favor Plaintiffs. ................................... 20

    A.    Plaintiffs are likely to suffer irreparable harm without preliminary
        relief. ........................................................................................................ 20
    B.    Plaintiff raises serious questions on the merits, and the balance of
        equities tips in Plaintiffs' favor. ............................................................... 22
    C.    The public interest favors Plaintiff. .......................................................... 25

Conclusion ...................................................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*,
2021 U.S. Dist. LEXIS 59666 (S.D. N.Y. 2021) .......................................................16, 18

*Anderson v. United States*, 417 U.S. 211 (1974) .........................................................12

*Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*,
159 F. Supp. 3d 324 (E.D.N.Y. 2016) ...............................................................19

*Austin v. New Hampshire*, 420 U.S. 656 (1975) ...........................................................12

*Baker v. Carr*, 369 U.S. 186 (1962) ...........................................................................12

*Bank of China v. Sub-Zero, Inc.*, No. 02Civ.4457(RMB)(AJP), 2005 U.S. Dist. LEXIS 8979,
2005 WL 1149780 (S.D.N.Y. May 16, 2005) ....................................................19

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015) ....................................25

*Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996).................................................21

*Bond v. United States*, 564 U.S. 211 (2011) ..................................................................5

*Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) .........................................6, 7

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 818 N.E.2d 1100, 785 N.Y.S.2d 359 (N.Y. 2004) ........16

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115 (2d Cir. 2008)...........................16

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010)...........................................................................2, 22

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .........................................................2

*Conklin v. Lovely*, 834 F.2d 543 (6th Cir. 1987) ...........................................................9

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226 (2d Cir. 2004) ..............................21

*Conroy v. Conroy*, 575 F.2d 175 (8th Cir. 1978)...........................................................10

*Crawford v. Marion County Election Bd.*, 553 U.S. 181 (2008) .................................................11

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)....................................................4

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ...........................................6

*Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443 (S.D.N.Y. 2012) ............................................7

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59 (1978) ...............................4

*Dunn v. Blumstein*, 405 U.S. 330 (1972) .....................................................................12

*Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F.Supp.3d 260 (E.D.N.Y. 2014) ...................22

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ...........................2, 6

*Federal Baseball Club, Inc. v. National League of Professional Baseball Clubs*,
259 U.S. 200 (1922)...............................................................................7, 8

*Flood v. Kuhn*, 407 U.S. 258 (1972)............................................................................8

*Foster v. Churchill*, 665 N.E.2d 153, 87 N.Y.2d 744, 642 N.Y.S.2d 583 (1996) .........................17

*Fung-Schwartz, MD v. Cerner Corp.*, 2018 U.S. Dist. LEXIS 156646,
    2018 WL 4386087 (E.D. NY 2020)..........................................................................17

*Georgia v. Penn. R. Co.*, 324 U.S. 439 (1945) .............................................................

*Global Telesystems, Inc. v. KPNQwest, N.V.*, 151 F.Supp.2d 478 (S.D.N.Y. 2001)....................24

*Griffin v. Breckenridge*, 403 U.S. 88 (1971)...............................................................10

*Haitian Ctrs. Council v. McNary*, 969 F.2d 1326 (2d Cir. 1992)...................................25

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...............................6

*Herwald v. Schweiker*, 658 F.2d 359 (5th Cir. 1981) ....................................................2

*Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984).............................................................10

*Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979) ..........................................................15

*Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333 (1977) ..............................4, 5

*Huntington v. Marsh*, 884 F.2d 648 (2d Cir. 1989) ........................................................2

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    447 F. Supp. 2d 289 (S.D.N.Y. 2006) ................................................................18

*Int'l Union v. Brock*, 477 U.S. 274 (1986) .....................................................................5

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) ..............................................................21

*Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983) ............................................................10

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933) ..................................24

*Korn v. Princz*, 226 A.D.2d 278, 641 N.Y.S.2d 283 (1st Dep't 1996).............................16

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ......................................................................3

*L. Fatato, Inc. v. Miller Brewing Company*, 582 F. Supp. 1377 (E.D.N.Y. 1984).................19

*Lafleur v. Whitman*, 300 F.3d 256 (2d Cir. 2002)............................................................6

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ...........................................8

*Lewis v. Casey,* 518 U.S. 343 (1996)..............................................................................4

*Lewis v. Colo. Rockies Baseball Club*, 941 P.2d 266 (Colo. 1997)...................................7

*Life Ins. Co. of North America v. Reichardt*, 591 F.2d 499 (9th Cir. 1979) .......................10

*Ludtke v. Kuhn*, 461 F. Supp. 86 (S.D.N.Y. 1978) ..........................................................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................3

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592 (S.D.N.Y. 2014) ...........2

*McLean v. International Harvester Co.*, 817 F.2d 1214 (5th Cir. 1987).............................9

*Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985) .......................................................11

*Mid—Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
418 F.3d 168 (2d Cir. 2005) .................................................................................19

*Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500 (E.D.N.Y. 2009) ...................19

*N.Y. State NOW v. Terry*, 886 F.2d 1339 (2d Cir. 1989) ...........................................5, 9

*Nat'l Coalition on Black Civic Participation v. Wohl*, 2020 WL 6305325
(S.D.N.Y. Oct. 28, 2020) ...................................................................................21

*Nature's Enters., Inc. v. Pearson*, 2008 WL 4700547 (S.D.N.Y. Oct. 24, 2008) .......................22

*NBT Bancorp, Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 215 A.D.2d 990, 628 N.Y.S.2d 408 (3d
Dep't 1995), aff'd, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996)) .............16

*Novotny v. Great American Federal Savings & Loan Ass'n*,
584 F.2d 1235 (3d Cir. 1978) (*en banc*) ...............................................................10

*Paper Corp. of U.S. v. Schoeller Tech. Papers, Inc.*, 773 F. Supp. 632 (S.D.N.Y. 1991) ......19, 20

*Paul v. Virginia*, 75 U.S. (8 Wall.) 168 (1868) ........................................................12

*Purcell v. Gonzalez,* 549 U.S. 1 (2006) .................................................................11

*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59 (2d Cir. 2000).........................................19

*Secured Worldwide LLC v. Kinney*, 2015 WL 1514738 (S.D.N.Y. Apr. 1, 2015).......................24

*Shelby Cty. v. Holder*, 570 U.S. 529 (2013) ........................................................4, 12

