# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOB CREATORS NETWORK,

    Plaintiff,

        v.

OFFICE OF THE COMMISSIONER OF
BASEBALL D/B/A MAJOR LEAGUE
BASEBALL, *et al.*,

    Defendants.

No. 1:21-cv-04818-VEC

Judge Valerie E. Caproni

## DEFENDANTS MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION AND TONY CLARK'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Steve Grimes (*pro hac vice forthcoming*)
Elizabeth S. Deshaies (*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
sgrimes@winston.com
ldeshaies@winston.com

Jeffrey L. Kessler
David L. Greenspan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com

Lauren Gailey (*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
lgailey@winston.com

*Counsel for Defendants Major League Baseball Players Association and Tony Clark*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

LEGAL ARGUMENT .......................................................................................... 5

I.     PLAINTIFF LACKS ARTICLE III STANDING TO SEEK AN INJUNCTION ............ 5

    A.     Neither JCN nor its putative members have standing because their claimed
        injuries are not "fairly traceable" to, and cannot be "redressed" by, the
        MLBPA .................................................................................................... 6

    B.     JCN lacks standing to seek an injunction based on alleged *past* injuries ............... 7

    C.     JCN also lacks standing to sue on behalf of any third party .................................. 7

        1.     Plaintiff cannot establish associational standing to sue on behalf of
            its "members" ............................................................................... 8

            a.     Plaintiff has failed to establish that it has "members" within
                the meaning of *Hunt* ....................................................... 8

            b.     Plaintiff has not established that the interests it seeks to
                protect are germane to the organization's purposes ..................... 10

            c.     Plaintiff's asserted injuries and claims require
                individualized evaluation ................................................ 10

        2.     Plaintiff also may not sue on behalf of *non*-JCN members ..................... 11

II.    PLAINTIFF HAS FAILED TO MEET ITS BURDEN TO PROVE A CLEAR OR
      SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THE MERITS OF
      ANY CLAIM AGAINST EITHER THE MLBPA OR MR. CLARK ........................... 12

    A.     Plaintiff's Section 1985(3) claim cannot succeed ............................................... 12

        1.     Plaintiff's "deprivation clause" claim cannot succeed ............................ 12

            a.     Plaintiff has neither alleged nor proven any conspiracy .............. 13

            b.     Neither Plaintiff nor its members have a constitutional right
                to host the All-Star Game in Atlanta ........................................ 14

            c.     Plaintiff has neither alleged nor proven that the MLBPA
                acted with animus against a protected class ............................... 16

2.   Plaintiff's "hindrance clause" claim also cannot succeed .......................... 17

B.   Plaintiff has not proven a clear or substantial likelihood of success on any common law claim ............................................................................................ 18

1.   Plaintiff's tortious interference claims will not succeed ........................... 18

2.   Plaintiff's unjust enrichment/quantum meruit claims will not succeed ........................................................................................................ 20

C.   Plaintiff will not succeed on any claim against Mr. Clark ................................... 21

III.   PLAINTIFF HAS *CONCEDED* ITS MEMBERS' CLAIMED INJURIES ARE NOT IRREPARABLE ............................................................................................ 21

IV.   NEITHER THE BALANCE OF EQUITIES NOR THE PUBLIC INTEREST FAVORS PLAINTIFF'S REQUEST FOR RELIEF ....................................................... 21

CONCLUSION ............................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16 Casa Duse, LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015)................................................................................18

*AARP v. EEOC*,
  267 F. Supp. 3d 14 (D.D.C. 2017) ........................................................................8

*AARP v. EEOC*,
  226 F. Supp. 3d 7 (D.D.C. 2016) ..........................................................................9

*Am. Legal Found. v. FCC*,
  808 F.2d 84 (D.C. Cir. 1987) ................................................................................9

*Austin v. New Hampshire*,
  420 U.S. 656 (1975)..............................................................................................15

*Baldwin v. Fish & Game Comm'n*,
  436 U.S. 371 (1977)..............................................................................................16

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004)..................................................................................8

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018)..........................................................................................23

*Bray v. Alexandria's Women's Health Clinic*,
  506 U.S. 263 (1992)...................................................................................... *passim*

*Catskill Dev., LLC v. Park Place Ent. Corp.*,
  547 F.3d 115 (2d Cir. 2008)..................................................................................18

*Chambers v. Omaha Girls Club*,
  629 F. Supp. 925 (D. Neb. 1986)..........................................................................17

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985)..................................................................................23

*Conservative Baptist Ass'n of Am., Inc. v. Shinseki*,
  42 F. Supp. 3d 125 (D.D.C. 2014)........................................................................9

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  266 F. Supp. 3d 297 (D.D.C. 2017)......................................................................9

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)..........................................................................................7

*Hello I Am Elliot, Inc. v. Sine*,
   2021 WL 1191971 (S.D.N.Y. Mar. 30, 2021) ...............................................14, 21

*Griffin v. Breckenridge*,
   403 U.S. 88 (1971).....................................................................................12, 14

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005) ............................................................................12

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977)........................................................................8, 9, 10, 11

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers
   of Am. v. Brock*,
   477 U.S. 274 (1986)..........................................................................................11

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
   917 F.2d 75 (2d Cir. 1990).................................................................................21

*Kobell v. Suburban Lines, Inc.*,
   731 F.2d 1076 (3d Cir. 1984).............................................................................23

*LeBlanc-Sternberg v. Fletcher*,
   67 F.3d 412 (2d Cir. 1995).................................................................................16

*Legal Aid Society v. Ass'n of Legal Aid Attorneys*,
   554 F. Supp. 758 (S.D.N.Y. 1982) ....................................................................13

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
   213 F. Supp. 3d 530 (S.D.N.Y. 2016).................................................................20

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................5, 6, 7, 8

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012)............................................................................5, 8

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)..........................................................................................5

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
   684 F.3d 286 (2d Cir. 2011)........................................................................5, 12

*Papineau v. Parmley*,
   435 F.3d 46 (2d Cir. 2006).................................................................................15

*Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999)..................................................................................21

*Rose v. Morning Call*,
    1997 WL 158397 (E.D. Pa. Mar. 28, 1997)........................................................14

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013).....................................................................................7

*Savage v. Gorski*,
    850 F.2d 64 (2d Cir. 1988)...................................................................................21

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)...................................................................................7

*Sikhs for Justice Inc. v. Gandhi*,
    614 F. App'x 29 (2d Cir. 2015) .............................................................................8

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) .................................................................................................7

