## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOB CREATORS NETWORK,<br><br>    Plaintiff,<br><br>        v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL D/B/A MAJOR LEAGUE BASEBALL, *et al.*,<br><br>    Defendants. | No. 1:21-cv-04818-VEC<br><br>Judge Valerie E. Caproni |

## DEFENDANTS MAJOR LEAGUE BASEBALL AND
## ROBERT D. MANFRED JR.'S MEMORANDUM IN OPPOSITION
## <u>TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF</u>

John L. Hardiman
Steven L. Holley
Benjamin R. Walker
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
(212) 558-4000

*Attorneys for Defendants Office of the Commissioner of Baseball d/b/a Major League Baseball and Robert D. Manfred, Jr.*

June 7, 2021

**TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................................1

BACKGROUND ......................................................................................................3

ARGUMENT ...........................................................................................................5

I.    JCN HAS NOT DEMONSTRATED IRREPARABLE INJURY .......................6

      A.    JCN Lacks Constitutional Standing to Seek Injunctive Relief .............6

            1.    JCN Does Not Have Standing to Pursue Injunctive Relief
                  in Its Own Right....................................................................7

            2.    JCN Does Not Have Standing to Pursue Injunctive Relief
                  on Behalf of Its Members ......................................................9

      B.    JCN Cannot Obtain a Preliminary Injunction Without a Showing that JCN
            or Its Members Are Threatened with Irreparable Harm ......................11

II.   JCN'S CLAIMS ARE MERITLESS .............................................................13

      A.    JCN Fails to Allege that Defendants Discriminated Against a Protected
            Class of Individuals Under Section 1985(3)........................................13

            1.    Atlanta-area Businesses Are Not a Protected Class Under
                  Section 1985(3)....................................................................14

            2.    JCN Fails to Allege with Particularity that Defendants
                  Acted with Discriminatory Intent Against Atlanta-area
                  Businesses ...........................................................................15

            3.    JCN Fails To Allege the Types of Actions Required for a
                  Section 1985(3) "Hindrance" Clause Claim ..........................16

      B.    MLB's Decision To Move the All-Star Game Is Not State Action Under
            Section 1983 and Deprived No One of Their Constitutional Rights ....17

      C.    Under Either Section 1985(3) or Section 1983, Defendants Did Not
            Violate Any Constitutional Rights of Atlanta-area Businesses ...........20

      D.    JCN's Tortious Interference Claims Are Meritless .............................21

1.    JCN Fails to Identify Specific Contracts or Specific
      Business Relationships With Which Defendants Knowingly
      Interfered ................................................................................22

2.    JCN Does Not Allege Direct Interference With a Contract
      or Business Relationship ......................................................23

3.    JCN Does Not Allege that Defendants Intentionally or
      Wrongfully Interfered with Any Contract or Business
      Relationship ...........................................................................23

III.   IT IS IN THE PUBLIC INTEREST FOR MLB'S DECISION TO STAND AND
       THE BALANCE OF HARDSHIPS TIPS IN DEFENDANTS' FAVOR ........................25

CONCLUSION ..............................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIM Int'l Trading, L.L.C.* v. *Valcucine S.p.A.*,
  2003 WL 21203503 (S.D.N.Y. May 22, 2003) ...................................................22

*Alvord & Swift* v. *Stewart M. Muller Constr. Co.*,
  46 N.Y.2d 276 (1978)..........................................................................................23

*B & M Linen, Corp.* v. *Kannegiesser, USA, Corp.*,
  679 F. Supp. 2d 474 (S.D.N.Y. 2010).................................................................23

*Bergamaschi* v. *Cuomo*,
  2020 WL 1910754 (S.D.N.Y. Apr. 20, 2020)........................................................5

*Bery* v. *City of N.Y.*,
  97 F.3d 689 (2d Cir. 1996)..................................................................................13

*Bond* v. *United States*,
  564 U.S. 211 (2011)............................................................................................12

*Bose* v. *Interclick*,
  2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)......................................................23

*Bray* v. *Alexandria Women's Health Clinic*,
  506 U.S. 263 (1993)......................................................................................14, 16

*Brentwood Acad.* v. *Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001)............................................................................................18

*Cacchillo* v. *Insmed, Inc.*,
  638 F.3d 401 (2d Cir. 2011).................................................................................7

*Carvel Corp.* v. *Noonan*,
  3 N.Y.3d 182, 192 (N.Y. 2004) .....................................................................23, 24

*Catskill Dev., L.L.C.* v. *Park Place Ent. Corp.*,
  547 F.3d 115 (2d Cir. 2008).........................................................................21, 22

*Centro de la Comunidad Hispana de Locust Valley* v. *Town of Oyster Bay*,
  868 F.3d 104 (2d Cir. 2017).................................................................................7

*City of Los Angeles* v. *Lyons*,
  461 U.S. 95 (1983).....................................................................................6, 7, 12

*Conn. Dep't of Env't Prot.* v. *O.S.H.A.*,
 356 F.3d 226 (2d Cir. 2004)...............................................................................12

*Conte* v. *Emmons*,
 895 F.3d 168 (2d Cir. 2018)...............................................................................22

*Ctr. for Biological Diversity* v. *United States Env't Prot. Agency*,
 2021 WL 2217870 (S.D.N.Y. June 2, 2021) ...................................................6, 7

*Ctr. for Food Safety* v. *Price*,
 2018 WL 4356730 (S.D.N.Y. Sept. 12, 2018)......................................................8

*DaimlerChrysler Corp.* v. *Cuno*,
 547 U.S. 332 (2006)...........................................................................................10

*Dolan* v. *Connolly*,
 794 F.3d 290 (2d Cir. 2015)..................................................................13, 14, 15

*Envirosource, Inc.* v. *Horsehead Res. Dev. Co.*,
 1996 WL 363091 (S.D.N.Y. July 1, 1996) .........................................................22

*Fabrikant* v. *French*,
 691 F.3d 193 (2d. Cir. 2012)..............................................................................18

*Faiveley Transp. Malmo AB* v. *Wabtec Corp.*,
 559 F.3d 110 (2d Cir. 2009).........................................................................11, 12

*Flagg* v. *Yonkers Sav. & Loan Ass'n, FA*,
 396 F.3d 178 (2d Cir. 2005)...............................................................................17

*Freedom Holdings, Inc.* v. *Spitzer*,
 357 F.3d 205 (2d Cir. 2004)...............................................................................20

*Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*,
 528 U.S. 167 (2000).............................................................................................6

*G.K.A. Beverage Corp.* v. *Honickman*,
 55 F.3d 762 (2d Cir. 1995).................................................................................23

*Gen. Motors Corp.* v. *Tracy*,
 519 U.S. 278 (1997)...........................................................................................21

*Griffin* v. *Breckenridge*,
 403 U.S. 88 (1971).......................................................................................14, 15

*Hunt* v. *Wash. State Apple Advert. Comm'n*,
 432 U.S. 333 (1977)..........................................................................................7, 9

*Jews for Jesus, Inc.* v. *Jewish Cmty. Relations Council of N.Y., Inc.*,
968 F.2d 286 (2d Cir. 1992)..................................................................................15

*Jolly* v. *Coughlin*,
76 F.3d 468 (2d Cir. 1996)....................................................................................12

*Landtek Grp., Inc.* v. *N. Am. Specialty Flooring, Inc.*,
2016 WL 11264722 (E.D.N.Y. Aug. 12, 2016).....................................................2

