IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOB CREATORS NETWORK, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. 1:21-CV-4818-VEC |
| v. | )<br>) |
| OFFICE OF THE COMMISSIONER OF BASEBALL d/b/a MAJOR LEAGUE BASEBALL, et al., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**BRIEF OF FORMER ATTORNEY GENERAL EDWIN MEESE III AND THE AMERICAN CONSTITUTIONAL RIGHTS UNION AS *AMICI CURIAE* SUPPORTING PLAINTIFF**

**TABLE OF CONTENTS**

INTEREST OF *AMICI CURIAE*……………………………………………………… 1

SUMMARY OF ARGUMENT…………………………………………………….. 2

ARGUMENT……………………………………………………………………….. 3

I.     GEORGIA'S SB 202 IS FULLY CONSISTENT WITH PROTECTING VOTING RIGHTS……. 3

     A.     The provisions of SB 202 do not infringe on the right of any qualified voter to cast a ballot. …………………………………………………….. 4

     B.     Instead, SB 202 protects voting rights by safeguarding election integrity………………………………………………………………... 6

II.     FOR-PROFIT BUSINESSES LIKE THAT OF DEFENDANTS HAVE A LEGAL RESPONSIBILITY TO STAKEHOLDERS TO FOCUS ON RUNNING A SUCCESSFUL BUSINESS, NOT TO DETRACT FROM THAT DUTY BY ENGAGING IN PARTISAN POLITICS…………………………………………………………………………... 8

CONCLUSION……………………………………………………………………. 10

# TABLE OF AUTHORITIES

**Cases**
*Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) .................................................................. 4
*Commodity Futures Trading Co. v. Weintraub*, 471 U.S. 343 (1985) ...................................... 8
*Consumers Union of U.S., Inc. v. New York*, 840 N.E. 2d 68 (N.Y. 2005) ........................ 8
*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) ........................................ 4, 5
*Hadley v. Junior Coll. Dist.*, 397 U.S. 50 (1970) ............................................................ 7
*Reynolds v. Sims*, 377 U.S. 533 (1964) ...................................................................... 4, 6
*Storer v. Brown*, 415 U.S. 724 (1974) ................................................................................ 6
*Terrydale Liquidating Trust v. Barness*, 611 F. Supp. 1006 (S.D.N.Y. 1984) ................... 9
*Williams v. Rhodes*, 393 U.S. 23 (1968) ........................................................................... 6

**Statutes**
Election Integrity Act of 2021, 2021 Ga. Laws 9 ......................................................... 3, 5

**Other Authorities**
*America's Favorite Pastime*, NAT'L ARCHIVE NEWS,
  https://www.archives.gov/news/topics/baseball-and-the-archives ................................. 9
Cameron McWhirter, *Georgia Mail-In Election Changes Signed Into Law by Governor*,
  WALL ST. J., Mar. 25, 2021, https://www.wsj.com/articles/georgia-election-changes-
  signed-into-law-by-governor-11616715033 ..................................................................... 4
Fred Lucas, *Zuckerberg's $45M for Georgia elections boosted Dem Turnout, Watchdog
  Report Says*, FOX NEWS, June 4, 2021, https://www.foxnews.com/politics/zuckerbergs-
  45m-boosted-dem-turnout ................................................................................................ 5
Michael Patrick Leahy, *Heritage Action: Georgia Election Integrity Law 'a Model for the
  Rest of the Country'*, BREITBART NEWS, Mar. 25, 2021,
  https://www.breitbart.com/politics/2021/03/25/heritage-action-georgia-election-
  integrity-law-model-rest-country/ .................................................................................... 5
Robert Kraychik, *Exclusive—Ken Blackwell: Court Ordering MLB All-Star Game Back
  to Atlanta 'Would Be a Win-Win for Everyone'*, BREITBART NEWS, June 4, 2021,
  https://www.breitbart.com/radio/2021/06/05/ exclusive-ken-blackwell-court-ordering-
  mlb-all-star-game-back-to-atlanta-would-be-a-win-win-for-everyone/ ..................... 8, 9
Robert Kraychik, *Exclusive—Ken Blackwell: MLB All-Star Game Leaving Atlanta is a
  'Slap in the Face' to 'Black Entrepreneurs and Business Owners'*, BREITBART NEWS,
  May 11, 2021, https://www.breitbart.com/radio/2021/05/11/ken-blackwell-mlb-all-
  star-game-leaving-atlanta-slap-black-entrepreneurs-business-owners/ .......................... 7
Tim Tucker et al., *MLB Moves All-Star Game Out of Georgia Over Voting Law*,
  ATLANTA JOURNAL-CONSTITUTION, Apr. 2, 2021 ......................................................... 3

