UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOB CREATORS NETWORK,

    Plaintiff,

v.

OFFICE OF THE COMMISSIONER
OF BASEBALL D/B/A MAJOR
LEAGUE BASEBALL, et al.,

    Defendants.

Civil Action No. 1:21-cv-4818

**BRIEF OF VERNON JONES AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Vernon Jones
Leftwich Law, LLC
Taylor L. Leftwich, Esq.
*Counsel for Amicus Curiae*
2296 Henderson Mill Road
Suite 304
Atlanta, Georgia 30345
T: 470-775-2937
F: 470-300-7743
Taylor@LeftwichLegal.com

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | ii |
| STATEMENT OF IDENTIFICATION | 1 |
| INTEREST IN AMICUS CURIAE | 1 |
| ARGUMENT | 2 |
| I. Defendants Are Wrongfully Punishing the People of Georgia by Relocating the 2021 All-Star Game and MLB Draft Due to the Passage of S.B. 202 by Georgia Legislatures | 2 |
|     a. S.B. 202 Was Enacted to Protect Election Integrity In Georgia and Restore Voter Confidence After the 2020 General Election. | 3-7 |
|     b. Georgia Legislature Has the Exclusive Power to Enact Laws and the Judicial Branch Has the Power to Protect the People and Ensure the Constitutionality and Legality of those Laws | |
| CONCLUSION | 8 |
| CERTIFICATE OF COMPLIANCE | 9 |

# TABLE OF AUTHORITIES

## Cases, Constitution, and Statutes

*Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 109 S. Ct. 1013, 103 L. Ed. 2d 271 (1989).

*Purcell v. Gonzalez*, 549 U.S. 1,4 (2006).
*Thornburg v. Gingles*, 478 U.S. 30, 106 S. Ct. 2752, 92 L. Ed. 2d 25 (1986).

S.B. 202 "Election Integrity Act Bill."

U.S. Const. art. II, § 1.

Voting Rights Act of 1965, § 2(a), as amended, 42 U.S.C.A. § 1973(a).

## Other Authorities

https://www.mlb.com/news/2021-all-star-game-draft-relocated. (last visited June 3, 2021).

*https://sos.ga.gov/index.php/elections/georgia_breaks_all-time_voting_record* (last visited June 5, 2021).

*https://results.enr.clarityelections.com/GA/107231/web.264614/#/summary*. (last visited June 7, 2021).

*See also* https://www.gpb.org/news/2021/05/19/here-are-all-the-lawsuits-challenging-georgias-new-voting-law (providing a comprehensive list of filings pertaining to S.B. 202) (last visited June 6, 2021).

## STATEMENT OF IDENTIFICATION

Vernon Jones served in the Georgia House of Representatives from 1993 to 2001 and from 2017 to 2021. Vernon Jones was the Chief Executive Officer of DeKalb County, Georgia from 2001 to 2009 and is currently a candidate for the 2022 Georgia gubernatorial election.

Vernon Jones has committed his life to serving the public and State of Georgia and submits this brief as *amicus curia* in support of Plaintiff's Motion for Preliminary Injunction.

## INTEREST OF AMICUS CURIAE

In this proceeding, Plaintiff seeks a preliminary injunction enjoining Defendants from taking away the long awaited 2021 Major League Baseball All-Star Game from the people, businesses, and local economies of Atlanta, Georgia and relocating it – as well as an estimated $100 million dollars of revenue – to Denver, Colorado.

## ARGUMENT

**I.      Defendants Are Wrongfully Punishing the People of Georgia by Relocating the 2021 All-Star Game and MLB Draft Due to the Passage of S.B. 202 by Georgia Legislatures.**

Defendants' have blatantly stated their decision to relocate the 2021 All-Star Game and MLB Draft away from Atlanta came "a little more than a week after the passage of S.B. 202, a Georgia law that President Joe Biden criticized, saying that it will restrict voting access for residents of the state."[1]

Defendants' reasoning behind the unwarranted move from Atlanta based on that law has done far more concrete harm than any intended good. Defendants contend that the Georgia legislation "disproportionately disenfranchises the Black community," yet, based on their ill-placed logic, they have decided to punish the people, businesses, and local economies of this majority Black community due to the passage of a law by the legislature that the community did not create. Defendants have single handedly and disproportionately disenfranchised a 51% majority Black community by stripping away guaranteed revenue of at least $100 million dollars, flushing funds already allocated towards the event down the drain, and uprooting significant profits that were being relied on, all to relocate the long awaited All-Star game to a city with a 9% black population instead.