*Sierra Club v. Morton,* 405 U.S. 727 (1972) .............................................................4

*Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317 (2d Cir. 1999) .............21

*Sybalski v. Indep. Grp. Home Living Program Inc.*, 546 F.3d 255 (2d Cir. 2008) .......................6

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449 (2019) ...............................15

*Toolson v. New York Yankees, Inc.*, 346 U.S. 356 (1953) ...............................................8

*United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208 (1984) .............................13

*United Food & Commercial Workers Union Local 751 v. Brown Grp.*,
517 U.S. 544 (1996) .........................................................................................5

*Vinifera Imps. Ltd. v. Societa Agricola Castello Romitorio SRL*,
2020 U.S. Dist. LEXIS 43374, 2020 WL 1184962 (E.D. NY 2020) .................17, 19, 20

*Volk v. Coler*, 845 F.2d 1422 (7th Cir. 1988) ...........................................................9

*W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648 (1981) ...............................11

*Winter v. Natural Resources Def. Council, Inc.,* 555 U.S. 7 (2008)...................................2, 6, 20

*Yang v. Kellner*, 458 F.Supp.3d 199 (S.D.N.Y. 2020)...................................................21

*Zhang Jingrong v. Chinese Anti-Cult World Alliance*,
287 F. Supp. 3d 290 (E.D.N.Y. 2018) .............................................................7, 13

## STATUTES

U.S. Const. art. III ...............................................................................................3, 4, 5, 6

U.S. Const. amend. XIV, § 1 .................................................................................4, 11

Racketeer Influenced and Corrupt Organizations Act,
    18 U.S.C. §§ 1961-1968 ....................................................................................6

28 U.S.C. § 1331 ........................................................................................................3

28 U.S.C. § 1332(a) (1) ..............................................................................................3

28 U.S.C. § 1343(a)(1)-(4).........................................................................................3

28 U.S.C. § 1367(a) ...................................................................................................3

28 U.S.C. § 1391(b)(2) ..............................................................................................3

28 U.S.C. § 1391(b)(3) ..............................................................................................3

42 U.S.C. § 1983............................................................................................3, 7, 13, 15

42 U.S.C. § 1985(3) ..........................................................................................6, 9, 15, 21

Voting Rights Act,
    52 U.S.C. §10307(b) .......................................................................................21

Election Integrity Act,
    2021 Ga. Laws 9 ...........................................................................1, 12, 14, 25

## OTHER AUTHORITIES

6A N.Y.Jur.2d Associations and Clubs § 1…………………………………………………..7

Brett Samuels, Biden would back MLB moving All-Star Game out of Georgia, The Hill,
    03/31/21 10:32 PM EDT.................................................................................18

Judith Grant Long, Public/Private Partnerships for Major League Sports Facilities (Routledge
    2013). ..............................................................................................................7

Leon Stafford, Black-owned Atlanta businesses increase 99 percent in five years, The Atlanta
    Journal-Constitution, August 11, 2012 ........................................................

Zolan Kanno Youngs, Biden Says He Would Support Moving All-Star Game Over Georgia
    Voting, New York Times, April 1, 2021 .......................................................18

**INTRODUCTION**

For 21 months Major League Baseball ("MLB") promised the businesses of metropolitan Atlanta that in July 2021 they would be putting up tourists and fans in their hotels, serving them at their restaurants and bars, and catering events to business conferences in anticipation of the All-Star game.  Then the Georgia legislature passed a voting law discussing the ordinary and self-governing ideas for how Georgia citizens vote in their elections.  The law in fact expanded voting rights and access.   But defendants saw it differently.

Succumbing to the wave of senseless hysteria surrounding voting rights, defendants consciously and purposefully decided to punish the small businesses of Georgia for their legislature's exercise of their right to pass laws.  On April 2, 2021, eight days after Georgia Governor Kemp signed the Election Integrity Act, the MLB canceled the All-Star game in Atlanta. Four days later, on April 6, 2021, it awarded the game to Denver, Colorado.  The MLB, whose members receive billions in state financing for their stadiums, cannot discriminate against Plaintiff, a national trade association with thousands of Atlanta small business members, by depriving them of the All-Star game.  The game should be immediately transferred back to Atlanta.

**FACTUAL BACKGROUND**

The facts relevant to this motion are set forth in the accompanying Complaint and declaration of JCN's President and CEO, Alfredo Ortiz, which are incorporated herein by reference.

**STANDARD OF REVIEW**

In the Second Circuit, "a party seeking a preliminary injunction" must show:

> (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to

make them a fair ground for litigation and a balance of hardships
tipping decidedly toward the party requesting the preliminary relief.

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35

(2d Cir. 2010); *cf. Winter v. Natural Resources Def. Council, Inc.,* 555 U.S. 7, 20 (2008);

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 604 (S.D.N.Y. 2014)

(comparing *Winter* and *Citigroup*). "A showing of irreparable harm is the single most important

prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec*

*Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted). In addition

to these factors—or as part of the likelihood of succeeding on the merits[1]—a court must also assure

itself of its jurisdiction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

## ARGUMENT

"The Supreme Court has repeatedly held that the basis for injunctive relief is irreparable

injury and the inadequacy of legal remedies." *Huntington v. Marsh*, 884 F.2d 648, 651 (2d Cir.

1989). While Plaintiff JCN and its members reserve the right to seek money damages if it fails to

have the All-Star Game returned to Atlanta, money damages would be inadequate to restore the

damage to Georgia's sovereignty and reputation and to Georgians' civil rights within our federal

system, even if money damages were paid for all financial injury. As set forth in more detail in

Section III.A, *infra*, the damage here would be irreparable without injunctive relief.

---

[1] "Absent an adequate jurisdictional basis for the Court's consideration of the merits, there is *no*
*likelihood* that the Plaintiff will prevail on the merits." *Herwald v. Schweiker*, 658 F.2d 359, 363
(5th Cir. 1981) (emphasis added).

## I.      JURISDICTION AND VENUE ARE PROPER HERE.

As a threshold matter, jurisdiction and venue exist for this Court to hear this case and to issue the requested relief.

### A.      This Court has statutory subject-matter jurisdiction.

Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3) raise federal questions on civil rights issues over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(1)-(4). This Court has supplemental jurisdiction over Plaintiff's remaining claims under 28 U.S.C. § 1367(a) because they arise from the same case or controversy concerning Defendants' transfer of the 2021 All-Star Game from Atlanta to Denver.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) (1) as the claims arise between citizens of different states and the amount in controversy exceeds $75,000.