*Smith v. Fredrico*,
    2012 WL 6823474 (E.D.N.Y. Nov. 20, 2012)....................................................23

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...............................................................................................8

*Thole v. U.S. Bank*,
    140 S. Ct. 1615 (2020)........................................................................................5, 6

*Trump v. Deutsche Bank AG*,
    943 F.3d 627 (2d Cir. 2019)...................................................................................5

*Ucar Int'l v. Union Carbide Corp.*,
    2004 WL 137073 (S.D.N.Y. Jan. 26, 2004) ........................................................21

*United Bldg. & Constr. Trades Council v. Camden*,
    465 U.S. 208 (1984) .............................................................................................16

*United Brotherhood of Carpenters & Joiners of Am., Local 610,
AFL-CIO v. Scott*,
    463 U.S. 825 (1983).................................................................................14, 15, 16

*Vega v. Artus*,
    610 F. Supp. 2d 185 (N.D.N.Y. 2009)................................................................16

*Vigoda v. DCA Prods. Plus Inc.*,
    293 A.D.2d 265, 741 N.Y.S.2d 20 (1st Dep't 2002) ..........................................18

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................................6, 11

*Wimberly v. Red Point Sols., Inc.*,
  2020 WL 5237922 (S.D.N.Y. Sept. 1, 2020) ........................................12

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) ......................................................................................5

**Statutes and Rules**

42 U.S.C. § 1983 ...........................................................................................14

42 U.S.C. § 1985(3) ............................................................................ *passim*

**Other Authorities**

Brent Lang, *Will Smith, Antoine Fuqua Won't Shoot 'Emancipation' in Georgia
  Because of Voting Restrictions*, VARIETY (Apr. 12, 2021, 5:51 AM),
  https://variety.com/2021/film/news/will-smith-antoine-fuqua-runaway-slave-
  apple-georgia-voting-emancipation-1234949294/ ...................................5

Emil Moffatt, *Cobb Business Owners Bemoan Loss of All-Star Game Revenue at
  Lunch with GOP Congressmen*, WABE.ORG (May 4, 2021),
  https://www.wabe.org/cobb-business-owners-bemoan-loss-of-all-star-game-
  revenue-at-lunch-with-gop-congressmen/ ..............................................4

Job Creators Network, *Hey Commish Rob: Keep Your Eye on the Ball, Not
  Politics*, JOBCREATORSNETWORK.COM (Apr. 9, 2021), https://www.jobcreators
  network.com/app/uploads/2021/04/JCN_NYTimes_CommishRob_FINAL.pdf.....................7

Job Creators Network, *Hey Rob: All Strikes & No Balls?*,
  JOBCREATORSNETWORK.COM (Apr. 23, 2021),  https://www.jobcreators
  network.com/app/uploads/2021/04/JCN_Billboard_MLBCommissioner_1056
  x512.jpg ...................................................................................................7

Job Creators Network, *Membership Tiers*, JOBCREATORSNETWORK.COM,
  https://www.jobcreatorsnetwork.com/membership/ (last accessed June 3,
  2021) .........................................................................................................3

Job Creators Network, *The Facts on JCN v. Major League Baseball, MLB
  Commissioner Rob Manfred and Major League Baseball Players Association
  and Executive Director Tony Clark*, JOBCREATORSNETWORK.COM (June 1,
  2021), https://www.jobcreatorsnetwork.com/app/uploads/2021/06/JCN-v-
  MLB-Fact-Sheet-Final-6.1.21.pdf ..........................................................22

Samantha Renck, *'They Did Come Together To Punish Georgia': Job Creators Network Sues MLB Over All-Star Game*, DAILY CALLER (June 1, 2021, 10:21 PM), https://dailycaller.com/2021/06/01/all-star-game-georgia-voting-law-major-league-baseball/ (at 1:35-2:01) .................................................................................22

## INTRODUCTION

Neither the Major League Baseball Players Association ("MLBPA") nor its Executive Director decides where to play the All-Star Game. They did not decide to locate the 2021 All-Star Game in Atlanta, they did not decide whether or where to relocate the game, and they have no ability to return it to Atlanta. The Job Creators Network ("JCN" or "Plaintiff") knows this. It filed this lawsuit for political theater and then doubled down on abuse of the judicial process by dragging the MLBPA and its Executive Director, Tony Clark, into a frivolous lawsuit.[1]

JCN has no standing to seek injunctive relief from the MLBPA. Most fundamentally, the MLBPA cannot redress Plaintiff's claims because it cannot return the All-Star Game to Atlanta— only Major League Baseball ("MLB") can. Nor does Plaintiff have Article III standing to sue for its putative (and unidentified) "members," much less for the "ordinary men and women of Georgia," the State of Georgia itself, or any other third party.

Plaintiff has also failed to plausibly *plead*—much less *prove* a clear likelihood of success— as to any claim. The Section 1985 count fails at the threshold because the MLBPA did not participate in any "conspiracy" to move the All-Star Game. As the MLB collective bargaining agreement and Constitution establish, MLB and its Clubs—not the MLBPA—determine where to hold the game. Nor does Plaintiff even attempt to *argue* how moving a baseball game deprives or hinders a constitutional right, or was animated by a discriminatory bias.

Plaintiff's tort claims also lack merit. Among other things, Plaintiff does not *identify* a single contract or business relationship that was interfered with, and even if it had, the MLBPA could not have engaged in any alleged interference because it is not the party that moved the All-Star Game. In any event, JCN's interference claims mostly concern President Biden—not anything

---

[1] For ease of reference, "MLBPA" will refer to both the union and Mr. Clark, distinguished where appropriate.

the MLBPA (or MLB) did. JCN's (unpleaded) unjust enrichment argument fares no better because the small-business owners that JCN purports to represent could not plausibly have relied upon unidentified and nonexistent MLBPA promises to keep the All-Star Game in Atlanta, or provided the MLBPA with unidentified benefits, because the MLBPA was not responsible for putting the All-Star Game in Atlanta in the first place.

Finally, Plaintiff admits its injuries are compensable with money (*i.e.*, *not* irreparable), and has made no coherent showing about how the balance of the equities or the public interest would be served by moving the All-Star Game from Denver back to Atlanta (both of which have small businesses purportedly affiliated with JCN). The preliminary injunction should be denied.

## BACKGROUND

*MLBPA defendants.* The MLBPA is the labor union for all players signed to a Major League Uniform Player's Contract. Mr. Clark is its Executive Director.

*MLB Constitution and the Basic Agreement.* The MLB Constitution is the agreement that governs the relationship among the MLB team owners. The collective bargaining agreement between the MLBPA and MLB is the "Basic Agreement" governing the working terms and conditions for MLB players.