*Lewis* v. *Colo. Rockies Baseball Club, Ltd.*,
941 P.2d 266 (Colo. 1997)....................................................................................19

*Ludtke* v. *Kuhn*,
461 F. Supp. 86 (S.D.N.Y. 1978) ....................................................................18, 19

*Lujan* v. *Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................................11

*Martinez* v. *Cuomo*,
459 F. Supp. 3d 517 (S.D.N.Y. 2020) (Caproni, J.) ........................................5, 11

*Masri* v. *Thorsen*,
2020 WL 1489799 (S.D.N.Y. Mar. 27, 2020) ......................................................15

*Mazurek* v. *Armstrong*,
520 U.S. 968 (1997) (per curiam) ..........................................................................5

*Meadows* v. *United Servs., Inc.*,
963 F.3d 240 (2d Cir. 2020)..................................................................................17

*Medtech Prod. Inc.* v. *Ranir, LLC*,
596 F. Supp. 2d 778 (S.D.N.Y. 2008)...................................................................22

*N.Y. C.L. Union* v. *N.Y.C. Transit Auth.*,
684 F.3d 286 (2d Cir. 2012)....................................................................................7

*Nat'l Abortions Fed.* v. *Operation Rescue*,
8 F.3d 680 (9th Cir. 1993) ....................................................................................17

*Nat'l Coal. on Black Civic Participation* v. *Wohl*,
2020 WL 6305325 (S.D.N.Y. Oct. 28, 2020) .......................................................13

*Nat'l Gear & Piston, Inc.* v. *Cummins Power Sys., LLC*,
861 F. Supp. 2d 344 (S.D.N.Y. 2012)...................................................................22

*Nicosia* v. *Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....................................................................................9

*Prospect Funding Holdings, LLC* v. *Vinson*,
   256 F. Supp. 3d 318 (S.D.N.Y. 2017)................................................................................24

*Revson* v. *Cinque & Cinque, P.C.*,
   221 F.3d 59 (2d Cir. 2000)..............................................................................................2

*RFP LLC* v. *SCVNGR, Inc.*,
   788 F. Supp. 2d 191 (S.D.N.Y. 2011).........................................................................24, 25

*Salinger* v. *Colting*,
   607 F.3d 68 (2d Cir. 2010).............................................................................................11

*Schoenefeld* v. *Schneiderman*,
   821 F.3d 273 (2d Cir. 2016)...........................................................................................21

*Schroeder* v. *Pinterest Inc.*,
   17 N.Y.S.3d 678 (1st Dep't 2015) ...................................................................................2

*Shain* v. *Ellison*,
   356 F.3d 211 (2d Cir. 2004)........................................................................................7, 10

*Sierra Club* v. *Morton*,
   405 U.S. 727 (1972).........................................................................................................8

*Singas Famous Pizza Brands Corp.* v. *N.Y. Advert. LLC*,
   468 F. App'x 43 (2d Cir. 2012) ......................................................................................11

*Statharos* v. *N.Y.C. Taxi & Limousine Comm'n*,
   198 F.3d 317 (2d Cir. 1999)...........................................................................................12

*Sybalski* v. *Indep. Grp. Home Living Program, Inc.*,
   546 F.3d 255 (2d Cir. 2008)...........................................................................................18

*Tom Doherty Assocs., Inc.* v. *Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995).............................................................................................5, 13

*Toomer* v. *Witsell*,
   334 U.S. 385 (1948).......................................................................................................21

*Williams* v. *City of N.Y.*,
   34 F. Supp. 3d 292 (S.D.N.Y. 2014) (Caproni, J.) ..........................................................7, 9

*Wimberly* v. *Red Point Sol., Inc.*,
   2020 WL 5237922 (S.D.N.Y. Sept. 1, 2020)................................................................14, 15

*Yang* v. *Kellner*,
   458 F. Supp. 3d 199 (S.D.N.Y. 2020)..............................................................................12

*Young* v. *Halle Hous. Assocs., L.P.*,
    152 F. Supp. 2d 355 (S.D.N.Y. 2001)................................................................18

*Zhang Jingrong* v. *Chinese Anti-Cult World All.*,
    287 F. Supp. 3d 290 (E.D.N.Y. 2018) ...............................................................16

*16 Casa Duse, LLC* v. *Merkin*,
    791 F.3d 247 (2d Cir. 2015)..............................................................................24

**Statutes, Rules, and Regulations**

U.S. CONST., art. III ....................................................................................... *passim*

U.S. CONST., amend XIV .........................................................................................12

42 U.S.C. § 1983............................................................................................ *passim*

42 U.S.C. § 1985(3) ....................................................................................... *passim*

## INTRODUCTION

Job Creators Network ("JCN"), a conservative advocacy group, brought this case as the latest step in its publicity campaign against Major League Baseball ("MLB") and MLB's Commissioner Robert D. Manfred Jr. for deciding not to hold the 2021 All-Star Game in Atlanta following the passage of a Georgia law, commonly referred to as SB 202, that has been widely criticized as restricting voting rights. JCN has been vocal in opposing MLB's decision, but that does not give it a basis for federal civil rights claims. Moreover, despite its claims of exigency, JCN spent the last two months putting up billboards in Times Square and running inflammatory advertisements in *The New York Times*.[1] When its publicity campaign had no effect, JCN decided to sue, but this Court's time should not be wasted on political theatrics.

There is no emergency that justifies the extraordinary relief JCN seeks. Despite JCN's assertions that "time is of the essence" and that only an injunction forcing MLB to move the All-Star Game to Atlanta could possibly compensate JCN and its members for their alleged injuries (*see* Kleinhendler Decl. ¶ 6), JCN's CEO, Alfredo Ortiz, publicly said just the opposite last week. According to Mr. Ortiz, it would be "fine" if MLB "do[es] not want to" bring the All-Star Game to Atlanta because JCN's Complaint offers MLB the "option" to establish a "relief fund" for allegedly affected businesses in Atlanta.[2] The Court can take Mr. Ortiz at his word that no injunctive relief is necessary, but there are several legal grounds to reach the same conclusion.

---

[1] The billboards and advertisements use epithets such as Commissioner Manfred has "All Strikes & No Balls." *See* Press Release, Job Creators Network, *Job Creators Network: MLB Commissioner Has All Strikes & No Balls* (April 23, 2021), https://www.jobcreatorsnetwork.com/press_releases/job-creators-network-mlb-commissioner-has-all-strikes-no-balls/.

[2] *See* Interview, *'They Did Come Together To Punish Georgia': Job Creators Network Sues MLB Over All-Star Game*, Daily Caller News Foundation (June 1, 2021), https://dailycaller.com/2021/06/01/all-star-game-georgia-voting-law-major-league-baseball/ (offering MLB two "options": (1) "Bring the game back to Atlanta with the same expeditious nature that you moved it out of Atlanta to Denver" or (2) "if you don't want to do that, that's fine, well then go ahead and set-up basically a relief fund for those businesses . . . in Georgia that were negatively impacted by the move . . . and that tune of that relief fund is $100 million."); *see also* Interview, *Alfredo Ortiz appears on Fox &*

*First*, the Complaint does not plausibly allege that JCN or its members are likely to suffer concrete injury as a direct result of MLB's decision two months ago to move the All-Star Game from Atlanta to Denver, and the past injuries that JCN alleges could, by JCN's own admission, be compensated with monetary damages. Thus, JCN cannot establish Article III standing to seek injunctive relief, much less clear the high bar to obtaining preliminary injunctive relief established in multiple Second Circuit cases.