## INTEREST OF *AMICI CURIAE*

Edwin Meese III served as the 75th Attorney General of the United States. For more than a half century of public life, Attorney General Meese has been at the forefront of protecting and defending the Constitution of the United States, from serving as Chief of Staff to then-Governor Ronald Reagan of California, to serving as Counselor to the President in the White House of President Reagan, to leading the U.S. Department of Justice as Attorney General, to three decades as a private citizen working with some of the foremost institutions in the United States dedicated to good governance, patriotism, and the principles of American exceptionalism, as well as continuing to advise and assist several Presidents during their successive Administrations. Throughout this time, Attorney General Meese has been heavily engaged in election integrity at both the federal and state levels.

The American Constitutional Rights Union (ACRU) is a nonpartisan 501(c)(3) nonprofit organization incorporated in Washington, D.C., dedicated to protecting constitutional liberty. The ACRU Policy Board sets the policy priorities of the organization, and includes some of the most distinguished statesmen in the Nation on election matters. Current members of the Policy Board include Attorney General Meese and former Ohio Secretary of State J. Kenneth Blackwell, who also served as a Commissioner on the Presidential Commission on Election Integrity and the U.S. Ambassador to the United Nations Human Rights Commission.

## SUMMARY OF ARGUMENT

Georgia enacted the Election Integrity Act of 2021 (SB 202) in March 2021 in the aftermath of 2020 election controversies. Defendants moved their All-Star Game from Atlanta shortly thereafter, alleging that SB 202 violates voting rights.

SB 202's provisions are fully consistent with voting rights. Heated controversies persist over how the 2020 election unfolded in Georgia. The Constitution permits States to enact reasonable regulatory measures in elections to ensure those elections are fair and free. Such measures are essential to public confidence in election results, and the Supreme Court has specifically upheld voter ID requirements as one such permissible measure. Defendants never delve into the specific provisions of SB 202 when announcing their opposition, nor explain how those provisions are anything other than commonplace election regulations. The Constitution affords States the latitude to choose effective measures to accomplish its important objective of conducting successful elections.

Indeed, statutory provisions such as those in SB 202 are vital to election integrity. Free and honest elections, where citizens can cast effectual ballots—are foundational to America's constitutional government. Anything that dilutes or otherwise debases lawful ballots derogates that principle, and corrodes public confidence. Provisions in SB 202, including but not limited to voter ID, are measures designed to detect and prevent fraud or other election irregularities.

It is especially unfortunate that opposition to SB 202 is being driven by Defendants, given that they are a for-profit business that has nothing to do with elections. Defendants are part of the sports entertainment industry, whose foremost concern should

2

be the financial success of their business. Wading into this political and legal controversy—and taking the incorrect side of the legal dispute—does not advance that corporate mission. Not only does Defendants' involvement here hurt their business, it also potentially violates their legal obligations to their stakeholders by dividing the business's customer base. Moreover, it hurts the very community Defendants claim to be supporting: the majority-black population and business community of Atlanta.

For all these reasons, the court should order Defendants to reverse their business decision, and move the All-Star Game back to Atlanta, Georgia.