---

[1] https://www.mlb.com/news/2021-all-star-game-draft-relocated. (last visited June 3, 2021).

2

Defendants' actions are contradictory and have caused significant harm to the same population they purportedly sought to support. This Court should grant Plaintiff's Motion for Preliminary Injunction to right the consequential wrong which has occurred as a result of Defendants' actions.

   a. <u>S.B. 202 Was Enacted to Protect Election Integrity in Georgia and Restore Voter Confidence After the 2020 General Election.</u>

According to the Georgia Secretary of State, the 2020 General Election set an all-time record in the number of votes cast in Georgia.[2] Local elections officials were overwhelmed by record turnout and an unprecedented shift towards mail-in voting, and the 2020 General Election presented disturbing issues to many voters in the State of Georgia which significantly impacted their confidence in the integrity of our elections. Many citizens were concerned there was rampant evidence of fraud which occurred in violation of Georgia's election laws and ultimately tainted the validity of our State's election process. Specifically, there were several expert opinions, reports, data compilations, and lawsuits on the subject which projected and alleged, amongst other things, that 66,248 underage Georgian's were allowed to register to vote contrary to statutory law; 2,506 convicted and incarcerated felons were allowed to vote contrary to statutory law; over 10,000 ballots from deceased citizens were cast contrary to statutory

---

[2] https://sos.ga.gov/index.php/elections/georgia_breaks_all-time_voting_record (last visited June 5, 2021).

law; and over 40,000 absentee ballots were cast and counted as a result of a March 2020 Settlement Agreement that was entered into by Georgia's Secretary of State and certain democratic committee challengers without statutory authority or legislative involvement contrary to Georgia law.[3] Georgia ultimately certified its election results showing that Joe Biden won the state by a close margin of 11,779 votes.[4] Regardless of whether the extend of fraud in the casting of ballots would have overturned the election results or not, there were undisputed failures to comply with the statutory procedures and mechanisms that the Georgia legislature had previously set out which resulted in constitutional violations of their plenary election authority. Between the Constitutional violations, significant statistical anomalies, sworn affidavits, and evidences of election fraud which were widely broadcast across the nation, it is understandable that the confidence of Georgia citizens in our election system plummeted. As a result, Georgia legislatures' desire and duty to enact laws to protect the integrity of elections here in Georgia arose, and that is what S.B. 202 –the "Election Integrity Act" – was specifically created to do, without disenfranchising any citizen.

---

[3] *See* Exhibit 1 of Donald J. Trump, in his capacity as a candidate for President of the United States, Plaintiff, v. Brian P. Kemp, in his official capacity as Governor of the State of Georgia; Brad Raffensperger, in his official capacity as Georgia Secretary of State, Defendants., 2020 WL 7872546 (N.D.Ga.).

[4] https://results.enr.clarityelections.com/GA/107231/web.264614/#/summary. (last visited June 7, 2021).

b. *Georgia Legislature Has the Exclusive Power to Enact Laws and the Judicial Branch Has the Power to Protect the People and Ensure the Constitutionality and Legality of those Laws.*

The United States Supreme Court has recognized that "a State indisputably has a compelling interest in preserving the integrity of its election process."[5] It is the General Assembly – not the people of Georgia or the MLB – to which the Constitution has conferred the exclusive authority to determine the method of choosing electors that serves the best interest of their state and the citizens thereof.[6] A clear reading of S.B. 202 shows that it is a bill specifically designed to preserve and protect the integrity of future election processes. If it weren't, there are already laws and processes in place that allow a dispositive review of S.B. 202's Constitutionality and legal compliance *that don't involve* Defendants having to injure the people of Georgia (for a law passed by the legislature) and stripping them of the All-Star Game and over $100 million in estimated revenue.

One such law is the Voting Rights Act which prohibits all state and political subdivisions from imposing any voting qualifications or prerequisites to voting or any standards, practices, or procedures which result in the denial or abridgment of the right to vote of any citizen who is a member of a protected class of racial and

---

[5] *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 109 S. Ct. 1013, 103 L. Ed. 2d 271 (1989). *See also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

[6] *See generally* U.S. Const. art. II, § 1.

language minorities.[7] Section 2 of the Voting Rights Act prohibits all forms of voting discrimination.[8] The essence of a claim under section 2 of the Voting Rights Act is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives.[9] If Defendants contend S.B. 202 "disproportionately disenfranchises the Black community," the Voting Rights Act is already in place to challenge any such purported occurrence. Removal of the All-Star game is no substitute for the Voting Rights Act which is specifically in place to protect against voter disenfranchisement.