### B.      Venue is proper here.

Venue is proper here because Defendants reside here and a "substantial part of the events … giving rise to the claim occurred" in their offices. *See* 28 U.S.C. § 1391(b)(2). To the extent that venue would be improper under § 1391(b)(2), it would be proper under the next subsection. *Id.* § 1391(b)(3).

### C.      Plaintiff has standing to press its claims.

Article III standing requires an "injury in fact," which is (1) an actual or imminent invasion of a constitutionally cognizable interest, (2) which is causally connected to the challenged conduct, and (3) which likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992). In addition, standing doctrine also includes prudential elements, including a general rule that those seeking to assert absent third parties' rights to have their own Article III standing and a close relationship with the absent third parties. *Kowalski v. Tesmer*, 543 U.S. 125, 128-30 (2004).  Exceptions to that rule include associational standing where membership

organizations can assert claims on behalf of their members. *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977). Plaintiff's injuries flow directly from Defendants' act of moving the All-Star Game from Atlanta to Denver, so the question of causation and redressability flow naturally from the injury: an order enjoining Defendants to restore the All-Star Game to Atlanta would redress the injuries to Plaintiff that Defendants have caused.

Although plaintiff must establish standing separately for each form of relief it requests, *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross,"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 & n.5 (2006), standing does not require a nexus linking substantive claims pleaded to the Article III basis supporting those claims. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 78-81 (1978); *Sierra Club v. Morton,* 405 U.S. 727, 737 (1972). For example, in *Duke Power*, environmental plaintiffs could use aesthetic injury from a new nuclear power plant (*e.g.*, algae blooms from hot water released into cooling ponds) to support a *takings challenge* to statutory damage caps on catastrophic *future* nuclear accidents because the plant could not be built without the limits on future damages. *See Duke Power,* 438 U.S. at 78-81. Here, the injuries all flow from Defendants' actions to move the All-Star Game from Atlanta to Denver in retaliation for Georgia's enacting a new law.

### 1. Plaintiff suffers civil-rights injuries.

The Constitution's structural protections of liberty guarantee citizens within our federal system a right to be free from discrimination based on regional animus. U.S. CONST. amend. XIV, § 1. As the Supreme Court has explained, "[t]oday the Nation is no longer divided along [the] lines" that divided it in the 1960s, and it is no longer justifiable to treat regions differently, based on long-past practices. *Shelby Cty. v. Holder*, 570 U.S. 529, 551 (2013). Moreover, Congress extended these constitutional protections of liberty to cover *private* conspiracies. *See* 42 U.S.C. § 1985(3) (protecting "equal protection of the laws" and "equal privileges and immunities under the

laws"). Even if Congress had not so acted, a plaintiff with concrete injury has standing to invoke these structural protections of liberty. *Bond v. United States*, 564 U.S. 211, 222-23 (2011); *see also N.Y. State NOW v. Terry*, 886 F.2d 1339, 1348-49 (2d Cir. 1989) (finding standing for female patients as a protected class to bring § 1985(3) action against private parties to protect abortion rights). As the next subsections show, Plaintiff JCN and its members have suffered concrete, constitutionally cognizable injury. As such, Plaintiff has a protected liberty interest in enjoining private conspiracies against their protected liberty interests.

### 2.     Atlanta-area businesses have economic standing.

As indicated, JCN's members that are Atlanta-area businesses[2] stand to lose tens of millions of dollars from the MLB Defendants' relocating the All-Star Game to Denver. Provided that such losses are not speculative, economic loss readily satisfies Article III:

> Hecht's first ground of appeal is that racketeering conduct violating section 1962(c) caused him injury in the form of lost business commissions. This injury is too speculative to confer standing, because Hecht only alleges that he would have lost commissions in the future, and not that he has lost any yet. Even assuming that Hecht actually lost commissions, we hold that his injury was not proximately caused by violations of section 1962(c).

---

[2] Significantly for JCN's members, the injunctive relief requested here does not require the participation of individual businesses who would need to prove their individual damages. *Int'l Union v. Brock*, 477 U.S. 274, 284, 287 (1986) (purely legal actions for injunctive and declaratory relief do not require the participation of individual members.). Thus, JCN must meet only the first two prongs of the *Hunt* test, namely that individual members suffer Article III injury and that it is germane to JCN's mission to protect members from such injuries. *United Food & Commercial Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 551-53 (1996).

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**                                      5

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990).[3] Here, JCN members had confirmed reservations that were cancelled, and there is ample evidence of the All-Star Game's economic impact to provide sufficient economic injury: "The injury-in-fact necessary for standing need not be large, an identifiable trifle will suffice." *Lafleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002) (internal quotation marks omitted).  Thus, there is sufficient non-speculative economic loss to satisfy Article III many times over.

## II.    PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS.

The first—and most important—*Winter* factor is the likelihood of the plaintiff's prevailing. *Winter,* 555 U.S. at 20; *Faiveley*, 559 F.3d at 118. Plaintiff readily meets that standard.

### A.    <u>Plaintiff is likely to prevail on its civil rights claims.</u>

Plaintiff is likely to prevail on its civil rights claims under 42 U.S.C. §§ 1983, 1985(3) because Defendants have violated federal equal-protection rights and MLB qualifies as a state actor. But even if MLB were not a state actor, Defendants' conspiracy to violate federal rights would be actionable under the "hindrance clause" of 42 U.S.C. § 1985(3).