As JCN acknowledges, MLB's own constitution locates the All-Star Game at its discretion: "any action relating to the All-Star Game [must] be approved by a Majority of Major League Clubs." Pl. Mot. Prelim. Inj. ("PI Br.") at 24) (quoting Major League Constitution Art. V. §§ 1(b), 2(a)(1)). Although the version of the MLB Constitution JCN cites and attaches is outdated, it still confirms that "[t]he date and park in which an All-Star Game is to be played shall be determined by the Executive Council [of MLB]," not the MLBPA. Ex. 1 to PI. Br. at 1 (version effective through 2018), 13 (Major League Constitution, Art. IX § 5).

2

A player's role in the All-Star Game is to play in it. *See* 2017–2021 MLB Basic Agreement Art. XV(N)(3)(e), *Mandatory Participation* (excerpt of Art. XV attached as Exhibit 1 to Greenspan Decl.) ("Each player elected or selected to the All-Star team is required to attend the All-Star Game as an eligible participant on the roster and stay for the duration of the game unless" the player is injured, etc.). Players are compensated based on collectively-bargained and pre-determined rates, without regard to where the All-Star Game is played. *See* Ex. 1 at Art. XV(N)(6), *Participant Benefits*; 2017–2021 MLB Basic Agreement Art. VII(D), *All-Star and Home Run Derby Participant Benefits* (excerpt of Art. VII attached as Exhibit 2 to Greenspan Decl.).

**JCN.** Plaintiff is "an educational non-profit that seeks to educate Americans on the vital role of free exercise in creating jobs that will spur innovation and help ensure America's future economic success." JCN 2018 tax return (attached as Exhibit 3 to Greenspan Decl.). According to its website, "when you join JCN, you're supporting important advocacy work for small businesses . . . across the country."[2] JCN collects a fee (now $99) from members.[3] According to JCN's 2018 tax return (the most recent available), it collected less than $9,000 in dues, meaning that the JCN's membership at the time would have comprised fewer than 200 members. *See* Ex. 3 at 9. JCN's tax return also states that JCN does *not* have members within its governing body, and that no members had the power to select leadership to govern the organization. *Id.* Moreover, membership dues make up less than 1% of JCN's revenue, with the vast majority coming from donations. *Id.*

JCN claims that *it* suffered past, monetary injury by virtue of allegedly spending $1.6 million on "billboard signs," "advertising," and "fundraising efforts" in a campaign to pressure MLB—not the MLBPA—to move the All-Star Game back to Atlanta. Ortiz Decl. (ECF 4) ¶ 11.

---

[2] Job Creators Network, *Membership Tiers*, Jobcreatorsnetwork.com, https://www.jobcreatorsnetwork.com/membership/ (last accessed June 6, 2021).

[3] *Id.*

JCN CEO Alfredo Ortiz further claims that JCN has "over 10,000 members in Georgia," including "3,600 small businesses and their supporters" in the Atlanta area, and that "*some*" of these businesses will suffer future damages if the All-Star Game is not returned. *Id.* ¶ 8 (emphasis added). He does *not* attest to possessing legal authority to sue on behalf of JCN "members," which is unsurprising for a subscription-based service organization. Nor does JCN attempt to reconcile how it could seek an injunction on behalf of putative Atlanta members when the relief would simultaneously deprive Denver members of the benefits of being the All-Star Game host city. Indeed, JCN's partners include numerous organizations in Colorado, including the Rocky Mountain Food Industry Association, the Colorado Restaurant Association, and the Denver Metro Chamber of Commerce. Job Creators Network, *Partners*, JOBCREATORSNETWORK.COM (attached as Exhibit 4 to Greenspan Decl.).

Moreover, Plaintiff does not identify one dollar of past or future losses that will be suffered by any claimed "member" or "supporter." Nor does JCN even name any member. Instead, Mr. Ortiz's declaration refers to three Atlanta business owners and their companies—a diner, a catering service, and a limousine service—and offers the (hearsay) assertion that the diner had to "shelve" a "special All-Star Game menu." Ortiz Decl. ¶ 9. Mr. Ortiz does not claim that these third-parties are JCN members; in fact, they appear to simply be three business owners who were quoted in a news article about the All-Star Game being moved from Atlanta to Denver.[4] In any event, JCN offers no *evidence* that these (or any other) businesses suffered any injury or interference with any contract, business relationship, or constitutionally protected right.

---

[4] Emil Moffatt, *Cobb Business Owners Bemoan Loss of All-Star Game Revenue at Lunch with GOP Congressmen*, WABE.ORG (May 4, 2021), https://www.wabe.org/cobb-business-owners-bemoan-loss-of-all-star-game-revenue-at-lunch-with-gop-congressmen/.

Finally, Plaintiff also complains about harm to *non*-members—like a film crew that lost work when "Will Smith pulled the filming of his latest movie from Georgia" (*id.* ¶¶ 12–13)[5]— without trying to explain what such purported injuries to "ordinary men and women" have to do with the MLBPA (or Mr. Clark). PI Br. 2.

## LEGAL ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). The burden is on the party seeking the injunction to demonstrate "by a clear showing" that an injunction is warranted. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To do so, the party must show: (1) irreparable harm; (2) a degree of likelihood of success on the merits that depends on the type of injunction sought; and (3) a balance of hardships tipping decidedly in the movant's favor. *See Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), *vacated on other grounds sub nom. Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020). Here, Plaintiff's counsel seeks a self-described "mandatory injunction" (Kleinhendler Decl. (ECF 5) ¶ 6), which "alter[s] rather than maintain[s] the status quo," and as such, Plaintiff "must show a clear or substantial likelihood of success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011).

## I.   PLAINTIFF LACKS ARTICLE III STANDING TO SEEK AN INJUNCTION.

Plaintiff "bears the burden of establishing the[] elements" of Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). It must do so for *each* defendant; JCN may not lump the MLBPA and Mr. Clark together with the MLB defendants. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)

---

[5] According to press reports, Mr. Smith pulled his movie—*Emancipation*—from Georgia to protest the election law. *See, e.g.*, Brent Lang, *Will Smith, Antoine Fuqua Won't Shoot 'Emancipation' in Georgia Because of Voting Restrictions*, VARIETY (Apr. 12, 2021, 5:51 AM PT), https://variety.com/2021/film/news/will-smith-antoine-fuqua-runaway-slave-apple-georgia-voting-emancipation-1234949294/.