*Second*, JCN cannot meet its burden of demonstrating a "clear" or "substantial" likelihood of success on the merits, because all of its claims are legally defective. An ill-defined group of Atlanta-based businesses is not a "class of persons" protected by Section 1985(3), and JCN does not allege with particularity that Defendants acted with discriminatory intent to deprive such businesses of their constitutional rights. Nor can JCN claim a violation of Section 1983, because MLB, an association of privately owned baseball clubs, is not a state actor. And even if MLB could be considered a state actor, moving the All-Star Game did not deprive JCN or its members of their constitutional rights. Finally, neither of JCN's tortious interference claims has any merit because, among other things, JCN fails to identify any particular contract or business relationship with which Defendants supposedly deliberately and wrongly interfered.[3]

---

*Friends to discuss MLB lawsuit*, FOX NEWS (June 1, 2021), *available at* https://www.jobcreatorsnetwork.com/videos/ (demanding that MLB "bring the game back to Atlanta . . . or quite frankly set up a relief fund of $100 million which is the estimated damages to our local businesses across Georgia").

[3]     While referenced in the motion for preliminary injunction, JCN does not actually plead claims for unjust enrichment or quantum meruit in its Complaint. And while JCN does assert a claim for promissory estoppel in its Complaint, it does not even try to contend that this claim is likely to succeed on the merits. All three of these claims can and should be ignored. But even if the Court were inclined to consider them, they are defective because JCN fails to allege the sort of relationship between Defendants and JCN's members that would be required to support the claims. *See Schroeder* v. *Pinterest Inc.*, 17 N.Y.S.3d 678, 690 (1st Dep't 2015) ("[A] plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party."); *Revson* v. *Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000) (to recover in quantum meruit, New York law requires a plaintiff to plead "acceptance of the services by the person to whom they are rendered"); *Landtek Grp., Inc.* v. *N. Am. Specialty Flooring, Inc.*, 2016 WL 11264722, at *39 (E.D.N.Y. Aug. 12, 2016), *report and recommendation adopted*, 2016 WL

*Finally*, it is in the public interest to permit MLB to decide where to host its own All-Star Game, and the balance of hardships tips decidedly in Defendants' favor.

## BACKGROUND

Plaintiff JCN describes itself as a "nonpartisan organization" whose mission is to "provide[] business leaders and entrepreneurs with the tools to become the voice of free enterprise in the media, in Congress, in state capitals, in their communities, and their workplaces—allowing them to hold politicians accountable to job creators and their employees."[4]  JCN's activities are often covered in the media; for example, JCN recently received attention for promoting use of unapproved COVID-19 treatments,[5] and for putting up billboards attacking a New York congresswoman.[6]

Defendant MLB is an unincorporated association comprised of thirty baseball clubs. Defendant Robert D. Manfred, Jr. is MLB's current Commissioner.  Defendant Major League Baseball Players Association ("MLBPA") is the union that represents players on MLB teams. Defendant Tony Clark is the MLBPA's current Executive Director.

On March 25, 2021, Georgia Governor Brian Kemp signed SB 202 into law.  More than a hundred businesses have issued statements criticizing SB 202 as a restriction on voting rights,

---

8671839 (E.D.N.Y. Sept. 16, 2016) (claim for promissory estoppel requires "sufficient evidence to demonstrate that [defendant] made a clear and unequivocal promise specifically directed towards [plaintiff]").

[4]      *See* Job Creators Network, "About," https://www.jobcreatorsnetwork.com/about/ (last visited June 3, 2021).

[5]      *See* Jake Pearson, *Republican Billionaire's Group Pushes Unproven COVID-19 Treatment Trump Promoted*, PROPUBLICA (Mar. 26, 2020), https://www.propublica.org/article/republican-billionaire-group-pushes-unproven-covid-19-treatment-trump-promoted.

[6]      Alex Dobuzinski, *Conservatives Target Ocasio-Cortez's 'Green New Deal' in New York Billboards*, REUTERS (Mar. 5, 2019), https://www.reuters.com/article/instant-article/idUKL1N20S1OX.

including major Atlanta-based companies Delta Air Lines and The Coca-Cola Company.[7]

On April 2, 2021, Commissioner Manfred announced that MLB was moving the 2021 All-Star Game and MLB Draft from Atlanta to a new host city yet to be determined.[8]  In a press release accompanying the announcement, Commissioner Manfred noted that "Major League Baseball fundamentally supports voting rights for all Americans and opposes restrictions to the ballot box," and "proudly use[s] [its] platform to encourage baseball fans and communities throughout our country to perform their civic duty and actively participate in the voting process."[9] On April 6, 2021, Commissioner Manfred announced that MLB had chosen Denver to host the 2021 All-Star Game and MLB Draft.

The next day, on April 7, 2021, Mr. Ortiz of JCN wrote a letter to Commissioner Manfred demanding that he "reconsider [his] decision and return the All Star game back to the Peach State."[10]  On April 9, 2021, JCN put up a billboard in Times Square attacking MLB's decision and ran a full-page advertisement in *The New York Times* that included the text of the April 7 letter.[11]

---

[7]      *See* David Gelles, *Delta and Coca-Cola Reverse Course on Georgia Voting Law, Stating 'Crystal Clear' Opposition*, N.Y. Times (Mar. 31, 2021), https://www.nytimes.com/2021/03/31/business/delta-coca-cola-georgia-voting-law.html.

[8]      JCN's assertion "upon information and belief" that MLB "violated the Major League Constitution in moving the game from Atlanta to Denver" because MLB did not obtain unanimous consent of the MLB clubs (Br. at 24), is incorrect and based on an outdated version of the Major League Constitution.  The January 1, 2020 Major League Constitution in effect today provides that "[t]he host Club for an All-Star Game (and all related events) shall be selected by the Commissioner and approved by the Executive Council."  (Declaration of Benjamin R. Walker Ex. 1 at 11.)

[9]      Press Release, Major League Baseball, *MLB Statement regarding 2021 All-Star Game* (April 2, 2021), https://www.mlb.com/press-release/press-release-mlb-statement-regarding-2021-all-star-game.

[10]     Press Release, Job Creators Network, *Letter: Job Creators Network Calls Out MLB for Attack on GA Small Businesses* (April 7, 2021), https://www.jobcreatorsnetwork.com/press_releases/letter-job-creators-network-calls-out-mlb-for-attack-on-ga-small-businesses/.

[11]     Press Release, Job Creators Network, *Commissioner Rob: Keep Your Eye on the Ball, Not Politics* (April 9, 2021), https://www.jobcreatorsnetwork.com/press_releases/commissioner-rob-keep-your-eye-on-the-ball-not-politics/.

Nearly two months later, JCN filed this lawsuit, seeking preliminary injunctive relief on an emergency basis.  (*See* ECF No. 3.)

## ARGUMENT

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek* v. *Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted).  "A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that an injunction is in the public interest."  *Martinez* v. *Cuomo*, 459 F. Supp. 3d 517, 522 (S.D.N.Y. 2020) (Caproni, J.).

Where, as here, the plaintiff seeks (i) mandatory preliminary injunctive relief (*i.e.*, "an injunction [that] will alter, rather than maintain, the status quo"), or (ii) injunctive relief that "will provide the movant with substantially all the relief sought" and that "cannot be undone even if the defendant prevails at a trial on the merits," the plaintiff must "meet a higher standard" of "clear" or "substantial" likelihood of success on the merits.  *Tom Doherty Assocs., Inc.* v. *Saban Ent., Inc.*, 60 F.3d 27, 33–35 (2d Cir. 1995) (citation omitted).