## ARGUMENT

**I.    GEORGIA'S SB 202 IS FULLY CONSISTENT WITH PROTECTING VOTING RIGHTS.**

Georgia enacted the statute at issue here, the Election Integrity Act of 2021, 2021 Ga. Laws 9—frequently also referred to as SB 202—on March 25, 2021. On April 2, Major League Baseball (MLB) announced that it would move the 2021 All-Star Game from Atlanta, Georgia, to express opposition to the new Georgia statute, relocating the event to Denver, Colorado. MLB Commissioner Robert Manfred explained the League was making the move because, "Major League Baseball fundamentally supports voting rights for all Americans and opposes restrictions to the ballot box."[1]

However, SB 202 is predicated on precisely the principle that MLB publicly embraces: Fundamental support for the voting rights of American citizens.

---

[1] Tim Tucker et al., *MLB Moves All-Star Game Out of Georgia Over Voting Law*, ATLANTA JOURNAL-CONSTITUTION, Apr. 2, 2021.

3

### A.  The provisions of SB 202 do not infringe on the right of any qualified voter to cast a ballot.

SB 202's provisions requiring voter ID and establishing procedural safeguards are consistent with voting rights.  "Free and honest elections are the very foundation of our republican form of government." *Reynolds v. Sims*, 377 U.S. 533, 564 n.41 (1964) (internal quotation marks omitted).  A "State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions" on a voter's right to cast a ballot.  *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).  Georgia is acting pursuant to its regulatory interests, identifying election features and procedures that the 2020 election showed to be insufficient, and augmenting the state's election framework to remedy those aspects of the Peach State's election process.

Georgia's statutory measures are designed to instill confidence in the results of its elections.  The Supreme Court in 2008 upheld the constitutionality of voter ID laws in *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 204 (2008).  "The electoral system cannot inspire confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters." *Id.* at 194 (plurality opinion of Stevens, J.) (quoting the report of the Carter-Baker Commission on Federal Election Reform).  Heated controversies persist over the 2020 election, with Georgia being one of the States at the center of those impassioned debates.[2]  For example, massive amounts of private-sector money from organizations that favor Democrats augmented government election functions, but that private money was primarily funneled to communities that favor Democrats in election

---

[2] *See* Cameron McWhirter, *Georgia Mail-In Election Changes Signed Into Law by Governor*, WALL ST. J., Mar. 25, 2021, https://www.wsj.com/articles/georgia-election-changes-signed-into-law-by-governor-11616715033.

4

turnout, which some analysts say gave Democrats a partisan advantage in voter turnout.[3] Consistent with *Crawford*, Georgia lawmakers therefore took action to allay concerns of future fraud, manipulation, or other irregularities, by among other things confirming the identity of voters, and thereby to restore public confidence in Georgia elections.

As this lawsuit states, the provisions in SB 202 include:

- Authority to create a telephone hotline to report allegations of intimidation or other illegal activity
- Public notice of emergency rules and consent decrees
- Privacy flaps on absentee envelopes to safeguard personal information
- Uniform rules for drop boxes
- Requiring voters to cast their ballot in the precinct where they are registered
- Security features on ballot paper to authenticate ballots
- Strengthening voter ID

Compl. ¶ 30.  Other provisions remedy additional concerns, such as reducing or prohibiting private money from augmenting government functions in a manner that many allege favors one political party over another.[4]  Defendants never explains how any of these features prevent a qualified voter from casting a ballot, not could they.  These are commonplace election features, several of which in fact expand the opportunity to cast a ballot.

This does not necessarily mean that the provisions in Georgia's SB 202 are the only way to address these concerns of preventing fraud and building public confidence, or even the best way.  But they are certainly permissible ways, and they are effective.

---

[3] Fred Lucas, *Zuckerberg's $45M for Georgia elections boosted Dem Turnout, Watchdog Report Says*, Fox News, June 4, 2021, https://www.foxnews.com/politics/zuckerbergs-45m-boosted-dem-turnout.

[4] Michael Patrick Leahy, *Heritage Action: Georgia Election Integrity Law 'a Model for the Rest of the Country'*, Breitbart News, Mar. 25, 2021, https://www.breitbart.com/politics/2021/03/25/heritage-action-georgia-election-integrity-law-model-rest-country/.