The old teachings of School House Rock demonstrate the principle existence of our government's 'checks and balances' system which empowers separate branches to prevent action by other branches to ensure shared power. The passage of S.B. 202 by the State's legislative branch is already under review as the subject of several lawsuits in the State's courts.[10] The judicial branch now has the power to review S.B. 202 with all laws

---

[7] Voting Rights Act of 1965, § 2(a), as amended, 42 U.S.C.A. § 1973(a). *See also Thornburg v. Gingles*, 478 U.S. 30, 106 S. Ct. 2752, 92 L. Ed. 2d 25 (1986).

[8] *Id.*

[9] Voting Rights Act of 1965, § 2, as amended, 42 U.S.C.A. § 1973.

[10] *See The New Georgia Project v. Raffensperger et al*, 1:21-cv-01229 (N.D.GA); *Sixth District of the African Methodist Episcopal Church v. Kemp et al*, 1:21-mi-99999 (N.D.GA); *Georgia State Conference of the NAACP v. Raffensperger et al*, 1:21-mi-99999-UNA (N.D.GA); *Asian Americans Advancing Justice-Atlanta v. Raffensperger et al* (N.D.GA); *VoteAmerica v. Raffensperger et al* (N.D.GA). *See also* https://www.gpb.org/news/2021/05/19/here-are-all-the-lawsuits-challenging-georgias-new-voting-law (providing a comprehensive list of filings pertaining to S.B. 202) (last visited June 6, 2021).

6

and the Voting Rights Act to ensure its legality, constitutionality, and compliance to protect our citizen's fundamental right to vote.

Defendants took it upon themselves to discredit the Voting Rights Act and disenfranchise minorities of Atlanta, Georgia by uprooting the 2021 All-star Game and the $100 million in expected revenue that was sure to come with it. Defendants bypassed the checks and balances system by jumping the gun on its unfounded stance and authority. Defendants stated they wanted to "make our voice heard loud and clear in our opposition of recent Georgia legislation," and they have done so by directly injuring the people of Georgia based on the passage of a bill by Georgia legislatures that is currently being reviewed for any illegality by Georgia judiciary. If Defendants wanted to use their platform to make a stance for a majority Black community they could have done so by using their multi-billion dollar platform to file their own suit to have the bill reviewed, joined one of the several pending suits, or even written an Amicus Curiae brief in any one of the several pending suits to make their stance on the matter clear on the record.

Instead, Defendants single handedly and disproportionately disenfranchised a 51% majority Black community themselves by stripping away guaranteed revenue of at least $100 million dollars and relocating the long awaited All-Star game to a city with a 9% black population. This must not be allowed. This Court should grant Plaintiff's Motion for Preliminary Injunction to right the wrong which has occurred as a result of Defendants' actions.

## CONCLUSION

For the foregoing reasons, this court should grant Plaintiff's motion for Preliminary Injunction and the All-Star game should be immediately transferred back to the city, people, businesses, and economies of Atlanta, Georgia.

Dated:  June 7, 2021
        Atlanta, Georgia

Respectfully submitted,

s/ Vernon Jones
Vernon Jones

s/ Taylor L. Leftwich, Esq.
Leftwich Law, LLC
*Attorneys for Vernon Jones*
2296 Henderson Mill Road, N.E.
Suite 304
Atlanta, GA 30345
T: 470-775-2937
F: 470-300-7743
Taylor@LeftwichLegal.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Second Circuit Rules 29.1(c) and 32.1(a)(4) because this brief contains 1878 words/uses a monospaced typeface and contains 13 pages.

This brief complies with the typeface requirements because this brief has been prepared in a: Times New Roman 14 point font.


Dated: June 7, 2021
       Atlanta, Georgia

                                 Respectfully submitted,
                                 <u>s/ Taylor L. Leftwich, Esq.</u>
                                 Leftwich Law, LLC
                                 *Attorneys for Vernon Jones*
                                 2296 Henderson Mill Road, N.E.
                                 Suite 304
                                 Atlanta, GA 30345
                                 T: 470-775-2937
                                 F: 470-775-2937
                                 Taylor@LeftwichLegal.com