#### 1.    <u>Defendant MLB acts under color of legal authority.</u>

Public tenants can be sufficiently linked to their government landlords to trigger a governmental nexus for purposes of civil rights causes of action. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 717 (1961) (holding that restaurant in private parking garage that refused to serve Black customer subject to civil rights claim as state actor because garage was publicly funded); *Sybalski v. Indep. Grp. Home Living Program Inc.*, 546 F.3d 255, 257 (2d Cir. 2008);

---

[3] Significantly, *Hecht* arose under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and "RICO standing is a more rigorous matter than standing under Article III." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

*Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 465 (S.D.N.Y. 2012). Indeed, this Court has held that the MLB clubs are state actors because they receive substantial financing from state and local governments.[4] *See Ludtke v. Kuhn*, 461 F. Supp. 86, 92-96 (S.D.N.Y. 1978) (New York City's involvement with Yankee Stadium sufficed to satisfy state action requirement for purposes of § 1983 gender discrimination claim challenging Stadium policy that barred female reporters from entering Clubhouse locker room).[5] And, as an unincorporated association, the MLB, through its members, is itself a state actor.[6]

Moreover, baseball's business status as we know it today was created by a court decision written by Justice Holmes in *Federal Baseball Club, Inc. v. National League of Professional Baseball Clubs*, 259 U.S. 200 (1922). There, Justice Holmes explained that baseball is not commerce for the purposes of the anti-trust act, and the league also exists as a "*purely state affair.*"

---

[4] More than half of MLB teams get more than half of the funding for their stadiums from public sources. Judith Grant Long, *Public/Private Partnerships for Major League Sports Facilities*, at 132-33 (Routledge 2013). "The Rockies lease Coors Field and its surrounding walkways and sidewalks from the Denver Metropolitan Major League Baseball Stadium District (Stadium District), a public entity." *Lewis v. Colo. Rockies Baseball Club*, 941 P.2d 266, 269 (Colo. 1997). "The Stadium District is 'a body corporate and politic and a political subdivision of the state.'" *Id.* n,1 (quoting § 32-14-104, 13 C.R.S. (1996 Supp.)). This is similar to the language in *Wilmington Parking Authority*: "The Authority was created by the City of Wilmington pursuant to 22 Del. Code, §§ 501-515. It is 'a public body corporate and politic, exercising public powers of the State as an agency thereof.' § 504." *Wilmington Parking Auth.*, 365 U.S. at 717.

[5] Indeed, section 1985(3) is also actionable against a non-state actor. *Zhang Jingrong v. Chinese Anti-Cult World Alliance*, 287 F. Supp. 3d 290, 303 (E.D.N.Y. 2018). ("[I]t is clear that a claim under § 1985(3) for violation of the constitutional right to travel may be asserted against private defendants; no state action need be alleged or proven.")

[6] "An unincorporated association is not a person or a natural person. At common law, an unincorporated association is not an entity, and has no status distinct from the persons composing it. In some jurisdictions," including New York, "an unincorporated association does not exist as a legal entity apart from its members." 6A N.Y.Jur.2d Associations and Clubs § 1 (citations omitted).

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION                                                    7

> The business is giving exhibitions of baseball, which are purely state affairs. It is true that, in order to attain for these exhibitions the great popularity that they have achieved, competitions must be arranged between clubs from different cities and States. But the fact that in order to give the exhibitions the Leagues must induce free persons to cross state lines and must arrange and pay for their doing so is not enough to change the character of the business.

*Id.* at 208-09.

The Supreme Court later explained that the business of baseball, unlike other sports or organizations, exists as an anomaly and an aberration created by the Supreme Court, which Congress has not sought to fix.

> In *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs*, 259 U.S. 200 (1922), this Court held that the business of providing **public baseball games for profit** between clubs of professional baseball players was not within the scope of the federal antitrust laws.

*Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 356-357 (1953) (emphasis added).  *See also Flood v. Kuhn*, 407 U.S. 258, 282 (1972).

Nevertheless, as a judicially created entity, also labelled by the court as "an anomaly," "a public game for profit," and a "purely a state affair," the MLB is not above the Constitution, or exempt from liability for malicious torts. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 376 (1995). Indeed, either because a majority of MLB clubs are public actors or because MLB itself is a public creature, MLB is subject to liability as a public actor under color of legal authority.

## 2.        Plaintiff is likely to prevail on its claims under the KKK Act.

The Ku Klux Klan Act, 42 U.S.C. § 1985(3), enacted in 1871, was intended to protect against conspiracies resulting in deprivation of rights, injuries, or damages to another in his person or property, and in relevant part states:

> If two or more persons in any State or Territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal

> privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; … in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Each of Defendants plotted, coordinated, and executed a common plan and conspiracy to cancel the All-Star game in Atlanta with the intent to injure and deprive residents and businesses of Atlanta, Georgia of their Constitutional rights protected under not only "equal protection of the laws" but also "equal privileges and immunities under the laws" that § 1985(3) makes actionable. The Second Circuit in addressing the Constitutional rights of women seeking an abortion at an abortion clinic without private interference held that § 1985(3) encompasses women as a class beyond the specific evil—namely, racial discrimination—that Congress enacted the KKK Act to redress. *N.Y. State NOW v. Terry*, 886 F.2d 1339, 1359, (2nd Cir. 1989) ("§ 1985(3) extends … to conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty") (*citing Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988)).

> Moreover, this Circuit as well as other Circuits have held that § 1985(3) encompasses women as a class, or classes based on political associations, or those based on ethnicity, none of which groups were specifically contemplated by the 42nd Congress.

*Id*. (*citing* "§ 1985(3) extends … to conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty."); *Conklin v. Lovely*, 834 F.2d 543, 549 (6th Cir. 1987) (political views); *McLean v. International Harvester Co.*, 817 F.2d 1214, 1218-19 (5th Cir. 1987) (section protects classes characterized by "some inherited or immutable characteristic" or by

"political beliefs or associations"); *Hobson v. Wilson*, 237 U.S. App. D.C. 219, 737 F.2d 1, 21 (D.C. Cir. 1984) (political affiliations with racial overtones), *cert. denied,* 470 U.S. 1084 (1985); *Keating v. Carey*, 706 F.2d 377, 386-88 (2d Cir. 1983) (political affiliation); *Life Ins. Co. of North America v. Reichardt*, 591 F.2d 499, 505 (9th Cir. 1979) (women purchasers of disability insurance); *Novotny v. Great American Federal Savings & Loan Ass'n*, 584 F.2d 1235, 1241-43 (3d Cir. 1978) (*en banc*) (women), *vacated on other grounds*, 442 U.S. 366 (1979); *Conroy v. Conroy*, 575 F.2d 175, 177 (8th Cir. 1978) (sex and ethnicity). "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971).