("a plaintiff must demonstrate standing for each claim he seeks to press")). Yet Plaintiff does not even *argue* that each element of standing is present as to the MLBPA and its Executive Director, let alone "support" each element "with the manner and degree of evidence required at [this stage] of the litigation." *Id.* Plaintiff instead offers the conclusory assertion that "JCN and its members have suffered concrete, constitutionally cognizable injury" (PI Br. 5)—not specifying who was injured or how—while ignoring the "fairly traceable" and "redressability" prongs entirely. *See* PI Br. 3–6; *Lujan*, 504 U.S. at 560–61. These deficiencies are fatal to Plaintiff's standing to sue the MLBPA, whether for itself or "as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

A.   **Neither JCN nor its putative members have standing because their claimed injuries are not "fairly traceable" to, and cannot be "redressed" by, the MLBPA.**

JCN's assertion of standing vis-à-vis the MLBPA (and Mr. Clark) relies on a false premise. Plaintiff has failed to establish that the MLBPA "move[d] the All-Star Game from Atlanta." *Id.* This alone precludes Article III standing for JCN for two independent—but related—reasons. Plaintiff is required to show both (1) "that the injury was caused by the [MLBPA]," *and* (2) "that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank*, 140 S. Ct. 1615, 1618 (2020). Here, Plaintiff cannot satisfy either requirement. The requested relief—"an order enjoining Defendants to restore the All-Star Game to Atlanta" (PI Br. 4)—is not "likely" to redress their alleged injuries as to the MLBPA. *Lujan*, 504 U.S. at 561. Simply put: the MLBPA is powerless to return the All-Star Game to Atlanta.

Plaintiff's alleged injuries—whether its own or its claimed members'—are also not "fairly traceable" to the MLBPA. *See id.* at 560. "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury"—not as high a bar as proximate causation, but a "a causal connection" just the same. *Id.*;

*Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quotation omitted). For this reason, the injury must be "trace[able] to the challenged action *of the defendant*, and not . . . th[e] result [of] the independent action of some third party." *Lujan*, 504 U.S. at 560–61 (emphasis added). Where an alleged injury "results from the independent action of [a] third party," there can be no standing. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). None of JCN's claimed—but unproven—injuries can be fairly traced to *any* MLBPA conduct. Tellingly, JCN's "advertisements" and "billboards" opposing the decision to move the game were directed toward MLB Commissioner Rob Manfred—not the MLBPA or its Executive Director.[6] There can be no doubt that JCN has known all along that no alleged injuries relating to moving the All-Star Game are traceable to, or redressable by, the MLBPA.

### B.   JCN lacks standing to seek an injunction based on alleged *past* injuries.

The sum total of JCN's *own* alleged injuries is the $1.6 million allegedly spent campaigning against MLB. Such claims of *past* injury (for purely monetary harm) do not create Article III standing to seek injunctive relief. *See Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *see also Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought").

### C.   JCN also lacks standing to sue on behalf of any third party.

In addition to the fact that no third party has its own standing to sue the MLBPA, JCN's attempt to sue on behalf of unidentified members and non-members independently fails to establish standing. Third-party standing is not the "general rule" (PI Br. 3)—it is a narrow *exception* to the principle that "[a]n injury for standing purposes" is not a generalized harm to the public (*Lujan*,

---

[6] *See* Job Creators Network, *Hey Commish Rob: Keep Your Eye on the Ball, Not Politics,* JOBCREATORSNETWORK.COM (Apr. 9, 2021), https://www.jobcreatorsnetwork.com/app/uploads/2021/04/JCN_NYTimes_CommishRob_FINAL .pdf; Job Creators Network, *Hey Rob: All Strikes & No Balls?*, JOBCREATORSNETWORK.COM (Apr. 23, 2021), https://www.jobcreatorsnetwork.com/app/uploads/2021/04/JCN_Billboard_MLBCommissioner_1056x512.jpg.

504 U.S. at 560), but rather an "injury to [the plaintiff it]self." *Mahon*, 683 F.3d at 64 (emphasis

added) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979)). None of the

asserted absent-party claims fit within this narrow exception.

> **1.  Plaintiff cannot establish associational standing to sue on behalf of its "members."**

Under limited circumstances, "membership organizations can assert claims on behalf of

their members." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977).[7] Even as to

injunctive relief, however, an organization may sue for members only when "(a) its members

would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are

germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested

requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Plaintiffs

fail all three prongs of this test.

> **a.  Plaintiff has failed to establish that it has "members" within the meaning of *Hunt*.**

A plaintiff asserting associational standing must "identify members who have suffered the

requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). This is a two-part

inquiry: the plaintiff must have "members," and those members must have suffered an injury that

would support standing. *See id.* Because courts "have an independent obligation to assure that

standing exists," they cannot simply "accept[] the organizations' self-descriptions of their

membership." *Id.*; *see also AARP v. EEOC*, 267 F. Supp. 3d 14, 22 (D.D.C. 2017) (a "mere

assertion that an individual is a 'member' of an organization is not sufficient to establish

membership"). Instead, the plaintiff must be either a "traditional voluntary membership

---

[7] As Plaintiff concedes, associational standing is unavailable for money damages. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members."); *Sikhs for Justice Inc. v. Gandhi*, 614 F. App'x 29, 31 (2d Cir. 2015) (same); *see also* PI Br. 4.

organization" or functionally equivalent to one, in that its members "possess all of the indicia of membership": electing the organization's leadership, serving in its leadership, and financing its activities, including "the costs of th[e] lawsuit." *Hunt*, 432 U.S. at 344–45.

JCN has failed every requirement. It ambiguously asserts that its "members include 3,600 small businesses and their supporters in the Atlanta metropolitan region" (Ortiz Decl. ¶ 8), but it never defines (or names) a "member" or "supporter" or provides any information about the roles alleged "members" or "supporters" play within JCN. Further, as noted above, publicly available information about JCN indicates that its membership numbers are small, that members do not vote or manage the organization, and that member contributions constitute less than 1% of JCN's revenue. *See, e.g.*, *Am. Legal Found. v. FCC*, 808 F.2d 84, 90 (D.C. Cir. 1987) (organization's "supporters" did not possess the indicia of membership because they played no role in selecting organization's leadership); *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 307 (D.D.C. 2017) (finding no evidence that members "have any role in electing the leadership of the organization"); *Conservative Baptist Ass'n of Am., Inc. v. Shinseki*, 42 F. Supp. 3d 125, 133 (D.D.C. 2014) (organization was not the functional equivalent of a membership organization because the members identified in the lawsuit did not elect the organization's leadership). JCN provides no organizational charts, bylaws, or anything else to evidence what (if any) role members play in making organizational decisions, nor any financial statements or other documentation to show whether and how JCN raises money from its members and how that money is used. *Cf. AARP v. EEOC*, 226 F. Supp. 3d 7, 17 (D.D.C. 2016) (bylaws required board members to be AARP general members and meet minimum-age criterion for membership; membership dues made up 19% of revenue). Plaintiff's bare assertion that

anonymous JCN members have given JCN *carte blanche* to sue on their behalf falls far short of establishing associational standing.