There is no question that JCN's burden is to meet this heightened standard.  JCN "seeks a mandatory injunction to compel Defendants to immediately restore the All-Star Game to Truist Park" ( Kleinhendler Decl. ¶ 6), an act that would be "difficult or impossible" to remedy for MLB at trial considering the All-Star Game is just five weeks away, *Tom Doherty Assocs.*, 60 F.3d at 35.  JCN makes no effort to meet this standard, instead arguing for the lesser standard that it is "likely to prevail on the merits" (Br. at 6), or that it has raised "serious questions going to the merits" (Br. at 22 (citation omitted)).  JCN's application can be denied on these grounds alone. *See Bergamaschi* v. *Cuomo*, 2020 WL 1910754, at *5 (S.D.N.Y. Apr. 20, 2020).

Under either standard, however, JCN has failed to meet the requirements for preliminary injunctive relief.  There is the obvious lack of irreparable injury, as well as the lack of any merit to JCN's claims.

## I.      JCN HAS NOT DEMONSTRATED IRREPARABLE INJURY.

JCN's failure to adequately allege that it or its members will suffer irreparable harm as a direct result of MLB's decision to move the All-Star Game from Atlanta to Denver means both that JCN does not have Article III standing to seek injunctive relief, and that JCN has failed to meet the well-established test for obtaining injunctive relief.

### A.      JCN Lacks Constitutional Standing to Seek Injunctive Relief.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 101 (1983).  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

"An organization may demonstrate standing in the same way as a natural person ('organizational standing') by demonstrating these same three requirements of injury-in-fact, traceability, and redressability."  *Ctr. for Biological Diversity* v. *United States Env't Prot. Agency*, 2021 WL 2217870, at *4 (S.D.N.Y. June 2, 2021).  "Alternatively, an organization may demonstrate standing on behalf of its members ('associational standing') by demonstrating '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

-6-

requested requires the participation of individual members in the lawsuit.'" *Id.* at \*4 (quoting *Hunt* v. *Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

It is incumbent on JCN to "demonstrate standing for each claim and form of relief sought." *Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citation omitted).  "Thus, a federal court may have subject matter jurisdiction over a claim for damages yet lack jurisdiction over a claim for prospective equitable relief arising out of the same injury." *Williams* v. *City of N.Y.*, 34 F. Supp. 3d 292, 295 (S.D.N.Y. 2014) (Caproni, J.).  To have standing to seek injunctive relief, JCN must establish "that '[it] has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'"  *Shain* v. *Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *Lyons*, 461 U.S. at 101–02, 103).  JCN "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [JCN] will be injured in the future." *Id.* (citation omitted).

JCN does not allege that it or its members are in imminent danger of sustaining some concrete injury as a direct result of MLB's decision to move the All-Star Game from Atlanta to Denver.  Without that, JCN lacks Article III standing to seek injunctive relief.

1.      **JCN Does Not Have Standing to Pursue Injunctive Relief in Its Own Right.**

The Second Circuit has held that an organization has standing to seek injunctive relief in its own right where the defendant's conduct impedes "and will continue to impede" the organization's ability to carry out its usual activities, or where the organization will be forced to expend resources to prevent some adverse consequence on a well-defined and particularized class of individuals.  *Centro de la Comunidad Hispana de Locust Valley* v. *Town of Oyster Bay*, 868 F.3d 104, 110–11 (2d Cir. 2017) (holding organization has standing where city ordinance would increase plaintiff's costs of reaching its members); *see N.Y. C.L. Union* v. *N.Y.C. Transit Auth.*,

684 F.3d 286, 295 (2d Cir. 2012) (holding organization has standing where defendant's policy "will continue to impede" its ability to meet its "professional responsibility to clients").

JCN makes no attempt to argue that MLB's decision to move the All-Star Game from Atlanta to Denver will "impede" JCN's ability to carry out its usual activities.  Instead, JCN relies solely on a "diversion of resources" theory of injury, asserting that MLB's decision to move the All-Star Game has "caused direct damage to JCN" because JCN has (i) "had to divert resources to address the grave harm to its Atlanta-area members;" (ii) "incurred additional expenses including posting multiple billboard signs in New York's Times Square and advertising in *The New York Times*;" and (iii) "divert[ed] personnel from its fundraising efforts resulting in lower receipts." (Ortiz Decl. ¶ 11.)  But JCN's purported injuries are not "sufficiently distinct" from its overall mission, which includes "amplif[ying] [its members'] stories in the media to educate policymakers and the public about the significant consequences of bad public policy in an attempt to rectify it." (Ortiz Decl. ¶ 7).  Indeed, it appears that posting billboards in Times Square and taking out advertisements in newspapers to challenge decisions that JCN does not like is one of JCN's core activities.[12]  "[T]o allow standing based on these allegations alone would mean that any entity that spends money on an issue of particular interest to it would have standing, which would in turn contravene the principle that an entity's 'mere interest in a problem' cannot support standing." *Ctr. for Food Safety* v. *Price*, 2018 WL 4356730, at *5 (S.D.N.Y. Sept. 12, 2018) (quoting *Sierra Club* v. *Morton*, 405 U.S. 727, 739 (1972)).

---

[12]     *See* Press Release, Job Creators Network, *National Full-Page Ad in USA Today Advocates for Personalized Healthcare* (Sept. 29, 2020), https://www.jcnf.org/press_releases/national-full-page-ad-in-usa-today-advocates-for-personalized-healthcare/; Blog Post, Job Creators Network, *Hey AOC, Saw your wack tweet; Ouch!* (Feb. 22, 2019), https://www.jobcreatorsnetwork.com/hey-aoc-saw-your-wack-tweet-ouch/; Blog Post, Job Creators Network, *Billboard: Zero Stars for New York's Union Boss Power Grab* (May 26, 2021), https://www.jobcreatorsnetwork.com/zero-stars-for-new-yorks-union-boss-power-grab/.

-8-

Moreover, even if JCN's "past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless [JCN] can demonstrate that [it] is likely to be harmed again in the future in a similar way." *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  JCN does not allege that it will be forced to expend any additional resources in the future should the All-Star Game go forward in Denver, which is fatal to JCN's standing to seek injunctive relief.  (*See* Ortiz Decl. ¶ 12 (asserting that "harm to JCN's members is ongoing" but not that there is ongoing harm to JCN itself).)

## 2.   JCN Does Not Have Standing to Pursue Injunctive Relief on Behalf of Its Members.

In seeking injunctive relief on behalf of its members, JCN "cannot rely on past injury" to those members allegedly caused by MLB's decision to move the All-Star Game from Atlanta to Denver.[13]  *See Williams*, 34 F. Supp. 3d at 295 (citation omitted).  Instead, JCN must allege specific facts showing a "real and immediate" threat of future injury to its members if the All-Star Game is not moved to Atlanta.  *See id.* ("[A]n abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.").