Most effective election regulations carry some incidental requirements for voters, as many procedures that verify, authenticate, or confirm key facts require additional action on the part of voters. But in the election context as with other matters, the "Constitution does not require the State to choose ineffectual means to achieve its aims." *Storer v. Brown*, 415 U.S. 724, 736 (1974). Provisions like voter ID are constitutionally permissible methods for pursuing the a State's permissible interests in elections. The provisions of SB 202 thus do not interfere with the constitutional right of any qualified elector to cast a ballot in Georgia.

> **B.     Instead, SB 202 protects voting rights by safeguarding election integrity.**

The Supreme Court recognizes "the right of qualified voters, regardless of their political persuasion, to cast their votes *effectively*." *Williams v. Rhodes*, 393 U.S. 23, 30–31 (1968) (emphasis added). As the Court explained in a landmark election case:

> There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. . . It also includes the right to have the vote counted at full value without dilution or discount.

*Reynolds*, 377 U.S. at 555 n.29 (internal quotation marks omitted).

In other words, "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id*. at 555. A vote is not effective if it does not change the margin between the candidates by a one whole number with the tabulation of each lawful ballot cast. Fraudulent votes cancel, dilute, or otherwise debase legitimate ballots cast by lawful voters.

The Supreme Court has tackled from multiple angles the issue of a casting a fully effective vote. Time and again, the Court's precedents point in the same direction. "The

6

consistent theme of those decisions is that the right to vote in an election is protected by the United States Constitution against dilution or debasement." *Hadley v. Junior Coll. Dist.*, 397 U.S. 50, 54 (1970).

SB 202's provisions are commonsense safeguards against fraud, dilution, or debasement. Some of these measures increase transparency and inform the public, with the result that such measures build public confidence in election outcomes. Other provisions like security features on paper to prevent forgeries or requiring photographic identification to confirm the identity of the person attempting to cast a ballot prevent vote dilution and debasement, which the Supreme Court has repeatedly and consistently held is not only permitted by the Constitution, but indeed protects voting rights for lawful voters.

A valuable perspective on that matter comes from J. Kenneth Blackwell, a Policy Board member of *Amicus Curiae* ACRU, not only as a former top election officer as Ohio Secretary of State, but also as a black American who was the mayor of a major city with a large black population and someone who is currently a minority shareholder in an MLB franchise (the Cincinnati Reds).[5]  "Not only do 77 percent of voters support voter ID, but polls show that 61 percent of black voters support voter ID," Blackwell said in a recent radio interview discussing the moving of the All-Star Game out of Georgia. "How can something be racism that contributes to voter suppression if 61 percent of that voting group . . . supports the measure?"[6]

---

[5] *See* Robert Kraychik, *Exclusive—Ken Blackwell: MLB All-Star Game Leaving Atlanta is a 'Slap in the Face' to 'Black Entrepreneurs and Business Owners'*, BREITBART NEWS, May 11, 2021, https://www.breitbart.com/radio/2021/05/11/ken-blackwell-mlb-all-star-game-leaving-atlanta-slap-black-entrepreneurs-business-owners/.

[6] Robert Kraychik, *Exclusive—Ken Blackwell: Court Ordering MLB All-Star Game Back to Atlanta 'Would Be a Win-Win for Everyone'*, BREITBART NEWS, June 4, 2021, https://www.breitbart.com/radio/2021/06/05/

In summary, the provisions of SB 202 like voter ID are more than consistent with the right to vote, they actually protect the right to vote. Defendants drive-by criticism is simply meritless, and should not been the basis for the decision to move the All-Star Game out of Atlanta.