Defendants' conspiratorial conduct has had a punitive impact on employment arising from the All-Star Game that would have been in Atlanta, Georgia but was deliberately moved to Denver, Colorado, based on conduct aimed to intimidate and punish local business, in violation of Plaintiff JCN and its members' rights of equal protection and equal privileges and immunities under the laws. According to the U.S. Census Bureau, Atlanta has a 51% black population, while Denver has only a 9% black population. U.S. Census Bureau data also indicates that there are roughly 7.5 times more black-owned small businesses in Georgia than Colorado. (Ortiz Dec. ¶ 8).

Businesses across the Atlanta metro area were looking forward to a jolt of economic activity driven by MLB's All-Star events, including the popular home run derby.  Recent MLB All-Star events have generated between $65 million and $190 million for the host communities. The CEO of Cobb County's tourism arm estimated that MLB's decision to move the All-Star Game to Colorado will cost the local economy approximately $100 million.

a)    <u>**Defendants' actions fall within the Deprivation Clause.**</u>

Defendants' conspiracy triggers both prongs of the deprivation clause: equal protection and equal privileges and immunities. Moreover, as indicated above, these violations coalesce with the violation of the Dormant Commerce Clause and the liberty interests in our federal system. As such, Plaintiff may challenge these violations under § 1985(3)'s deprivation clause.

By discriminating against Georgia residents and businesses solely because they reside in Georgia, Defendants violate the Constitution's guarantee of equal protection. U.S. CONST. amend. XIV, § 1. "In the equal protection context, … if [Defendants'] purpose is found to be legitimate, the [action] stands as long as the burden it imposes is found to be rationally related to that purpose." *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 881 (1985). But punishing Georgia residents and businesses to pressure Georgia to change a law that does not affect Defendants is not rationally related to any legitimate purpose if that "pressure transgresses the bounds of the Commerce Clause or the Privileges and Immunities Clause of Art. IV, § 2." *W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 671 (1981). As indicated in this Section for the Privileges and Immunities Clause, and in Section II.A.3, *infra*, for the Commerce Clause, Defendants' conspiracy violates both of those provisions.

The core violation is that Defendants claim to treat Georgia residents and Atlanta residents differently based on pretextual reasons[7] that harm those residents. How else could Defendants

---

[7] To the extent that Defendants claim to be protecting civil rights by attacking Georgia's government, their claim is frivolous. States have every right and arguably the obligation to require voters to provide identification. *Crawford v. Marion County Election Bd.,* 553 U.S. 181, 189 (2008) (states have an interest in preventing voter fraud and ensuring voter confidence). "Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006). Moreover, Georgia's decisions on Georgia elections are just that: Georgia's decisions.

justify moving the All-Star Game to a state with less generous early-voting laws than Georgia? Defendants cannot find legitimate fault with Georgia's Election Integrity Act: "Every voter in a federal … election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted." *Anderson v. United States*, 417 U.S. 211, 227 (1974); *Baker v. Carr*, 369 U.S. 186, 208 (1962). Put differently, "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction;" *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). For Defendants to punish Georgia for taking these reasonable measures—measures with Georgia's sovereign right in our federal system—is to claim for themselves the right to preclear Georgia's election laws in a way that the Supreme Court has held to violate equal-protection principles when Congress itself takes that action. *Shelby Cty. v. Holder*, 570 U.S. 529, 544 (2013). Defendants do not have the right or power to discriminate on that basis.

Defendants' conspiracy also denies Georgians equal privileges and immunities in our federal system: "It was undoubtedly the object of the [Privileges and Immunities Clause] to place the citizens of each State upon the same footing with citizens of other States, [and] … no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this." *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1868). Our federal system prohibits imposing "special burdens" on other states:

> The Privileges and Immunities Clause, by making [state citizenship or residence] an improper basis for locating a special burden, implicates *not only the individual's right to nondiscriminatory treatment but also*, perhaps more so, the *structural balance essential to the concept of federalism.*

*Austin v. New Hampshire*, 420 U.S. 656, 660-61 (1975). Interests in business and employment are "sufficiently basic to the livelihood of the Nation … as to fall within the purview of the Privileges and Immunities Clause even though the [work in question concerns] projects funded in whole or

part by [state actors]." *United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 221-22 (1984) (internal citations and quotations omitted); *see also Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 388 (1978) (one's "means of a livelihood" is "'fundamental' under the Privileges and Immunities Clause"). Defendants' "special burden" on Georgians could be justified only if Georgia's affected residents and businesses "constitute a peculiar source" of the "*local evils*" that Defendants targeted. *United Bldg. & Constr.*, 465 U.S. at 222-23 ("nonresidents must somehow be shown to constitute a peculiar source of the evil at which [Defendants' action] is aimed") (internal quotation marks omitted). Here, Defendants do not target local evils—*i.e.*, evils in New York or Los Angeles—but rather attempt to interfere with Georgia's election laws, and Defendants have intentionally targeted innocent residents and businesses who are in no way the "peculiar source" of Georgia's new election law.

**b)**     **<u>Defendants' actions fall within the Hindrance Clause.</u>**

The hindrance clause provides a cause of action when—as here—conspirators attack the organs of state government that are trying to secure equal protection for a state's citizens. The same equal-protection violation that animates Plaintiff's claim under the deprivation clause and § 1983 also animates its claim under the hindrance clause with one key difference: the "hindrance clause" applies equally to non-state actors like its KKK namesake as it does to state actors. *See Zhang Jingrong*, 287 F. Supp. 3d at 300 ("Although the Supreme Court has interpreted the 'Deprivation Clause' of § 1985(3), it has never construed the Hindrance Clause") (interior quotations marks and alterations omitted). Here, Defendants seek to hinder Georgia's effort to secure equal voting rights for its citizens, in brazen violation of federalism and the Equal Protection Clause, which would be actionable under the hindrance clause even if Defendants are not state actors. Defendants do not have a right in our federal system to attack Georgia's governments, much less Georgians.

**c)**  **Defendants acted to further the conspiracy.**

In furtherance of this conspiracy, Defendants engaged in a concerted campaign to misinform their supporters and the public about the Election Integrity Act, encouraging and promoting intimidation and deprivation of Constitutional rights of Atlanta's residents in furtherance of Defendants' common plan to promote lies about the Election Integrity Act.

As a result, Defendants acted beyond the outer perimeter of any legitimate duty because they acted *after* the democratic process concluded in the passing of the subject legislation. The MLB and MLBPA Defendants cancelled the All-Star Game in Atlanta on April 2, 2021, despite its long-planned scheduling; with a direct, punitive, and malicious intent to hurt, intimidate and sanction Plaintiffs.