### b.   Plaintiff has not established that the interests it seeks to protect are germane to the organization's purposes.

JCN claims it exists to protect the interest of small-business owners and complains of "regional" discrimination. PI Br. 11. But it is not suing to *restore* lost revenue for small-business owners; it is suing to *move* revenue from (small and large) businesses in Denver to (small and large) businesses in Atlanta. Plaintiff does not even attempt to explain why supporting Atlanta business interests over Denver business interests is consistent with its organizational mission.

### c.   Plaintiff's asserted injuries and claims require individualized evaluation.

An organization also lacks associational standing to sue for its members if "the claim asserted []or the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Here, *all* of the associational common law claims against the MLBPA require showing injury and causation—which (accepting JCN's figure for argument's sake) would require 3,600 mini-trials.[8]

The Ortiz Declaration concedes that only "some" Georgia businesses will suffer harm from relocating the All-Star Game. Ortiz decl. ¶ 8. But which ones? And what injuries? Even for the three identified Atlanta-area businesses—none of which are mentioned in JCN's complaint or brief, and whose membership status is at best contested—there is no *claim* of injury or causation beyond the diner's "shelved" menu. *Id.* This is hardly a cognizable injury, but more to the point, it would require an *individualized inquiry* to assess the claim (was the menu actually created and shelved? why can't the menu still be used? will shelving the menu actually cause the diner to lose

---

[8] As for JCN members' claimed constitutional injuries under Section 1985, as shown below, there simply aren't any.

customers?). "[W]hatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515–16.

As another example of the need for individualized proof, take the allegedly cancelled hotel rooms. *See* Compl. ¶¶ 64–67. If a hotel's reservation policy required a non-refundable pre-payment, then there would be no injury from any cancellation. Different booking policies would require different analysis. And, reservation policies aside, if a hotel is able to rebook a room with another patron, there would be no injury. The upshot is the need for case-by-case examination, hotel-by-hotel, reservation policy-by-reservation policy, traveler-by-traveler.

In short, JCN members' injuries "would require individualized proof" and numerous mini-trials (*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287 (1986)), which is impossible to do without "the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.

### 2. Plaintiff also may not sue on behalf of *non*-JCN members.

Plaintiff further alleges injuries on behalf of a long and varied list of third parties who admittedly are *not* JCN members: "Cobb County," "Cobb County[]'s tourism arm," "the host city" of Atlanta and its "people and small businesses," "[m]ultiple municipalities," "the local economy," "[t]housands of hard-working ordinary men and women in the Atlanta area," "Georgians" generally, and "some crew members" on the cancelled movie of "A-list actor Will Smith." *See, e.g.*, Compl. ¶¶ 1–4, 42–43, 59, 85. JCN apparently thinks it can sue for everyone in Georgia, even the millions of Georgians who *oppose* the new voting law and *support* MLB's decision to move the game. In any event, asserting third-party claims requires a "close relationship with the absent third parties" who must have standing in their own right. *See* PI Br. 3 (citing *Kowalski v. Tesmer*, 543 U.S. 125 (2004)). JCN does not come close.

In sum, JCN lacks Article III standing to sue the MLBPA on its own behalf, on behalf of its supposed members, or on behalf of anyone else.

## II.   PLAINTIFF HAS FAILED TO MEET ITS BURDEN TO PROVE A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THE MERITS OF ANY CLAIM AGAINST EITHER THE MLBPA OR MR. CLARK.

Plaintiff has failed to *plead* any plausible claim, much less prove a clear or substantial likelihood of success on the merits, as necessary to warrant a mandatory injunction upending the status quo. *See N.Y. Civil Liberties Union*, 684 F.3d at 294.

### A.   Plaintiff's Section 1985(3) claim cannot succeed.

Section 1985(3) was designed to "enforce the rights of African Americans and their supporters" in the years immediately following the Civil War. *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). Section 1985(3) typically governs the conduct of state actors, but in limited circumstances not applicable to the MLBPA, applies to private actors. *See Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971). The Supreme Court has interpreted the state action exception extremely narrowly to prevent the statute from being misused as a federal tort statute. *Id*. at 102. Section 1985 claims must be pleaded with "at least some degree of particularity." *Wimberly v. Red Point Sols., Inc.*, 2020 WL 5237922, at *3 (S.D.N.Y. Sept. 1, 2020).

Plaintiff relies on two of Section's 1985(3) provisions, the "deprivation clause" and the "hindrance clause." Plaintiff cannot satisfy *any* element under either clause.

### 1.   Plaintiff's "deprivation clause" claim cannot succeed.

To prove a private conspiracy in violation of Section 1985(3), a plaintiff must (1) make a threshold showing of *conspiracy* and an act in furtherance of it, (2) prove "that some racial, or perhaps otherwise class-based, invidiously discriminatory *animus* lay behind the conspirators' action" and (3) prove "that the conspiracy aimed at interfering with rights that are protected against

private, as well as official, encroachment." *Bray v. Alexandria's Women's Health Clinic*, 506 U.S.

263, 267–68 (1992) (quotations omitted).

> ### a.        Plaintiff has neither alleged nor proven any conspiracy.