JCN's conclusory allegations that harm to its members is "ongoing" because "events scheduled for after the All-Star game such as conventions and other events have been canceled because of the decline in Atlanta tourism" (Ortiz Decl. ¶ 12) are not enough.  By definition, alleged losses incurred from events that "*have been* cancelled" occurred in the past and cannot satisfy JCN's obligation to show a likelihood that its members will be injured in the future.  And JCN's mere speculation that MLB's decision "has resulted in incalculable additional losses and costs for

---

[13]    For purposes of this motion only, Defendants assume that JCN has "members," as Mr. Ortiz claims.  (*See* Ortiz Decl. ¶¶ 7–8.)  However, JCN's conclusory assertion that  its members "include over 3,600 small business owners and individual supporters in the Atlanta metro area" (Ortiz Decl. ¶ 8) lacks any information whatsoever about who JCN's members are, how they were harmed, or whether these supposed members possess any of the "indicia of membership in an organization" that would be required to permit JCN to assert claims on their behalf. *See Hunt*, 432 U.S. at 344–45 (describing "indicia of membership").

businesses trying to lure customers to Georgia" (Ortiz Decl. ¶ 13) is too abstract to form the basis for injunctive relief.  *See Shain*, 356 F.3d at 216.

JCN's allegations also fail to satisfy the "causation" and "redressability" prongs of the Article III standing inquiry.  JCN alleges no credible factual basis for its speculative assertion that "Defendants' act of moving the All-Star Game from Atlanta to Denver" (Br. at 4)—as opposed to the public opinion that SB 202 is a "racist and biased election law" (Ortiz Decl. ¶ 13)—is what caused "consumers and businesses to rethink or outright cancel their interest in holding events or conducting business in Georgia" (Ortiz Decl. ¶ 13), or what allegedly caused "reputational harm" to JCN's members (Br. at 22).  This argument truly puts the cart before the horse—the passage of SB 202 caused MLB to move the All-Star Game just as it caused many parties to condemn the statute.  Indeed, venerable Atlanta institutions like Delta Air Lines and The Coca-Cola Company spoke out before MLB announced its decision.[14]  JCN itself claims that MLB's decision was part of a so-called "wave of senseless hysteria" that followed the passage of SB 202.  (Br. at 1.)

JCN makes no attempt to trace any hesitance to hold events or conduct business in Georgia, which allegedly threatens to harm JCN's members, to MLB, as opposed to SB 202 itself and the general reaction to it.[15]  *See DaimlerChrysler Corp.* v. *Cuno*, 547 U.S. 332, 346 (2006) ("[A] party seeking federal jurisdiction cannot rely on speculative inferences to connect his injury to the

---

[14]      *See* Gelles, *supra* n.7 (quoting Delta Air Lines CEO Ed Bastian's statement that "[t]he entire rationale for this bill was based on a lie: that there was widespread voter fraud in Georgia in the 2020 elections," and Coca-Cola CEO James Quincey's statement that "I want to be crystal clear . . . The Coca-Cola Company does not support this legislation, as it makes it harder for people to vote, not easier.").

[15]      While JCN is curiously focused on Will Smith's decision to move the filming of his latest movie, "Emancipation," out of Georgia as an example of a harm allegedly suffered by JCN's members (Ortiz Decl. ¶¶ 12, 13; Compl. ¶ 43), Mr. Smith cited enactment of SB 202 as the impetus for that decision, not relocation of the All-Star Game.  In fact, he did not even mention MLB in his statement.  *See* Nicole Sperling, *Will Smith's Production Pulls Out of Georgia, Citing the State's Voting Law*, N.Y. Times (April 12, 2021), https://www.nytimes.com/2021/04/12/business/will-smith-emancipation-georgia.html.

challenged actions of the defendant." (internal quotation marks and alterations omitted)).

Moreover, it is pure supposition that ordering MLB to move the All-Star Game to Atlanta would

suddenly cause consumers and businesses to withdraw their opposition to SB 202 and return to

Georgia. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 568 (1992) (no redressability where

the requested court order would not bind the decisions of third-party actors necessary to the

requested relief).

      **B.**      **JCN Cannot Obtain a Preliminary Injunction Without a Showing that JCN or Its Members Are Threatened with Irreparable Harm.**

      "A showing of irreparable harm is the single most important prerequisite for the issuance

of a preliminary injunction." *Faiveley Transp. Malmo AB* v. *Wabtec Corp.*, 559 F.3d 110,

118 (2d Cir. 2009) (internal quotation marks omitted). "Irreparable harm requires a showing that

Plaintiffs will suffer an 'actual and imminent' injury that 'cannot be remedied if a court waits until

the end of trial to resolve the harm.'" *Martinez*, 459 F. Supp. 3d at 526 (S.D.N.Y. 2020) (quoting

*Singas Famous Pizza Brands Corp.* v. *N.Y. Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012)). "In

evaluating whether the plaintiff will suffer imminent harm, 'the court must actually consider the

injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails

on the merits, paying particular attention to whether the remedies available at law, such as

monetary damages, are adequate to compensate for that injury.'" *Id.* (quoting *Salinger* v. *Colting*,

607 F.3d 68, 80 (2d Cir. 2010)). "Where there is an adequate remedy at law, such as an award of

money damages, injunctions are unavailable except in extraordinary circumstances." *Wabtec

Corp.*, 559 F.3d at 118 (internal quotation marks omitted).

      JCN concedes that if the All-Star Game goes forward in Denver as planned, JCN and its

members can seek money damages to compensate them for their alleged injuries. (Br. at 2.) So

instead, JCN asks this Court to grant injunctive relief on the basis that "money damages would be

inadequate to restore the damage to Georgia's sovereignty and reputation and to Georgians' civil rights within our federal system." (*Id.*)  Yet, JCN has no standing to vindicate the constitutional rights of the State of Georgia.  The Supreme Court has made clear that private litigants have standing to challenge a law or action on federalism grounds only insofar as they are seeking to vindicate their *own* constitutional interests—not the state's—and they can otherwise meet the requirements of Article III.  *See Bond* v. *United States*, 564 U.S. 211, 225–26 (2011).  By contrast, a litigant who merely "suffers in some indefinite way in common with people generally," or purports to seek to vindicate the interests of the state, has no standing to do so.  *Id.* at 225.

JCN next tries to sidestep the "single most important prerequisite for the issuance of a preliminary injunction," *Wabtec Corp.*, 559 F.3d at 118, by asserting that it is not required to make a showing of irreparable harm because it has alleged a violation of a constitutional right (Br. at 21).  That is wrong.  JCN alleges a constitutional violation that was suffered in the past—moving the All-Star Game out of Atlanta—and the Supreme Court has held that a plaintiff cannot allege irreparable harm by asserting its constitutional rights were violated in the past.  In *Lyons*, the Supreme Court held that the plaintiff, who alleged that a police officer placed him in an illegal chokehold in violation of his substantive due process rights under the Fourteenth Amendment, did not have standing to seek an injunction preventing police officers from using chokeholds in the future because he did not allege facts showing "any real or immediate threat" that he would be subjected to an illegal chokehold again and, thus, no likelihood of "irreparable injury."  461 U.S. at 111.  None of the authorities JCN cites is to the contrary, as each involved allegations of ongoing violations of constitutional rights that could not be remedied by money damages.[16]

---

[16]     *See Yang* v. *Kellner*, 458 F. Supp. 3d 199, 209 (S.D.N.Y. 2020) (injunction to restore candidates' names to presidential primary ballot and requiring state to hold primary); *Jolly* v. *Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (injunction to release inmate from medical keeplock conditions); *Statharos* v. *N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 320 (2d Cir. 1999) (injunction to keep personal identifying information private); *Conn. Dep't of Env't Prot.*

Likewise, JCN cannot evade the irreparable injury requirement by asserting that it could suffer some "loss of goodwill" if the All-Star Game is not moved to Atlanta.  (Br. at 22.)  Putting aside that JCN fails to show that any alleged loss of goodwill is fairly traceable to actions taken by MLB (as opposed to SB 202 itself) or could be redressed by forcing MLB to move the All-Star Game to Atlanta, *see supra* at I.A.2, where, as here, the loss of goodwill is speculative and any "lost profits . . . could be compensated with money damages," there is no irreparable harm. *See Tom Doherty Assocs.*, 60 F.3d at 37–38 (collecting cases).