II.    **FOR-PROFIT BUSINESSES LIKE THAT OF DEFENDANTS HAVE A LEGAL RESPONSIBILITY TO STAKEHOLDERS TO FOCUS ON RUNNING A SUCCESSFUL BUSINESS, NOT TO DETRACT FROM THAT DUTY BY ENGAGING IN PARTISAN POLITICS.**

Defendants are a for-profit business in the sports entertainment industry. They should focus on operating a profitable baseball business, rather than diverting their resources into a political brawl. This is all the more true when that political controversy falsely claims to be a principled struggle under the auspices of civil rights. As the authorities cited above in Part I explain, the Supreme Court's exposition of those rights show that the Georgia statute at issue here is fully consistent with the Constitution's guarantees.

Defendants' obligations here are to run their business in a manner that generates profits for the shareholders of the member baseball teams, both short-term and long-term. Top managers and corporate directors must make decisions "consistent with their fiduciary duty to act in the best interests of the corporation." *Commodity Futures Trading Co. v. Weintraub*, 471 U.S. 343, 349 (1985). Directors and corporate managers must act "in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate principles." *Consumers Union of U.S., Inc. v. New York*, 840 N.E. 2d 68, 96 (N.Y. 2005). Although not organized as a conventional

---

exclusive-ken-blackwell-court-ordering-mlb-all-star-game-back-to-atlanta-would-be-a-win-win-for-everyone/.

corporation, MLB functions and has many of the characteristics of a typical for-profit corporation: "centralized management, . . . continuity of life, separate and distinct legal existence, a charter-like declaration of rights and obligations, and a profit-making purpose." *Terrydale Liquidating Trust v. Barness*, 611 F. Supp. 1006, 1016 (S.D.N.Y. 1984). The "profit-making responsibilities" of the Commissioner and other top MLB executives "inevitably entail the exercise of business judgment similar to that of a corporate director" or corporate officer. *Id.* These responsibilities do not permit them to act with "other improper motives." *Id.* at 1018.

Again, Secretary Blackwell offers his perspective as a part-owner of an MLB team. "It hurts the sport, because tens of millions of Americans are turned off by the league taking sides in this political controversy, especially one [in which] most of the fans disagree with the league's position," said Secretary Blackwell regarding Defendant MLB Commissioner Robert Manfred's decision to move the All-Star Game from Atlanta to Denver.[7] "It hurts the league and it hurts countless businesses in the Atlanta area, including minority-owned businesses. . . Atlanta is a predominantly black city, so taking away the game hurts all Atlantans, but particularly . . . has an adverse impact on black Atlantans."[8]

Baseball enjoys the moniker of "America's pastime."[9] It is a longstanding part of American heritage, prominent in this Nation's history, and fills a significant role in modern American culture. The United States benefits from a successful MLB as a

---

[7] *Id.*

[8] *Id.*

[9] *See America's Favorite Pastime*, NAT'L ARCHIVE NEWS, https://www.archives.gov/news/topics/baseball-and-the-archives.

9

leading part of a flourishing sports entertainment industry.  Moving the All-Star Game from Atlanta to Denver fails to advance these benefits, and instead contributes to the current climate of frustration and division.  Returning the All-Star Game to Atlanta would reverse that damage and, beyond serving MLB's for-profit interests, would also provide much-needed economic relief to the businesses and minority community of Atlanta.

## CONCLUSION

Because Defendants' criticisms of SB 202 are counterfactual, their action to move the All-Star Game as a response has hurt both their corporate interests and the community they claimed to support in Georgia.  Their action to move the All-Star Game should be rescinded.

                                                  Respectfully submitted,

                                                  KRISTINA S. HEUSER, P.C.

By: _____/S/_____
Kristina S. Heuser, Esq. (KH3612)
Post Office Box 672
Locust Valley, New York 11560
Tel. (516) 676-1565
E-mail: kheuser@heuserlawfirm.com

June 7, 2021

CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of June 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which I understand to have caused service on all counsel of record.

                        KRISTINA S. HEUSER, P.C.

By: _____/S/_____
      Kristina S. Heuser, Esq. (KH3612)
      Post Office Box 672
      Locust Valley, New York 11560
      Tel. (516) 676-1565
      E-mail: kheuser@heuserlawfirm.com