**d)**  **Plaintiff and its members were injured in their persons and property and deprived of rights and privileges as citizens.**

Plaintiff JCN and its members were injured by this conspiratorial action through injuries that are actual and prospective, for sums up to $100 million. As a result, Plaintiff seeks equitable relief requiring the immediate return of the 2021 All-Star Game to Atlanta, Georgia. Defendants acted deliberately and maliciously and in reckless disregard of federally protected rights. In addition, Plaintiffs seek relief in an amount to be determined at trial, but not less than $100 million, to be placed into a fund for economic assistance to Atlanta-area businesses and workers ("Atlanta Economic Assistance Fund") harmed by Defendants actions. The Atlanta Economic Assistance Fund would be administered by Plaintiff under the court's supervision and distributed to victims of Defendants' tortious conduct and civil rights violations.  Plaintiffs also seek an award of punitive damages of not less than $1 billion to punish Defendants for engaging in a concerted and continuing course of unlawful conduct and to deter Defendants and others from engaging in similar

unlawful conduct in the future; punitive damages would also be paid into the Atlanta Economic Assistance Fund.

**3.     Plaintiff is likely to prevail on its claims under § 1983.**

Defendants' conduct is equally actionable under 42 U.S.C. § 1983 for the constitutional violations described in 42 U.S.C. § 1985(3), but § 1983 is even broader. In addition to violating the Equal Protection and Privileges and Immunities Clauses, Defendants also violated the Dormant Commerce Clause. Although the Commerce Clause empowers Congress to regulate interstate and foreign commerce, the Clause has been "interpreted … not only as an authorization for congressional action, but also, even in the absence of a conflicting federal statute, as a restriction on permissible state regulation." *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979); *see also Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449, 2459-61 (2019). Under this Dormant Commerce Clause jurisprudence, discrimination "against … nonresident economic actors … can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." *Tenn. Wine*, 139 S.Ct. at 2461 (internal quotations marks omitted). This type of discrimination "invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Hughes*, 441 U.S. at 337. Again, "local purpose" here refers to local in the cities and states of the other MLB clubs. In short, there is no local purpose here but "woke" virtue signaling. But even if Georgia's election laws affected Defendants, nondiscriminatory alternatives exist: Defendants could file a lawsuit challenging Georgia's law, write letters, or lobby legislators. But to impose a boycott that crushes wholly uninvolved businesses and residents is as senseless and cruel as it is unconstitutional.

**B.**     **Plaintiff is likely to prevail on tortious interference with a contract, business relationship, and promissory estoppel.**

To state a claim under New York law for tortious interference with business relations, four elements must be sufficiently pled: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

As a general rule, in order to satisfy the third element of a tortious interference with business relations claim, "the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 818 N.E.2d 1100, 1103, 785 N.Y.S.2d 359 (N.Y. 2004). In short, the plaintiff must allege that it was "actually and wrongfully prevented from entering into or continuing in a specific business relationship." *Korn v. Princz*, 226 A.D.2d 278, 641 N.Y.S.2d 283, 283 (1st Dep't 1996). Courts have recognized an exception to this rule "where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*, 2021 U.S. Dist. LEXIS 59666 (S.D.N.Y. 2021) (*citing Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004) (*quoting NBT Bancorp, Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 215 A.D.2d 990, 990, 628 N.Y.S.2d 408 (3d Dep't 1995), aff'd, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996)).

Similarly, a claim for tortious interference with contract "requires proof of (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that

contract; (3) the defendant's intentional procuring of the breach, and (4) damages."[8] *Foster v. Churchill*, 665 N.E.2d 153, 87 N.Y.2d 744, 749-50, 642 N.Y.S.2d 583 (1996).

> Both causes of actions require some form of improper motive, and do not permit tortious interference claims where the alleged tortfeasor acted solely out of legitimate economic self-interest. *See RFP LLC*, 788 F. Supp. 2d at 196 (explaining that if a party's actions were motivated at all by its own competing interests, rather than for the sole purpose of inflicting harm, a tortious interference with business relations claim must be dismissed); *Law Offices of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 15 N.Y.S.3d 814, 131 A.D.3d 583, 586 (App. Div. 2015) (noting that "where the offending party's actions are motivated by economic self-interest, they cannot be characterized as solely malicious" and a claim for tortious interference with business relations cannot be established); *Foster*, 87 N.Y.2d at 750, 665 N.E.2d 153 ("economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality").

*Vinifera Imps. Ltd. v. Societa Agricola Castello Romitorio SRL*, 2020 U.S. Dist. LEXIS 43374, *33-34, 2020 WL 1184962 (E.D. NY 2020); *see also, Fung-Schwartz, MD v. Cerner Corp.*, 2018 U.S. Dist. LEXIS 156646, *23-24, 2018 WL 4386087 (E.D. NY 2020).

On March 31, 2021, President Biden, using the power of his office, intentionally targeted the majority-black American city, Atlanta, including and specifically its small businesses that invested and relied on the long planned All-Star game, and Georgia citizens, including Plaintiff's members, in violation of their Constitutional rights:

---

[8]  Plaintiff JCN is not seeking compensatory damages on behalf of its individual members, but is instead seeking punitive damages in an amount to be determined at trial, but not less than $1 billion.  Because punitive damages serve the purpose of deterrence and punishment of Defendants' unlawful conduct, rather than compensation, the assessment of punitive damages does not require individualized proof or quantification of injury by plaintiff under *Hunt's* third prong. In addition, as explained below, JCN is instead requesting that this Court exercise its equitable powers to order Defendants to assess damages against all Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100 million to be placed in a fund administered by Plaintiff under the Court's supervision and distributed to victims of Defendants' tortious conduct and civil rights violations.

> "[President] Biden said on Wednesday, in a televised interview with ESPN before opening day began, said he would support Major League Baseball moving this year's All-Star Game out of Atlanta in response to recently signed legislation that tightens voting laws in Georgia."

Brett Samuels, *Biden would back MLB moving All-Star Game out of Georgia,* The Hill, 03/31/21 10:32 PM EDT.[9]

President Biden told Sage Steele of ESPN "This is Jim Crow on steroids, what they're doing in Georgia." Zolan Kanno Youngs, *Biden Says He Would Support Moving All-Star Game Over Georgia Voting*, New York Times, April 1, 2021.[10] The President's demand for moving the All-Star Game out of Atlanta, as a response to passage of a bill into law that he views as "Jim Crow on steroids" is punitive against precisely those people the President claimed to be concerned for; it was an economic attack on black Americans.