Plaintiff has not alleged, let alone proven, a single fact that would show an agreement

between the MLBPA and the other Defendants[9] to act in concert to change the location of the All-

Star Game. *See Legal Aid Society v. Ass'n of Legal Aid Attorneys*, 554 F. Supp. 758, 766–67

(S.D.N.Y. 1982) (denying plaintiff's motion for a preliminary injunction because the plaintiff

failed to adequately *plead* the existence of a conspiracy). Plaintiff makes the conclusory assertion

that "the MLB and the MLBPA Defendants purposefully, deliberately, and intentionally cancelled

the July 2021 All-Star Game in Atlanta." PI Br. 18.[10] But "[t]he Court of Appeals for the Second

Circuit . . . has repeatedly held that the requirement of particularity in pleading is especially

significant when conspiracy is alleged. Accordingly, complaints containing only vague or

conclusory allegations of conspiracy will not survive a motion to dismiss." *Legal Aid Society*, 554

F. Supp. at 766. Juxtaposed against even the old version of the MLB Constitution that JCN attaches

and the Basic Agreement, which establish unequivocally that MLB and its Clubs—not the MLBPA

or Mr. Clark—possess the decision-making authority over where to play the All-Star Game,

Plaintiff's conspiracy allegations are not merely deficient, they are frivolous. Indeed, up until filing

suit, JCN directed its campaigning towards MLB because it has always known that the MLBPA is

---

[9] Because Mr. Clark is and was acting as an agent of the MLBPA, Mr. Clark and the MLBPA could not conspire together, as a matter of law.  *See Legal Aid Society v. Ass'n of Legal Aid Attorneys*, 554 F. Supp. 758, 766–67 (S.D.N.Y. 1982) (the actions of an agent are attributed to the principal, and so the agent and principal cannot form a conspiracy between "two or more persons").

[10] The entirety of Plaintiff's complaint allegations—not preliminary injunction proof—is: (1) Tony Clark stated that "we have not yet had a conversation with the league on that issue"; (2) MLB Commissioner Manfred and Tony Clark discussed "the plan to punish Atlanta-based residents and business . . . by moving the All-Star Game out of Atlanta"; and (3) Tony Clark "ignored [Cobb County Board of Commissioners Chairwoman Lisa Cupid's] pleas" to keep the All-Star Game in Atlanta. Compl. ¶¶ 32, 34, 39.

not the All-Star Game decision-maker. Having failed to plausibly (or in good faith) *plead* a conspiracy claim, "the preliminary-injunction motion based on its claims necessarily fail[s]." *Hello I Am Elliot, Inc. v. Sine*, 2021 WL 1191971, at *3 (S.D.N.Y. Mar. 30, 2021).

> **b.   Neither Plaintiff nor its members have a constitutional right to host the All-Star Game in Atlanta.**

To prevail on a Section 1985(3) claim, a plaintiff must identify a constitutionally protected right "secured by the law to all" that is affected and targeted by the alleged conspiracy. *See Griffin*, 403 U.S. at 100–02. Section 1985(3) "provides no substantive rights itself." *United Brotherhood of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983) (quotation omitted). Because the MLBPA and Mr. Clark are not state actors (and Plaintiff does not contend otherwise), Section 1985(3) requires not just a deprivation of a constitutional right, but the deprivation "***of a right guaranteed against private impairment***."[11] *Bray*, 506 U.S. at 274 (emphasis added) (citing *Carpenters*, 463 U.S. at 833). "The Supreme Court has recognized *only two* rights protected from *private* encroachment by §1985(3): the right to interstate travel and the right to be free of involuntary servitude." *Rose v. Morning Call*, 1997 WL 158397, at *9 (E.D. Pa. Mar. 28, 1997) (citing *Bray*, 506 U.S. at 278) (emphasis added). Private actors cannot violate, and thus cannot conspire to violate, another person's First, Fourth, or Fourteenth Amendment rights. *See Carpenters*, 463 U.S. at 832 (First Amendment rights cannot be privately impaired); *Bray*, 506 U.S. at 278 (Fourth and Fourteenth Amendment rights cannot be privately impaired).

Suffice it to say, there is no constitutionally protected right—let alone such a right guaranteed against private impairment—to have an All-Star Game played in the JCN CEO's preferred city. *See Carpenters*, 463 U.S. at 839 ("group actions generally resting on economic

---

[11] Plaintiff's motion does state that "Defendants' conduct is equally actionable under 42 U.S.C. § 1983," but such an allegation has not been pled.

motivations should be deemed beyond the reach of § 1985(3)" because "[e]conomic and commercial conflicts . . . are best dealt with by statutes, federal or state, specifically addressed to such problems, as well as by the general law proscribing injuries to persons and property").

Grasping for a constitutional straw, Plaintiff makes a murky assertion that the MLBPA interfered with Georgians' right to vote.[12] This is preposterous. For starters, JCN does not have standing to make this argument on behalf of its members or anyone else. *See supra* § I. And Plaintiff fails to allege how the decision to relocate the All-Star Game could have possibly affected Georgians' right to vote; it did not (and, in any event, JCN's alleged *business* members don't vote). Further, the decision to relocate an event in response to political action is a classic example of protected First Amendment speech, just like JCN was free to take out ads and billboards in response. *See Papineau v. Parmley*, 435 F.3d 46, 56 (2d Cir. 2006) (describing "political demonstrations and protests" as "the heart of what the Bill of Rights was designed to protect").

Further searching for a constitutional right to assert, Plaintiff reads the Privileges and Immunities clause so broadly as to encompass a right to "livelihood" that would be infringed whenever a citizen of one state receives a private economic benefit not supplied to citizens of another state. If that absurd interpretation were correct, relocating the All-Star Game back to Georgia would violate the rights of Coloradans as much as the prior relocation supposedly violated the rights of Georgians. There simply is no constitutionally protected right that protects one's livelihood against ***private*** action. *See Bray*, 506 U.S. at 278. This clear legal principle is confirmed by the cases Plaintiff cites. *See Austin v. New Hampshire*, 420 U.S. 656 (1975) (challenge to a *state* tax imposed against out-of-state commuters); *United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208 (1984) (challenge to a *municipal* ordinance requiring city contractors to

---

[12] Plaintiff does *not* assert a claim under subsection 1985(2), which specifically addresses interference with the right to vote.

hire city residents); *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371 (1977) (challenge to a government fish and game *commission* that imposed different fees for out-of-state residents).

### c. Plaintiff has neither alleged nor proven that the MLBPA acted with animus against a protected class.

A Section 1985(3) plaintiff must also prove, "as an element of the cause of action . . . invidiously discriminatory motivation." *Carpenters*, 463 U.S. at 834. The MLBPA never decided or agreed to move the All-Star Game, so it could not have done so with any discriminatory bias. *See Bray*, 506 U.S. at 268 ("A plaintiff must show that some racial or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action."). Moreover, JCN acknowledges that MLB made its decision to move the All-Star Game *in response* to legislative action; it did not initiate this series of events. PI Br. 1.