Without a showing of irreparable harm, JCN's request for a preliminary injunction should be denied.

## II.     JCN'S CLAIMS ARE MERITLESS.

Even if JCN had standing to pursue its claims (which it does not), or had sufficiently pled the irreparable injury required to support a preliminary injunction (which it has not), its motion still should be denied because JCN plainly cannot demonstrate a "clear" or "substantial" likelihood of success on the merits of its claims.  Indeed, its claims are clearly deficient in all respects.

### A.     JCN Fails to Allege that Defendants Discriminated Against a Protected Class of Individuals Under Section 1985(3).

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege:  '1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'"  *Dolan* v. *Connolly*, 794 F.3d

---

v. *O.S.H.A.*, 356 F.3d 226, 230 (2d Cir. 2004) (injunction to cease ongoing investigation); *Bery* v. *City of N.Y.*, 97 F.3d 689, 694 (2d Cir. 1996) (injunction to lift prohibition on sale of art); *Nat'l Coal. on Black Civic Participation* v. *Wohl*, 2020 WL 6305325, at *10–12 (S.D.N.Y. Oct. 28, 2020) (injunction to stop voter intimidation).

290, 296 (2d Cir. 2015) (citation omitted).  Section 1985(3) "applies only to such conspiracies as are 'aimed at interfering with rights . . . protected against private, as well as official, encroachment," *Bray* v. *Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993), and the Supreme Court has recognized "few such rights"—only the Thirteenth Amendment's rights to be free from involuntary servitude and of interstate travel—as falling within this narrow class.  *Id.*

To prevent Section 1985(3) from becoming a "general federal tort law," its "language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's actions."  *Griffin* v. *Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis in original).  With no sense of irony, JCN spuriously alleges that MLB's decision to move the All-Star Game out of Atlanta in response to SB 202—a bill widely criticized as restricting the voting rights of Georgia citizens—is part of a conspiracy to deprive Atlanta businesses of their constitutional rights in violation of Section 1985(3), a section of the Ku Klux Klan Act passed during Reconstruction to safeguard the civil rights of recently freed slaves.  JCN fails, however, to explain how a group of businesses, whose only shared characteristic is a proximity to Atlanta's baseball stadium, could be a "class of persons" protected by Section 1985(3).  Nor does JCN allege with particularity that Defendants acted with discriminatory intent to deprive these businesses of their constitutional rights.

### 1.    Atlanta-area Businesses Are Not a Protected Class Under Section 1985(3).

"The term class 'connotes something more than a group of individuals who share a desire to engage in conduct' or who have been subjected to conduct engaged in by a defendant." *Wimberly* v. *Red Point Sol., Inc.*, 2020 WL 5237922, at *3 (S.D.N.Y. Sept. 1, 2020) (quoting *Dolan*, 794 F.3d at 296).  While race, gender, political party, religion, and ethnicity can define a

class for Section 1985(3) purposes, *see Dolan*, 794 F.3d at 296, JCN points to no authority—because there is none—for the proposition that a city-wide group of business owners is a class protected by Section 1985(3).  Such a diverse collection of individuals—varying by race, gender, political party, religion, ethnicity, and numerous other characteristics—"plainly do not possess the type of inherited or immutable characteristics sufficient to satisfy the class-based animus requirement." *Id*.  Furthermore, the fact that some individuals within the group may have protected characteristics, such as race, does not transform the group itself into a protected class.  *See Jews for Jesus, Inc.* v. *Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 292 (2d Cir. 1992) (a "racially diverse society . . . cannot, by definition, constitute a racial class").

### 2.    JCN Fails to Allege with Particularity that Defendants Acted with Discriminatory Intent Against Atlanta-area Businesses.

Even if Atlanta-area businesses could be a protected class under Section 1985(3), JCN makes only conclusory allegations that Defendants took action against such businesses with "invidiously discriminatory animus." *Griffin*, 403 U.S. at 102.  "Claims under [Section] 1985 must be alleged with at least some degree of particularity and must include facts showing that the overt acts which defendants engaged in . . . were reasonably related to the promotion of the claimed conspiracy." *Wimberly*, 2020 WL 5237922, at *3 (citation omitted).  Furthermore, "a defendant must do more than merely be aware of a deprivation of the right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Masri* v. *Thorsen*, 2020 WL 1489799, at *9 (S.D.N.Y. Mar. 27, 2020) (citation omitted).

Here, JCN "offers not a single fact to corroborate [its] allegation," *Gallop* v. *Cheney*, 642 F.3d 364, 369 (2d Cir. 2011), of a conspiracy to deprive JCN members of their constitutional rights "solely because they reside in Georgia" (Br. at 11).  Instead, JCN merely speculates that "[b]etween March 26th and April 1st 2021, Defendants Manfred and Clark discussed the Georgia Election

-15-

Integrity Act *and the plan to punish Atlanta-based residents and businesses* . . . by moving the All-Star Game out of Atlanta."  (Compl. ¶ 34 (emphasis added).)  JCN adds nothing more in its motion, falsely asserting only that Defendants "aimed to intimidate and punish local business" and that, "[b]y discriminating against Georgia residents and businesses solely because they reside in Georgia, Defendants violate the Constitution's guarantee of equal protection."  (Br. at 10–11.)

Perhaps recognizing the deficiency of its conclusory allegations of discriminatory intent, JCN notes that "Atlanta has a 51% black population, while Denver has only a 9% black population," and that "there are roughly 7.5 times more black-owned small businesses in Georgia than Colorado."  (Br. at 10; Compl. ¶¶ 12, 49.)  To the extent JCN seeks to imply that moving the All-Star Game out of Atlanta in response to the enactment of SB 202 was actually intended to discriminate against black business owners, that notion is "baseless and spun entirely of cynical delusion and fantasy," *Cheney*, 642 F.3d at 369, and cannot support a Section 1985(3) claim.

> ### 3.    JCN Fails To Allege the Types of Actions Required for a Section 1985(3) "Hindrance" Clause Claim.

"The 'hindrance' clause of [Section] 1985(3) . . . covers conspiracies 'for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."  *Bray*, 506 U.S. at 279 (quoting 42 U.S.C. § 1985(3)).  Although "it does not appear that the Second Circuit has addressed [Hindrance Clause] claim[s] in any substantive way," the Ninth Circuit has held that "a claim under the Hindrance Clause requires the following:  (1) 'the purpose [of the conspiracy] must be to interfere with state law enforcement, not just to interfere with the persons seeking to exercise their legal rights;' (2) the conspiracy must be 'directed at a protected class;' and (3) the conspiracy must implicate 'a constitutional right.'"  *Zhang Jingrong* v. *Chinese Anti-Cult World*

*All.*, 287 F. Supp. 3d 290, 300 (E.D.N.Y. 2018) (quoting *Nat'l Abortions Fed.* v. *Operation Rescue*, 8 F.3d 680, 685 (9th Cir. 1993)).