Two days later, on April 2, 2021, less than three months before the scheduled Game, the MLB and the MLBPA Defendants purposefully, deliberately, and intentionally cancelled the July 2021 All-Star Game in Atlanta, Georgia. The MLB and MLBPA Defendants, less than a week later, on April 6, 2021, announced their decision that the All-Star Game would take place in Denver, Colorado.

Under New York law, tortfeasors may be held jointly and severally liable when they "act concurrently or in concert to produce a single injury." *ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*, 2021 U.S. Dist. LEXIS 59666, *62-63. (*citing In re Methyl Tertiary Butyl Ether*

---

[9]   https://thehill.com/homenews/administration/545903-biden-would-back-mlb-moving-all-star-game-out-of-georgia (last visited May 31, 2021).

[10] https://www.nytimes.com/2021/04/01/us/politics/biden-espn-baseball-georgia.html (last visited May 31, 2021).

*("MTBE") Prods. Liab. Litig.*, 447 F. Supp. 2d 289, 297 (S.D.N.Y. 2006) (collecting cases); *see also Bank of China v. Sub-Zero, Inc.*, No. 02Civ.4457(RMB)(AJP), 2005 U.S. Dist. LEXIS 8979, 2005 WL 1149780, at *1 (S.D.N.Y. May 16, 2005) (collecting cases).

**C.   Plaintiff is likely to prevail on quantum meruit, unjust enrichment, and promissory estoppel.**

"Quantum meruit and unjust enrichment are not separate causes of action' and are therefore analyzed under the same principles." *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016) (Spatt, J.) (quoting *Mid—Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005)). In order to recover in quantum meruit under New York law, a claimant must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000). "The existence of such an implied contract is a question of fact." *Paper Corp. of U.S. v. Schoeller Tech. Papers, Inc.*, 773 F. Supp. 632, 641 (S.D.N.Y. 1991) (citing *L. Fatato, Inc. v. Miller Brewing Co.*, 582 F. Supp. 1377 (E.D.N.Y. 1984)).

Other courts have denied summary judgment against claims asserting quantum meruit and unjust enrichment in similar distribution arrangements. *Vinifera Imps. Ltd. v. Societa Agricola Castello Romitorio SRL*, 2020 U.S. Dist. LEXIS 43374, *26-29, 2020 WL 1184962 (E.D. NY 2020) (*citing Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500 (E.D.N.Y. 2009)(Court recognized that plaintiff sought to recover "for the substantial time and effort it expended to build and promote good will toward defendant's products and to increase the sales of its products."); *L. Fatato, Inc. v. Miller Brewing Company*, 582 F. Supp. 1377 (E.D.N.Y. 1984), (the plaintiff distributed the defendant's beer during a period of labor unrest, spending large sums to improve its equipment and warehousing capabilities and also sustaining property damage). The

court found that whether these distribution services unjustly enriched the defendant, requiring restitution, to be "genuine issues for trial.") *Paper Corp.*, 773 F. Supp. at 641 (The court found these facts sufficient to defeat a motion for summary judgment, because the plaintiff set forth evidence that it developed a relationship with purchasers; the defendant accepted that performance; it received a markup on the sale of the defendant's products; and it had a reasonable expectation of compensation, as well as the reasonable value of such compensation.

Similar to these cases, Plaintiff JCN and its members devoted significant time and resources towards preparing for, investing in, and promoting the All-Star Game in Atlanta, to the benefit of the MLB and MLBPA. Plaintiff JCN and its members did so pursuant to the expectation that they would be compensated through the profits recovered from the events surrounding the All-Star Game in Atlanta during the exclusivity period. By terminating the parties' exclusive arrangement, Defendants recouped the benefits of Plaintiff's efforts without compensating them for those services. Whether Plaintiff benefited Defendant; whether Plaintiff reasonably expected compensation for those services; and the reasonable value of those services are issues for the jury to decide. *See Vinifera Imps. Ltd. v. Societa Agricola Castello Romitorio SRL*, 2020 U.S. Dist. LEXIS 43374, *26-29, 2020 WL 1184962 (E.D.N.Y. 2020).

## III.   THE REMAINING *CITIGROUP-WINTER* FACTORS FAVOR PLAINTIFFS.

In addition to being likely to prevail on the merits, Plaintiffs satisfy the other *Winter* factors.

### A.   <u>Plaintiffs are likely to suffer irreparable harm without preliminary relief.</u>

To establish irreparable harm, Plaintiff "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if the court waits until the end of the trial to resolve the harm." *Faiveley*, 559 F.3d at 118 (internal quotations and citation omitted). This requirement is easily met here. As set forth in the Complaint and the instant motion, Plaintiff JCN and its members, and

similarly situated Georgia workers, small businesses, voters, and governmental entities, are threatened with actual and imminent injuries – constitutional harms due to deprivation of rights, $100 million or more in lost revenues, plus incalculable losses due to reputational harms and loss of goodwill – as a direct and intended result of Defendants' actions. The constitutional, economic, and reputational harms are not remote or speculative, as they have occurred and are ongoing. They cannot be remedied at a future trial because the All-Star Game is scheduled to be held in six weeks from now on July 13, 2021. The harms are ultimately due to the loss of the All-Star Game itself; like the innocence of a child or a free and fair election, once it is lost it can never be regained.

With respect to the alleged constitutional violations, "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Yang v. Kellner*, 458 F.Supp.3d 199, 210 (S.D.N.Y. 2020). "It is the ***alleged*** violation of a constitutional right that triggers a finding of irreparable harm." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). Accordingly, "no separate showing of irreparable harm is necessary," *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999). *See also Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[w]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury."). Thus, "[b]y the very nature of their [constitutional] allegations, [Plaintiffs] have met the first prong of the test." *Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir. 1996). *See also Nat'l Coalition on Black Civic Participation v. Wohl*, 2020 WL 6305325, at *10-12 (S.D.N.Y. Oct. 28, 2020) (finding irreparable harm for similar conspiracy to deprive citizens of constitutional and statutory rights through economic threats and other threats in violation of 42 U.S.C. § 1985(3) and Section 11(b) of Voting Rights Act, 52 U.S.C. § 10307(b)).