In any event, there was no discrimination here because the individuals allegedly affected by the decision to move the All-Star Game do not constitute a protected class with "discrete and immutable characteristics such as race, national origin, and sex." *Vega v. Artus*, 610 F. Supp. 2d 185, 204 (N.D.N.Y. 2009). The decision to move the Game did not only affect Atlanta residents, minorities, or Atlanta small-business owners; it affected all businesses and travelers in the region—irrespective of gender, ethnicity, race, and state citizenship—and anyone who planned to attend the game in Atlanta. JCN's mere opposition to the decision does not make it or its putative members a protected class. *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995); *see also Bray*, 506 U.S. at 269 (the "class cannot simply be defined as the group of victims of the tortious action").

JCN implies that the MLBPA supported a decision to move the game to harm Black Americans. Nothing could be more detached from reality. JCN knows the reason the game was moved: MLB's protest of an election law (ironically, a law thought by many to *harm* Black

Americans). Plaintiff's unfounded, reckless, and offensive suggestion that the MLBPA and its Black Executive Director supported a decision to harm minorities is specious and sanctionable.

And Plaintiff's suggestion that the All-Star Game was relocated from an area with a higher percentage of Black residents to a city with a lower percentage is insufficient as a matter of law to support Plaintiff's claim of an invidious intention to discriminate. *See Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 941–42 (D. Neb. 1986) ("[T]here is a requirement that there be a *mens rea* present, *i.e.*, that the conspirators have a particular hatred of the protected group. . . . Evidence of adverse impact, if any, simply does not fulfill the *mens rea* requirement necessary to show irrational or invidious class discrimination.").

### 2.      Plaintiff's "hindrance clause" claim also cannot succeed.

The hindrance clause of Section 1985(3) requires proof of the same elements as the deprivation clause, but addresses conspiracies designed to interfere with organs of state government that are trying to secure equal protection for a state's citizens. *See Bray*, 506 U.S. at 279. Plaintiff's hindrance claim fails for the same reasons as its deprivation claim: there was no conspiracy, no protected constitutional right or privilege threatened, and no discriminatory intent. *See id.* at 281. In addition, there is no allegation or proof that the MLBPA took any action to try to interfere with an organ or agent of state government. The MLBPA did not move the game, and in any event, the Georgia voting law remains intact.

17

**B.     Plaintiff has not proven a clear or substantial likelihood of success on any common law claim.**

**1.     Plaintiff's tortious interference claims will not succeed.**

JCN's tortious interference with contracts and business relationships claims fail to satisfy any required element:[13]

*First*, JCN does not identify a single contract, business relationship, or prospective relationship entered into by itself or any putative member. The most specific assertion of a business injury in the entire filing is Mr. Ortiz's declaration about a diner's "shelved" menu. Ortiz Decl. ¶ 9. As noted, this appears to come from a news article, is not mentioned in JCN's complaint or brief, and Mr. Ortiz does not assert that the diner is a JCN member. All that said, a diner changing its own menu is not a severed contract or business relationship.

Conclusory *allegations* about cancelled limousine, restaurant, and hotel reservations also would not pass muster on the *pleadings. Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265, 741 N.Y.S.2d 20 (1st Dep't 2002) (dismissing a tortious interference with business relations claim because plaintiff could not identify the parties to any specific contract it would have obtained had the defendant not engaged in its alleged wrongful behavior). And the mere hope that unknown All-Star Game attendees would have spent unknown sums of money in unknown locations throughout the greater Atlanta area is a far cry from the requisite concrete and cognizable business relationship required to support an interference claim. *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (New York courts place "limits on what constitutes 'business relations' by rejecting,

---

[13] A claim for tortious interference with business relations in New York state encompasses *prospective* contractual relations. *Catskill Dev., LLC v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (noting interference with business relations is alternatively referred to as interference with prospective contractual relations). "The standard is more demanding [than tortious interference with contract] because a plaintiff's mere interest or expectation in establishing a contractual relationship must be balanced against the competing interest of the interferer, as well as the broader policy of fostering healthy competition." *Id.*

for example, a claim containing only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship" (quotation omitted)).

*Second*, Plaintiff does not even try to argue that the MLBPA *knew* of any of the supposedly interfered-with contracts or business relationships. How could it? The MLBPA is a labor union with no authority to decide where to locate the All-Star Game. So, needless to say, Plaintiff has not and will never show that the MLBPA was aware of the All-Star Game business ambitions of, for example, the Marietta Diner or Darrell Anderson's limousine business (who probably are not JCN members anyway). *See* Ortiz Decl. ¶ 9.

*Third*, and most fundamentally, the MLBPA did not and could not have *interfered* with anyone in Atlanta's contract or business relationship because it did not move the All-Star Game from Atlanta—the *sine qua non* of the tort claims. JCN is fully cognizant of this fact, which is why it directed its relocation campaign towards MLB, attached a version of MLB's Constitution as an exhibit to its brief, and dedicates far more words in its brief to President Biden's conduct than the MLBPA's. *See* PI Br. 17–18. Nor does what Plaintiff alleges amount to interference. A cancelled hotel room or restaurant reservation, for example, is not a "breach" of contract; it is a cancellation that will be governed by the terms of the proprietor's cancellation policies.

*Fourth*, because the MLBPA did not interfere with any contract, it could not have done so intentionally. And because the MLBPA did not interfere with any business relationship, it could not have done so for a "wrongful purpose or used dishonest, unfair, or improper means." PI Br. 16. Beyond that, as established herein, the MLBPA did not violate Section 1985 or commit any other tort, so Plaintiff cannot show the requisite "independent wrong." *Id.* at 16–17.

*Finally*, tortious interference with both contracts and business relationships requires causation and damages. *See id.* Plaintiff has not identified a single severed relationship, let alone linked one to the MLBPA. To address the only concrete allegation offered, the MLBPA did not know about, interfere with, commit an independent tort against, or damage the Atlanta diner that purportedly had to scrap its All-Star Game menu.

### 2.   Plaintiff's unjust enrichment/quantum meruit claims will not succeed.

JCN's complaint does not include a claim for unjust enrichment or quantum meruit, and it can hardly succeed on a claim it does not assert. Even so, any such claim would be futile.