Assuming again for the sake of argument that Atlanta-area businesses could be a protected class, JCN fails to allege with any specificity how Defendants sought "to hinder Georgia's effort to secure equal voting rights for its citizens." (Br. at 13.) In fact, as JCN points out, Defendants moved the All-Star Game after SB 202 was passed. (Br. at 14.) Joining many others in expressing opposition to SB 202 after it had already become law does not constitute interference with the legislative process in Georgia.

### B.    MLB's Decision To Move the All-Star Game Is Not State Action Under Section 1983 and Deprived No One of Their Constitutional Rights.

A plaintiff pressing a Section 1983 claim is required to show state action. *Meadows* v. *United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). "[S]tate action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State . . . and that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Flagg* v. *Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (citation omitted).

Defendants' decision to move the All-Star Game from Atlanta to Denver was not state action. JCN's argument to the contrary is based on a misreading of the law. And even if MLB could be considered a state actor, moving the All-Star Game did not deprive JCN members of rights under the Equal Protection, Privileges and Immunities, or Dormant Commerce Clauses of the U.S. Constitution.

"For the purposes of Section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the

entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski* v. *Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad.* v. *Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). "[A] private entity does not become a state actor for purposes of [Section] 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government." *Fabrikant* v. *French*, 691 F.3d 193, 207 (2d. Cir. 2012) (citation omitted). "Rather, there must be such a close nexus between the [s]tate and the challenged action that the state is *responsible* for the specific conduct for which the plaintiff complains." *Id.* (citation omitted). Therefore, "the crucial relationship for a finding of state action is between the governmental entity and the *action* taken by the private entity, not . . . between the governmental entity and the private *actor*." *Young* v. *Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 364 (S.D.N.Y. 2001).

JCN's first argument—that MLB qualifies as a state actor because certain of its member clubs play in stadiums that are publicly funded or owned—demonstrates its misunderstanding of these principles. Consistent with the law outlined above that state action only exists where there is a close nexus between the challenged action and the state, it is well settled that government funding to a private entity, in and of itself, does not convert the private entity into a state actor. *Id.* JCN's contrary assertion that "this Court has held that the MLB clubs are state actors because they receive substantial financing from state and local governments" (Br. at 7) is a serious misreading of *Ludtke* v. *Kuhn*, 461 F. Supp. 86 (S.D.N.Y. 1978).

*Ludtke* addressed the question of whether an MLB policy that prohibited admission of female reporters into the New York Yankees' clubhouse could be challenged as state action.

-18-

Yankee Stadium is not just funded by New York City; it is owned by New York City.  Yet, the Court did not hold that MLB or the Yankees were state actors for all purposes merely because of that fact.  Rather, the Court focused on the facts that (i) "the place where the discriminatory acts occurred is owned by the state . . . and leased pursuant to special legislative provisions to the Yankees," (ii) the lease required "the Yankees to comply with all local, state, and federal laws," and (iii) "the City [had] not stepped in . . . to stop the Yankees' discriminatory conduct."  *Id*. at 93–94.  Given the close nexus between New York City and the MLB policy challenged as discriminatory, the Court found that the policy constituted state action.  *Id*. at 96.

The other MLB-related case relied on by JCN is fully consistent with *Ludtke*.  In *Lewis* v. *Colorado Rockies Baseball Club, Ltd.*, the Colorado Supreme Court addressed whether policies adopted by the Rockies that prevented the sale or distribution of materials inside Coors Field and in certain surrounding areas constituted state action.  941 P.2d 266 (Colo. 1997).  Similar to *Ludtke*, the Colorado Supreme Court found that the restrictions were state action because, "[w]hile *the Rockies are a private entity*, Coors Field and the surrounding sidewalks and walkways at issue are *owned by a public entity*[.]"  *Id*. at 272 (emphasis added).  Again, the court found a close nexus between the action challenged and the state.  *Lewis* provides no support for JCN's sweeping assertion that "MLB clubs are state actors because they receive substantial financing from state and local governments."  (Br. at 7.)  Here, no nexus is alleged between the fact that certain MLB clubs play in stadiums that receive government funding and MLB's decision to move the All-Star Game from Atlanta.  Consequently, no state action has been alleged.

JCN's second argument—that MLB is a state actor because certain of its conduct is exempt from federal antitrust laws—finds even less support in the law.  In *Jackson* v. *Metropolitan Edison Co.*, the Supreme Court addressed whether there is state action when a "heavily regulated" but

"privately owned and operated" utility is granted a monopoly by the state.  419 U.S. 345, 350–51 (1974).  The Supreme Court found that, although "[i]t may well be that acts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found to be 'state' acts than will acts of an entity lacking these characteristics," this fact is not dispositive, and the inquiry remains "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  *Id*.  The same analysis dooms JCN's state action claim in this case as no such close nexus has been alleged.

### C.    Under Either Section 1985(3) or Section 1983, Defendants Did Not Violate Any Constitutional Rights of Atlanta-area Businesses.

Even if this Court were to find that Atlanta-area businesses are a protected class under Section 1985(3), or that MLB is a state actor under Section 1983, its claims are still deficient because Defendants' decision to move the All-Star Game from Atlanta to Denver did not violate any constitutional rights of Atlanta-area businesses.

First, JCN's claim under the Equal Protection Clause fails because JCN has not sufficiently alleged discriminatory intent.  (*See supra* at II.A.2.)  To state an equal protection claim, a plaintiff must allege that (1) "compared with others similarly situated, plaintiff was selectively treated"; and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Freedom Holdings, Inc.* v. *Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (citation omitted).  As discussed *supra* at II.A.2, JCN's assertion that Georgia residents and businesses were discriminated against "solely because they reside in Georgia" (Br. at 11) falls far short of a claim of selective treatment based on impermissible considerations.

-20-

Second, the Privileges and Immunities Clause, which protects citizens from laws "enacted for [a] protectionist purpose," has no relevance here. *Schoenefeld* v. *Schneiderman*, 821 F.3d 273, 279 (2d Cir. 2016) (quotation omitted). "It was designed to insure to a citizen of State A who ventures into State B the same privileges which citizens of State B enjoy." *Toomer* v. *Witsell*, 334 U.S. 385, 395 (1948). Taken to its logical extreme, JCN's reading of the Privileges and Immunities Clause would mean that citizens of every state in which MLB chose not to hold the All-Star Game in a given year would have a claim that their constitutional rights were violated because they were not treated in the same way as citizens of the state where the game was being held. (*See* Br. at 12–13.) Indeed, by JCN's logic, a political party moving its convention from one state to another would give rise to constitutional claims, as would a popular music artist skipping a state on a concert tour. That cannot be correct.

Third, JCN has no coherent theory of how the Dormant Commerce Clause, which "prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce," *Gen. Motors Corp.* v. *Tracy*, 519 U.S. 278, 287 (1997), could possibly apply to an action taken by MLB, an unincorporated association of thirty clubs in various states (Br. at 15).

### D.     JCN's Tortious Interference Claims Are Meritless.

Neither of JCN's tortious interference claims has any merit. To state a claim for tortious interference with contract in New York, a plaintiff must allege "the existence of a valid contract, the defendant's knowledge of the contract's existence, that the defendant intentionally procured a contract breach, and the resulting damages to the plaintiff." *Catskill Dev., L.L.C.* v. *Park Place Ent. Corp.*, 547 F.3d 115, 124–25 (2d Cir. 2008). To state a claim for tortious interference with business relations, a plaintiff must allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts

-21-

injured the relationship." *Id.* at 132.  JCN's tortious interference claims do not satisfy a single element of either claim.