With respect to Plaintiff JCN's tortious interference claims on behalf of its members, "[t]he loss of goodwill constitutes irreparable harm," *Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F.Supp.3d 260, 278 (E.D.N.Y. 2014) (internal quotation and citation omitted). The harm from the loss of goodwill is irreparable through monetary damages because it is ongoing, *id.*, and "because it cannot be quantified." *Nature's Enters., Inc. v. Pearson*, 2008 WL 4700547, at *3 (S.D.N.Y. Oct. 24, 2008). The reputational harm cannot be quantified due both to the ongoing injury, and the likelihood that the loss of the All-Star Game will lead to the cancellation of future events, conferences or conventions, or the loss altogether from businesses leaving Atlanta or Georgia.

**B.**   **Plaintiff raises serious questions on the merits, and the balance of equities tips in Plaintiffs' favor.**

Even if this court determines that Plaintiff has not established a substantial likelihood of success on the merits of the claims raised in the Complaint, Plaintiff has at a minimum raised "serious questions going to the merits" of those claims, and the balance of hardships tip decisively in its favor. As the Second Circuit has explained, the value of the "serious questions" standard gives this court "flexibility in the face of varying factual scenarios" and "uncertainties inherent at the outset" of litigation," because "[p]reliminary injunctions should not be confined to cases that are simple or easy." *Citigroup*, 598 F.2d at 35. *See also id.* ("The "serious questions" standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction.") (citation omitted).

In the absence of a preliminary injunction granting the requested relief – ordering MLB to hold the All-Star Game in Atlanta – the balance of hardships would fall entirely on Plaintiff JCN and its members. The Complaint and instant Motion detail the harms and hardships that have and

will befall Plaintiff due to MLB's unlawful and unconstitutional actions, namely, constitutional violations from conspiracy to deprive Plaintiff JCN and its members of their rights under the Equal Protection Clause, the Privileges and Immunities Cause, the attack on the State of Georgia's sovereignty and election integrity, and tortious acts resulting in more than $100 million in economic losses, as well as reputational harm, loss of good will, and loss of future events and businesses.

MLB and its co-defendants would suffer no loss or hardship from the grant of injunctive relief, or at least no harm cognizable by this Court. MLB announced that it would hold the All-Star Game in Atlanta, Georgia in July 2019. MLB spent the following nearly two years preparing to hold the All-Star Game in Atlanta, until it abruptly decided to cancel the game in Atlanta on April 2, 2021, and then move the game to Denver on April 6, 2021. All of the contractual relations and other arrangements to hold the All-Star Game in Atlanta, Georgia were in place at that time and largely remain in place. Plaintiff's members and other similarly situated Georgia employees and businesses are willing and able to implement these arrangements and perform their contractual obligations as required to hold the All-Star Game in Atlanta. To put matters in rough quantitative terms, Georgians and MLB have spent nearly two years preparing for the July 2021 All-Star Game, the full time and value of which will be lost in the absence of an injunction, whereas MLB has spent less than two months in illegally moving the game to Denver, Colorado, which amounts to a 12:1 ratio in the balance of hardships, even if the Court were to ignore the constitutional harms and to disregard that MLB's hardships that are entirely a result of its own misconduct.

Plaintiff respectfully submits that this court should heavily discount the costs or hardships to MLB and other Defendants, as they are entirely a result of their unconstitutional, unlawful, and inequitable actions in moving the All-Star Game. Defendants' constitutional violations and

tortious interference have been described in detail above. In addition, MLB appears to have violated the Major League Constitution in moving the game from Atlanta to Denver. Specifically, the Major League Constitution requires that "[a]ny action relating to the All-Star Game" be approved by a majority of Major League Clubs at a regular or special Major League Meeting, and that such action cannot be taken without at least 10 days' prior written notice requirement without unanimous consent to waive this requirement. *See* Ex. 1, Major League Constitution, Art V, §§ 1(b) and 2(a)(1). This written notice requirement could not have been met during the period between the enactment of SB 202 on March 26, 2021, and MLB's decision seven days later on April 2, 2021, to move the All-Star Game from Atlanta to Denver. Further, upon information and belief, MLB did not have unanimous consent to waive the written notice requirement, because at least one Major League Club, the Atlanta Braves, did not consent.

In the Second Circuit, a defendants' unclean hands or other inequitable conduct tips the balance of equities or hardships in favor of granting an injunction:

> It is well-established that "whenever a party ... has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court [sitting in equity] will be shut against him in limine."

*Secured Worldwide LLC v. Kinney*, 2015 WL 1514738, at *22 (S.D.N.Y. Apr. 1, 2015) (*quoting Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) (finding that defendant's inequitable conduct and self-help tipped the balance of equities in favor of granting injunction). *See also Global Telesystems, Inc. v. KPNQwest, N.V.*, 151 F.Supp.2d 478, 483 (S.D.N.Y. 2001) (finding defendant's "unclean hands" in deriving benefit from hiring competitor's former employee in breach of employment contract tipped balance decisively in plaintiff's favor).

C.      <u>**The public interest favors Plaintiff.**</u>

The public interest favors Plaintiff JCN and its members because the merits favor Plaintiff on requiring the MLB and MLBPA to honor their agreements, *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 897 (2d Cir. 2015) ("public interest here is served by the enforcement of the parties' lawful agreement"), and in vindicating Plaintiffs' constitutional rights. *Haitian Ctrs. Council v. McNary*, 969 F.2d 1326, 1347 n.18 (2d Cir.) (constitutional compliance is in the public interest), modified on other grounds, 969 F.2d 1350 (2d Cir. 1992), *rev'd on other grounds, sub nom. Sale v. Haitian Ctrs. Council*, 509 U.S. 155 (1993). Defendants' contrary arguments lack merit, and this Court should not protect Defendants' bad-faith and ill-informed arguments against Georgia's Election Integrity Act.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted.

Dated: May 31, 2021                    Respectfully submitted,


                                        */s/ Howard Kleinhendler*
                                        Howard Kleinhendler
                                        HOWARD KLEINHENDLER ESQUIRE
                                        369 Lexington Avenue, 12th Floor
                                        New York, New York 10017
                                        (917) 793-1188
                                        howard@kleinhendler.com

                                        *Counsel for Plaintiff*