The essence of an unjust enrichment claim is that one party has received money or a benefit at the expense of another. *See In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 574 (S.D.N.Y. 2016) (Caproni, J.) (dismissing claim). As a result, courts require proof that the defendant received a specific and direct benefit. *See id.* While the plaintiff need not be in privity with the defendant to state a claim, neither can the relationship between the parties be "too attenuated to support such a claim." *Id.*

Here, as in *In re London Silver Fixing*, Plaintiff has failed to plausibly *allege* that the MLBPA has in any way been enriched by the decision to move the All-Star Game. The MLBPA had no involvement in the decision, had no financial incentives related to the decision, and as a matter of common sense could not possibly have gained financially as a result of the decision. The MLBPA is a union, which serves to represent players' employment interests. There is no plausible theory under which the MLBPA was enriched by moving the All-Star Game, let alone enriched at the expense of JCN. Plaintiff's conclusory allegation (PI Br. 20) that the MLBPA somehow "benefits" from the move is implausible. *Id.* (citing cases) ("conclusory assertions that defendants

financially benefited . . . were insufficient"). Having failed to *plead* a plausible claim, Plaintiff has no chance of prevailing on the merits. *See Hello I Am Elliot*, 2021 WL 1191971, at *3.[14]

> **C.     Plaintiff will not succeed on any claim against Mr. Clark.**

Finally, Plaintiff named the MLBPA's Executive Director as a defendant in his personal capacity without any legal basis. Every allegation in the complaint involving Mr. Clark concerns him acting as a representative of the MLBPA. *See* Compl. ¶¶ 32, 34, 39. As such, all of Mr. Clark's alleged conduct is imputed to the MLBPA. *See Ucar Int'l v. Union Carbide Corp.*, 2004 WL 137073, at *13 (S.D.N.Y. Jan. 26, 2004). Plaintiff has no likelihood of succeeding on any claim against Mr. Clark for this reason too.

## III.    PLAINTIFF HAS *CONCEDED* ITS MEMBERS' CLAIMED INJURIES ARE NOT IRREPARABLE.

In the preliminary injunction context, "[i]rreparable harm is the single most important prerequisite" and therefore a "moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Rodriguez v. DeBuono*, 175 F.3d 227, 234–35 (2d Cir. 1999). An "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation, a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc*., 917 F.2d 75, 79 (2d Cir. 1990); *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("Since . . . money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief.").

JCN's CEO has publicly admitted that JCN and its members will not suffer irreparable harm if the game is played in Colorado. In a recent interview, Ortiz stated that:

---

[14] Although Plaintiff (twice) captions sections in its memorandum with references to a "Promissory Estoppel" claim, it offers *no* argument, authority, or evidence in support of such a claim.

[Defendants should] bring the game back to Atlanta in the same expeditious nature that [they] moved it out of Atlanta to Denver, four days, and you can move it right back. *And if [defendants] don't want to do that, **that's fine**, well then go ahead and set up basically a relief fund for those businesses, small, medium, large whatever it is, for those businesses in Georgia that were negatively impacted by the move, and the tune of that relief fund is $100 million.* (emphasis added).[15]

Later in the same interview:

*Interviewer:* I want to talk a little bit more about sort of these two end goals . . . for the lawsuit, whether it be moving the game back to Atlanta, Georgia or sort of having this relief fund that you were talking about, $100 million or more. Of the two, which do you see being more likely, I mean . . . the game is next month and obviously $100 million is a lot of money, so which of the two do you think might happen?

*Ortiz: **Well, we're giving them the option . . . .*** (emphasis added).[16]

And a "Fact Sheet" on JCN's website says the same thing: "JCN's lawsuit calls on MLB and its defendants to immediately return the All-Star game to Atlanta *or* establish a relief fund to pay damages to the local small business community that it harmed."[17]

These admissions flatly contradict JCN's legal arguments. The fact that JCN would be "fine" with the "option" of a monetary remedy belies the presence of irreparable harm if the All-Star Game is not moved back to Atlanta. Notwithstanding JCN's hyperbolic analogizing of the loss of a baseball game to the loss of "the innocence of a child or a free and fair election," its own admissions confirm the reality that monetary compensation is a perfectly "fine" remedy here.

An injunction is also unavailable because JCN has not been deprived of any protected constitutional rights. The Founding Fathers did not bestow upon American cities the right to an

---

[15] Samantha Renck, *'They Did Come Together To Punish Georgia': Job Creators Network Sues MLB Over All-Star Game*, DAILY CALLER (June 1, 2021, 10:21 PM), https://dailycaller.com/2021/06/01/all-star-game-georgia-voting-law-major-league-baseball/ (at 1:35-2:01).

[16] *Id.* at 2:55-3:25.

[17] Job Creators Network, *The Facts on JCN v. Major League Baseball, MLB Commissioner Rob Manfred and Major League Baseball Players Association and Executive Director Tony Clark*, JOBCREATORSNETWORK.COM (June 1, 2021), https://www.jobcreatorsnetwork.com/app/uploads/2021/06/JCN-v-MLB-Fact-Sheet-Final-6.1.21.pdf (emphasis added).

MLB All-Star Game. *See Smith v. Fredrico*, 2012 WL 6823474, at *4 (E.D.N.Y. Nov. 20, 2012) ("Where a plaintiff alleging a violation of his constitutional rights seeks a preliminary injunction for what is, 'at its core, a single plaintiff's claim for money damages,' a preliminary injunction should not issue." (quoting *Savage*, 850 F.2d at 68)).

## IV. NEITHER THE BALANCE OF EQUITIES NOR THE PUBLIC INTEREST FAVORS PLAINTIFF'S REQUEST FOR RELIEF.

Although the MLBPA does not have a decision-making role in where to play the All-Star Game, it is clear that both the public interest and the balancing of equities favor enforcing lawful commercial decisions. And JCN has failed to substantiate *any* equitable interest it or its putative members have in holding the game in Atlanta versus Denver. Indeed, JCN's Colorado-based members would likely disagree that moving the Game back to Atlanta would be an equitable result.

Finally, JCN's utter lack of urgency in filing suit—*two months* after the decision to move the All-Star Game—further demonstrates that a preliminary injunction is unwarranted. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ("courts have discretion to deny injunctive relief based on the plaintiff's 'lack of reasonable diligence'"); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (a ten-week delay and "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief" (quotation omitted)); *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1092 n.27 (3d Cir. 1984) (delay "constitutes relevant . . . evidence that interim injunctive relief is not truly necessary").

## CONCLUSION

For all of these reasons, the preliminary injunction should be denied as to the MLBPA and Mr. Clark.

Dated: June 7, 2021

/s/ Jeffrey L. Kessler
Jeffrey L. Kessler
David L. Greenspan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com

Steve Grimes (*pro hac vice forthcoming*)
Elizabeth S. Deshaies (*pro hac vice
    forthcoming*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
Tel: (312) 558-5600
Fax: (312) 558-5700
sgrimes@winston.com
ldeshaies@winston.com

Lauren Gailey (*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC  20036
Tel: (202) 282-5000
Fax: (202) 282-5100
lgailey@winston.com

*Counsel for Defendants Major League
Baseball Players Association and Tony
Clark*