### 1.   JCN Fails to Identify Specific Contracts or Specific Business Relationships With Which Defendants Knowingly Interfered.

Adequately pleading the first element of JCN's tortious interference claims requires some level of specificity—at a minimum, JCN has to allege, for a contract interference claim, "that the defendant purposefully intended to cause a contract party to breach a *particular* contract," *Conte* v. *Emmons*, 895 F.3d 168, 172 (2d Cir. 2018) (emphasis added), and, for a business interference claim, that there were "*specific* existing business relationships with which Defendant interfered," *Nat'l Gear & Piston, Inc.* v. *Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 369 (S.D.N.Y. 2012). It is not enough for JCN to refer broadly to contracts or business relationships with unnamed third parties.  *See, e.g.*, *AIM Int'l Trading, L.L.C.* v. *Valcucine S.p.A.*, 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (dismissing tortious interference claims involving unspecified "products dealers"); *Envirosource, Inc.* v. *Horsehead Res. Dev. Co.*, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996) (noting that "[a] general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship will not withstand a motion to dismiss") (citation omitted).

For contract interference claims, the plaintiff must also allege that a defendant has "actual knowledge of the specific contract," *Medtech Prod. Inc.* v. *Ranir, LLC*, 596 F. Supp. 2d 778, 796 (S.D.N.Y. 2008) (citation omitted), and that the contract was breached, *AIM Int'l Trading, L.L.C.*, 2003 WL 21203503, at *4.  But JCN fails to allege the *existence* of any particular contract, let alone that Defendants *knew* about that contract or that the contract was breached.  JCN makes only vague allegations that its members "had valid contracts as third-party beneficiaries to MLB's agreement to hold the All-Star Game in Atlanta on July 13, 2021" (Compl. ¶ 64), and that "[m]ore

than 8,000 hotel reservations were canceled" and "revenues from ticket sales and stadium food by the more than 41,000 expected to attend the events at Truist Park were lost."  (Compl. ¶ 41.)  Such allegations contain *no details* about any particular contract, not even the names of the contracting parties.  *See Bose* v. *Interclick*, 2011 WL 4343517, at *10 (S.D.N.Y. Aug. 17, 2011).  JCN's business interference claims suffer from the same lack of specificity, failing to identify any specific business relationships that JCN members supposedly had with unidentified third parties.

### 2.   JCN Does Not Allege Direct Interference With a Contract or Business Relationship.

For both types of tortious interference claims, a plaintiff must allege that the defendant "direct[ed] some activities towards the third party."  *B & M Linen, Corp.* v. *Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) (citation omitted).  As the New York Court of Appeals explained in *Carvel Corp.* v. *Noonan*, 3 N.Y.3d 182, 192 (N.Y. 2004), "conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."

There is not a single factual allegation in the Complaint that Defendants directed *any actions* toward the unidentified third parties with whom JCN's members purportedly had contracts or business relationships—a fatal flaw.  The only allegation specific to Defendants—that they "intentionally cancelled" the All-Star Game—does not identify *any conduct directed at third parties* with whom JCN members had contracts or business relationships.  *See id*.

### 3.   JCN Does Not Allege that Defendants Intentionally or Wrongfully Interfered with Any Contract or Business Relationship.

To be tortious, "the interference must be intentional, not merely negligent or incidental to some other, lawful, purpose."  *Alvord & Swift* v. *Stewart M. Muller Constr. Co.*, 46 N.Y.2d 276, 281 (1978).  JCN points to nothing showing that, in moving the All-Star Game to Denver, MLB's *goal* was to interfere with the unspecified contracts of JCN's unspecified members.  *See G.K.A.*

*Beverage Corp.* v. *Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) ("Nothing in the allegations may reasonably be read to suggest that the target of appellee's conduct was [the third party's] contractual arrangements with appellants."). To the contrary, JCN acknowledges that MLB's decision was "'in response to [Georgia's] new voting law." (Compl. ¶ 36 (quoting news article).) Any alleged effect on any contractual arrangements was an incidental consequence of MLB's decision, not its object. *See Prospect Funding Holdings, LLC* v. *Vinson*, 256 F. Supp. 3d 318, 327–28 (S.D.N.Y. 2017) ("To satisfy this [intentional] element, it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that 'the defendant's *objective* was to procure such a breach.'" (citation omitted)).

A claim for tortious interference with business relations similarly requires that the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means. This is a "high bar" to meet. *16 Casa Duse, LLC* v. *Merkin*, 791 F.3d 247, 262 (2d Cir. 2015). "[T]he defendant's conduct must amount to a crime or an independent tort," or must have been "for the sole purpose of inflicting intentional harm on plaintiffs." *Carvel Corp.*, 3 N.Y.3d at 190. If a defendant's interference was "'intended, at least in part, to advance [its] own competing interests,' then there was no 'wrongful purpose.'" *RFP LLC* v. *SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196–97 (S.D.N.Y. 2011) (citation omitted).

JCN fails to adequately allege that Defendants acted for a wrongful purpose or used dishonest, unfair, or improper means. JCN does not even attempt to argue that Defendants' conduct amounted to a crime or an independent tort. (*See* Br. at 16.) And JCN's conclusory allegation, without any factual support, that "Defendants' actions were carried out with the purposeful intent to damage and harm Plaintiff" (Compl. ¶¶ 69, 76), is insufficient to satisfy the

intent requirement.  *See RFP LLC*, 788 F. Supp. 2d at 196–97.  Moreover, there can be no wrongful purpose here because MLB acted to advance its own competing interests when it decided to move the All-Star Game from Atlanta to Denver—a decision which MLB viewed as "the best way to demonstrate [its] values as a sport."[17]  *Id.*

## III.   IT IS IN THE PUBLIC INTEREST FOR MLB'S DECISION TO STAND AND THE BALANCE OF HARDSHIPS TIPS IN DEFENDANTS' FAVOR.

JCN's argument that the public interest favors JCN because "the merits favor Plaintiff on requiring the MLB and MLBPA to honor their agreements" (Br. at 25) is meritless because Defendants did not have any agreements with JCN or its members, nor did Defendants do anything to violate the constitutional rights of JCN or its members.  To the contrary, it is in the public interest for Defendants' decision to move the All-Star Game to Denver to be upheld, thereby protecting Defendants' right to demonstrate their values and preserving their freedom as private entities to determine where to hold their events.

## CONCLUSION

For the foregoing reasons, JCN's motion for a preliminary injunction should be denied.


Dated:  June 7, 2021                                   Respectfully submitted,


                                                       /s/ *John L. Hardiman*
                                                       John L. Hardiman
                                                       Steven L. Holley
                                                       Benjamin R. Walker
                                                       SULLIVAN & CROMWELL LLP
                                                       125 Broad Street
                                                       New York, New York  10004-2498

---

[17]     Press Release, Major League Baseball, *MLB Statement regarding 2021 All-Star Game* (April 2, 2021), https://www.mlb.com/press-release/press-release-mlb-statement-regarding-2021-all-star-game.

Tel:  (212) 558-4000
hardimanj@sullcrom.com

*Attorneys for Defendants Office of the*
*Commissioner of Baseball d/b/a Major*
*League Baseball and Robert D. Manfred, Jr.*